# UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION | MDL Docket No. 18-2833 |
| ALL CASES | |

**LOWEY DANNENBERG'S MEMORANDUM OF LAW IN OPPOSITION TO MOTION TO APPOINT GARY F. LYNCH AND DANIEL A. EDELMAN AS INTERIM CO-LEAD COUNSEL AND TO ESTABLISH AN EXECUTIVE COMMITTEE**

## INTRODUCTION

Middle District Counsel[1] have failed to identify a single substantive reason not to appoint Lowey Dannenberg, P.C. ("Lowey") as interim class counsel or to adopt the proposed executive committee of Edelson and PWKC.[2] Nor could they. Consistent with its more than fifty-year history of litigating complex class actions, Lowey has taken the lead in this case and aggressively pursued the best interest of Plaintiffs and the proposed class since filing the first consumer protection actions against PHEAA in this District. It was Lowey that filed the initial motion to transfer before the United States Judicial Panel on Multidistrict Litigation ("JPML"), successfully arguing to consolidate all cases here, where class members would receive swift justice on their claims. It was also Lowey that tried to organize all Plaintiffs' counsel before the JPML to reach consensus on a transferee court, and Lowey that took the lead in drafting an opposition to PHEAA's recent motion, making sure to coordinate with Middle District Counsel—even though they opposed Lowey's transfer and leadership motions—to avoid duplicative filings that would waste both party and judicial resources.

Instead, Middle District Counsel's July 25, 2018 opposition simply proposes an alternative structure consisting of seven different law firms (none of which are based in this District). There are several problems with this proposal. This case does not require such a large, cumbersome leadership structure. Middle District Counsel's proposal is inefficient and will likely increase costs and cause delay with no corresponding benefit, as numerous courts have recognized in similar circumstances. In fact, Middle District Counsel already demonstrated the shortfalls of such a complex leadership

---

[1] "Middle District Counsel" refers to the firms opposing Lowey's application, and who are instead advancing their own proposed leadership structure of two co-lead counsel, Gary F. Lynch of Carlson Lynch Sweet Kilpela & Carpenter, LLP and Daniel A. Edelman of Edelman Combs Latturner & Goodwin, LLC, and a five-member Executive Committee composed of Brian C. Gudmundson of Zimmerman Reed PLLP, Troy J. Doucet of Doucet & Associates Co., L.P.A., Bryan L. Bleichner of Chestnut Cambronne PA, Arthur M. Murray of Murray Law Firm, and Karen Hanson Riebel of Lockridge Grindal Nauen P.L.L.P.

[2] Unless otherwise stated, all defined terms have the same meaning as in Lowey's Motion to Appoint Interim Lead Counsel and for Leave to File a Consolidated Amended Complaint, ECF No. 2.

structure with their last-minute request for additional time to oppose Lowey's motion. Their inability to organize in time is indicative of the inefficiencies to come should Middle District Counsel's motion be granted and weighs against their application.

But there are more serious concerns here beyond just inefficiency that should disqualify Middle District Counsel from leading this case on behalf of the class. As explained in the accompanying Declaration of Peter St. Phillip, shortly after Lowey initiated the JPML proceedings, Plaintiffs' counsel held an organizational call on which everyone—including Middle District Counsel—reached an agreement to support transfer to the Eastern District of Pennsylvania based on the consensus that it was in the best interest of the Class. Plaintiffs were shocked when, without notice, Middle District Counsel *opposed* Lowey's transfer motion and aligned themselves with Defendant's interest in consolidating all actions in the Middle District. Middle District Counsel's failure to identify a legitimate strategic reason to support this change of heart, which contradicts what *all* Plaintiffs' counsel who participated in the organizational call stated to be in the best interest of the class, weighs heavily against appointing them as interim class counsel.

Moreover, Middle District Counsel's proposed co-lead firms have been questioned before for failing to put the interests of a class it represented ahead of its own interests. Specifically, in *In re Cmty Bank of N. Virginia*, the Third Circuit twice expressed concern that the actions of proposed co-lead counsel, Daniel Edelman and his firm and Carlson Lynch Sweet Kilpela & Carpenter, suggested that they may have "subrogat[ed] their duty to the class in favor of the enormous class-action fee offered by defendants." 418 F.3d 277, 307-08 (3d Cir. 2005). Middle District Counsel's last-minute switch to advocate for Defendant's choice of district is no different, and further demonstrates that Lowey and its proposed leadership team will best represent Plaintiffs and the proposed class.

## ARGUMENT

### I.    Appointing the Lowey Team is in the Best Interest of the Class.

Lowey's leadership role in this case is undeniable. Recognizing that early consolidation would bring the case to a faster conclusion, Lowey filed the transfer motion to initiate proceedings before the JPML. Lowey successfully argued for the consolidation and transfer of the litigation to this District, overcoming PHEAA's and Middle District Counsel's argument that the case should be centralized in PHEAA's "home town" of Harrisburg, Pennsylvania. *See* Ex. 2, St. Phillip Decl. (JPML Hearing Tr. at 19).

Lowey filed its motion to be appointed as interim class counsel and to establish an executive committee shortly after the JPML's June 18, 2018 order transferring the related actions to this District. *See* ECF No. 2. Since then, Lowey has continued to work diligently with other counsel who supported transfer to the Eastern District to further the class's interest in this litigation. For example, Lowey organized an in-person meeting on July 20, 2018 in the Eastern District of Pennsylvania with members from four other firms that filed cases in this District. The meeting resulted in a detailed plan of action with assignments regarding the drafting of a consolidated amended complaint, continued investigation of PHEAA's alleged misconduct, and pursuit of several leads that potentially could provide valuable inside information.

Middle District Counsel's claim that Lowey has not been inclusive throughout this process is not credible. Lowey reached out to Middle District Counsel from the very beginning of this litigation and made multiple attempts to reach consensus on an appropriate transfer venue and an efficient leadership structure. Specifically, Lowey attempted to contact Brian Gudmundson of Zimmerman Reed, one of Middle District Counsel's proposed executive committee members, around the time it filed the JPML transfer motion and motion to appoint interim class counsel. *See* St. Phillip Decl. at ¶ 3. Lowey left two voicemail messages for Mr. Gudmundson asking for a call to

discuss collaboration on a joint motion to transfer. *Id.* None of those calls were returned. *Id.* Likewise, Lowey also spoke with Troy Doucet, another member of Middle District Counsel's proposed executive committee, shortly after filing the JPML transfer motion to discuss the possibility of collaboration. *Id.* at ¶ 4. That was their only conversation. *Id.* Presumably, Mr. Doucet stopped speaking with Lowey after aligning himself with Middle District Counsel, as he declined invitations to join any subsequent joint conference calls. *See id.* at ¶¶ 5, 9.

Lowey also made multiple attempts to organize all Plaintiffs' counsel prior to the JPML hearing. As explained above, Lowey invited all Plaintiffs' counsel to join a conference call on March 7, 2018 in an effort to achieve consensus on the most appropriate transferee district. With the exception of Middle District Counsel member Troy Doucet, representatives from all related actions joined the call and reached agreement that transfer to the Eastern District would be the best result for the class. *Id.* at ¶ 6. After Middle District Counsel unexpectedly changed their position, Lowey organized two follow-up conference calls to attempt to reconcile any differences and present a united front at the JPML hearing. *Id.* at ¶ 8-9. Middle District Counsel were unreceptive. Rather than participate in the discussion themselves, Middle District Counsel left local counsel represent them on the first call. *Id.* at ¶ 8. Following the call, Cassandra Miller from Edelman Combs, although previously in agreement that the Eastern District best served Plaintiffs' interests, emailed Lowey to affirm their commitment to seek transfer to the Middle District and decline to participate on the next group call. Ex. 1, St. Phillip Decl.

This did not prevent Lowey from continuing to search for consensus and involve Middle District Counsel in the prosecution of this case. For example, Defendant recently filed a motion prematurely requesting a case management conference to impose a discovery schedule heavily favorable to PHEAA's interests. *See* ECF Nos. 6, 8. Lowey took the lead in coordinating a response to this motion, working with the firms who supported transfer to the Eastern District. St. Phillip

Decl. at ¶ 13. Recognizing that multiple oppositions would be duplicative, Lowey included Middle District Counsel in drafting a single response, despite their opposition to Lowey's transfer motion and motion to appoint interim class counsel. *Id.*

In contrast, the first and only time that Middle District Counsel reached out to Lowey was *after* the JPML transfer order. On June 26, 2018, Lowey attorneys Peter St. Phillip and Christian Levis participated in a call with Middle District Counsel Gary Lynch and Dan Edelman. *Id.* at ¶ 10. Their proposal was simple: Middle District Counsel were willing to work with Lowey and the other plaintiffs that supported transfer to the Eastern District if and only if Lynch, Edelman, and Lowey could serve as tri-lead counsel. *Id.* Lowey declined this offer. *Id.* As explained earlier, Lowey maintained concerns about Middle District Counsel's decision to withdraw support for transfer to the Eastern District and the potential ineffectiveness of a large leadership structure with tri-lead counsel and multiple executive committee members. Nevertheless, Lowey expressed an interest in working with Middle District Counsel and including them in the case moving forward. *Id.* Middle District Counsel refused to consider this option and told Lowey that if all plaintiffs would not support their proposed co-lead structure, they would rather file their own motion and "see how things play out before court." *Id.* at ¶ 10. Lowey filed its motion to be appointed interim class counsel the day after that call when it was clear that a consensus could not be reached. *Id.* at ¶ 11.

## II.     Middle District Counsel's Proposed Structure Is Disfavored In Cases Like This.

This case does not warrant a structure of multiple lead counsel and a five-firm executive committee. *See In re Milestone Sci. Sec. Litig.*, 187 F.R.D. 165, 176 (D.N.J. 1999) ("the approval of multiple lead counsel may engender inefficiency in class action litigation"); *Chill v. Green Tree Fin. Corp.*, 181 F.R.D. 398, 413 (D. Minn. 1998) (the structure of proposed leadership should not be "too distended to efficiently manage the prosecution of th[e] action"); *Reiger v. Altris Software, Inc.*, 1998 WL 1986953, at *6 (S.D. Cal. Sept. 14, 1998) (increasing the number of lead counsel may

"unnecessarily increase the time and expense spent on preparing and litigating the case"). While multiple leads and a several-member executive committee may be appropriate in certain cases where multiple groups of plaintiffs with potentially diverging interests exist, such as large complex antitrust actions, one lead and a small executive committee is the most efficient structure and is all that is necessary here.

Lowey proposes a streamlined and efficient structure with one lead counsel and a three-member executive committee (Lowey, PWCK and Edelson). Counsel on the executive committee were selected for the specific expertise in areas relevant to this case. For example, in addition to the team's experience outlined in Lowey's motion to appoint counsel, PWCK brings extensive litigation experience in the education industry, representing student loan borrowers in similar litigation against loan servicers Navient and Great Lakes. *See Nelson v. Great Lakes Educational Loan Servicing, Inc.*, 3:17-cv-00183-NJR (S.D. Ill.) (filed February 2017); *Wise v. SLM Corporation*, 3:14-cv-1426-SMY (S.D. Ill.) (filed December 30, 2014). In fact, the complaint PWCK filed against Great Lakes was one of the first class action cases against a student loan servicer for issues relating to income-driven repayment plans filed in the country, and alleges a line of misconduct similar to that alleged against PHEAA here. PWCK gained firsthand experience appealing the complex constitutional issues of preemption likely to arise here.[3] Notably, PWCK secured a supportive amicus brief from the Illinois Attorney General. This background will guide the team's strategy against PHEAA, conserving valuable time and resources in developing the case.

PWCK's *Salvatore* case is also by far the furthest along (filed March 1, 2017) in the Middle District[4] and is more representative than *Ford* of the claims arising from all of the related actions.[5]

---

[3] Indeed, PHEAA raised the defense of preemption in the action initiated by the Massachusetts Attorney General. *Massachusetts v. Pennsylvania Higher Education Assistance Agency*, 1784-cv-02682 (Mass. Super. Ct. Suffolk Cnty.).

[4] Middle District Counsel erroneously listed the case filing date as May 26, 2017.

The *Salvatore* action has already undergone mediation with fully briefed motions to dismiss. This will also advantage the Lowey team, providing insight into PHEAA's expected defense, negotiation, and discovery tactics.

In contrast, Middle District Counsel's proposed co-lead structure and five-member Executive Committee—with a total of seven law firms—far surpasses the needs of this case and undoubtedly will lead to duplicative efforts, infighting, increased costs, and inefficiencies that ultimately will delay resolution of Plaintiffs' claims. Although Middle District Counsel contend they have previously worked successfully together in other cases,[6] there is already evidence of a breakdown in their leadership structure and inefficiencies in this litigation. For example, following Lowey's motion for lead counsel, Middle District Counsel was unable to coordinate with its proposed team members and timely organize a response. Even though Lowey conferred with Gary Lynch and Dan Edelman before filing its motion, Middle District Counsel needed additional time to respond and sought an extension after the close of business on the day oppositions were due, unnecessarily delaying these proceedings. *See* ECF No. 4.

Middle District Counsel also demonstrated a critical lack of efficiency in developing and communicating litigation strategy. Prior to the JPML hearing, local counsel to two of Middle District Counsel's cases[7] (Anthony Fiorentino and Carlo Sabatini) participated on an April 30, 2018 call, the second call organized by Lowey seeking collaboration among Plaintiffs' counsel before the JPML. St. Phillip Decl. at ¶ 8. Middle District Counsel, who already filed responses opposing transfer to the

---

[5] While the *Ford* action solely focuses on TEACH grant recipients, the *Salvatore* case represents plaintiffs in both Income Driven Repayment (IDR) plans and the Public Service Loan Forgiveness (PSLF) plan, focusing on loans improperly placed into forbearance by PHEAA.

[6] Such a statement seems to contradict Middle District Counsel's statement in their brief that the proposed structure is a "recently formed group of attorneys." Opp. to Motion to Appoint Lowey Dannenberg at 2.

[7] Tony Fiorentino participated on behalf of the *Hawkins* and *Rockwell* Plaintiffs and Carlo Sabatini participated on behalf of the *Hawkins* Plaintiff.

Eastern District, did not participate. *Id.* When asked why Middle District Counsel changed their position and decided to oppose transfer to the Eastern District, Attorney Fiorentino responded, "I'm probably not the best emissary …. Sorry, I don't have more insight into that." *Id.* Attorney Sabatini similarly responded, "I'm in the same spot. … I don't know what the strategy was there and I can't speak to it." *Id.*

Similarly, at the JPML hearing, Middle District Counsel, who spoke on behalf of all Plaintiffs seeking transfer to the Middle District, was unable to answer basic questions about the theory of liability against DOE advanced in the *Ford* case, indicating a failure to effectively communicate with counsel for those Plaintiffs about the nature of that action. *See* Ex. 1, St. Phillip Decl. (MDL Panel Hearing Tr. at 6-7) ("That's not my case, Your Honor, so I'm not familiar with the theory of liability in that case."). Counsel for the *Ford* Plaintiffs did not attend the hearing. Middle District Counsel also argued against consolidation with *Ford,* contrary to the *Ford* Plaintiffs position in favor of consolidation. Resp. in Opp'n, *In re: FedLoan Student Loan Servicing Litigation*, MDL-No.-2833 (ECF No. 26); Ex. 2, St. Phillip Decl. (May 31, 2018 JPML Hearing Tr. at 6-7).

These few examples of Middle District Counsel's failure to effectively and efficiently coordinate on both procedural and substantive matters with the seven members of their proposed leadership team (and at such an early stage of the proceedings) are precisely the reasons courts strongly disfavor inflated leadership structures for cases like this.

**III.     Middle District Counsel Have Not Acted In The Best Interests of Plaintiffs and the Proposed Class.**

Class counsel have an affirmative obligation to "fairly and adequately represent the class." FED. R. CIV. P. 23(g)(4); *In re Gen. Motors Corp. Pick-Up Truck Fuel Tank Prod. Liab. Litig.*, 55 F.3d 768, 801 (3d Cir.) ("Beyond their ethical obligations to their clients, class attorneys, purporting to represent a class, also owe the entire class a fiduciary duty once the class complaint is filed."). Middle District Counsel's actions in this case suggest that they have not fairly and adequately served the

interests of Plaintiffs and the proposed class. Significantly, Middle District Counsel acknowledged their belief that transfer to the Eastern District would serve the best interests of Plaintiffs and the proposed class, yet, advocated before the JPML for consolidation and transfer to the Middle District. *See* St. Phillip Decl. at ¶¶ 5-7. In doing so, Middle District Counsel aligned with Defendant PHEAA's attempt to "home town" the actions with "local judicial control and local judicial authority, particularly…a local judge." Ex. 2, St. Phillip Decl. (May 31, 2018 JPML Hearing Tr. at 19). *See* Opp. to Motion to Appoint Lowey Dannenberg at 22 n.25 (ECF No. 10) ("the Edelman/Lynch Team supported the transfer to the Middle District because…FedLoan, itself, was in support of that district."). Middle District Counsel offered no reasonable rationale for the change in their position. Their advocacy for the Middle District not only failed to protect the best interests of the class, but effectively supported the "home town" interests of PHEAA.

Middle District Counsel give great weight to the *Ford* action as the first one filed and Attorney Doucet's (a member of the proposed 5-member Executive Committee) work and experience in that case. However, Middle District Counsel fail to mention that **none** of the claims against PHEAA, survived a motion to dismiss and the sole remaining claim against DOE is subject to a pending motion to dismiss and judgment on the pleadings on the basis of sovereign immunity.[8] Middle District Counsel also tout Attorney Doucet and his firm as "leaders in consumer focused advocacy, focusing nearly all of their litigation on consumer litigation against loan servicers and lenders." Opp. To Lowey's Motion for Appointment (ECF No. 10) at 14. Yet the *Ford* complaint is completely devoid of any claims brought under the consumer protection laws. It was PWKC, not

---

[8] The RICO and unjust enrichment claims brought by *Ford* against PHEAA were dismissed on March 19, 2018. *Ford et al. v. PHEAA et al.*, 5:17-cv-00049 (N.D. Ohio), ECF No. 28. On March 21, 2018, DOE filed a motion for dismissal for lack of subject matter jurisdiction and for partial judgment on the pleadings on the basis of sovereign immunity. *Id.*, ECF No. 32.

Middle District Counsel, that filed the first consumer protection claims against PHEAA. *See Salvatore v. PHEAA*, 1:17-cv-00385 (M.D. Pa.), ECF No. 1.

The above shortcomings further demonstrate that Lowey's proposed leadership is best able to represent the interests of Plaintiffs and the proposed class. Courts have repeatedly found this to be the case. *See Hall v. Best Buy Co.,* 274 F.R.D. 154, 165-66 (E.D. Pa. 2011) (finding that Lowey Dannenberg, as class counsel, vigorously prosecuted a wage-and-hour class action and settled the matter at arms-length by conducting discovery and engaging in protracted settlement discussions that resulted in a settlement commensurate with similar cases and that preserved categories of potential claims not asserted in the Amended Complaint); *see e.g., In re WorldCom, Inc. Sec. Litig.*, No. 02 Civ. 3288 (S.D.N.Y. Nov. 10. 2004) ("Lowey Dannenberg has worked tirelessly to promote harmony and efficiency in this sprawling litigation…[it] has done a superb job in its role as Liaison counsel, conducting itself with professionalism and efficiency…."); *In re Amaranth Nat. Gas Commodities Litig.*, 269 F.R.D. 366, 386 (S.D.N.Y. 2010) (Appointing Lowey class counsel, the court recognizes that "plaintiffs' counsel has vigorously represented the interests of the class throughout this litigation."); *In re Beacon Associates Litig.*, 09 CIV. 777 CM, 2013 WL 2450960, at *14 (S.D.N.Y. May 9, 2013) ("[t]he quality of representation is not questioned here, especially for those attorneys (principally from Lowey Dannenberg) who worked so hard to achieve this creative and, in my experience, unprecedented global settlement."). In contrast, the court in *In re Cmty. Bank of N. Virginia*, 418 F.3d 277, 307-08 (3d Cir. 2005) ("*Community Bank I*") questioned the adequacy of Dan Edelman and his firm and Carlson Lynch Sweet Kilpela & Carpenter for failing to assert colorable claims of plaintiffs and absent class members in the complaint or during settlement negotiations and then agreeing to release those claims in settlement, and expressed concern that failing to pursue such claims may suggest that class counsel placed their interests above those of the class. *See also In re Cmty. Bank of N. Virginia*, 622 F.3d 275, 303 (3d Cir. 2010), *as amended* (Oct. 20, 2010) ("we continue

to have concerns—essentially the same as those we identified in *Community Bank I*—regarding whether the named plaintiffs and their counsel are adequate class representatives"); *Riddle & Assocs., P.C. v. Kelly*, 414 F.3d 832, 837 (7th Cir. 2005) (finding sanctions against Edelman appropriate where "[s]o clear is it that [Edelman] filed a frivolous [counterclaim] ... in order to complicate this already far too complicated and absurdly protracted litigation, to the cost of [Riddle and its counsel]").[9]

## CONCLUSION

For the reasons stated above and in Lowey's Motion to Appoint Lowey Dannenberg P.C. as Lead Counsel, the Court should deny Middle District Counsel's motion and appoint Lowey as interim class counsel and chair of an Executive Committee consisting of Lowey, PWCK, and Edelson.

Date:  August 8, 2018

Respectfully submitted,

**LOWEY DANNENBERG, P.C.**
By: */s/ Peter D. St. Phillip*
Peter D. St. Phillip (PA ID# 70027)
pstphillip@lowey.com
Christian Levis (admitted *pro hac vice*)
clevis@lowey.com
Roland St. Louis III (admitted *pro hac vice*)
rstlouis@lowey.com
Lee J. Lefkowitz (to be admitted *pro hac vice*)
llefkowitz@lowey.com
44 S. Broadway, Suite 1100
White Plains, NY 10601
Tel.: (914) 997-0500

[9] When appointing interim class counsel, a court should also consider whether counsel has "demonstrated knowledge … of this Court's local rules and procedures." *See Thomas v. Gerber Prod. Co.*, No. 12-835 et al, 2012 WL 1606627, at *2 (D.N.J. May 8, 2012). Middle District Counsel – none of which are local – consistently disregard local rules and procedure. As examples, they failed to confer with Lowey to determine if it opposed an extension to file their response to Lowey's motion for lead counsel (St. Phillip Decl. at ¶ 12), as required by Sections A.1 (pg. 1) and I (pg. 3) of Your Honor's December 2, 2016 Policies and Procedures, failed to submit a separate brief in support of their motion for an extension in violation of L.R. 7.1(c), and likewise failed to submit a separate brief and proposed order with their opposition to Lowey's motion for lead counsel in violation of L.R. 7.1(a) and (c). This cavalier attitude towards the local rules and procedure raises further questions about whether Middle District Counsel are best able to represent Plaintiffs' interests.

Fax: (914) 997-0035

Laura Mummert (PA ID# 85964)
lmummert@lowey.com
Anthony M. Christina (PA ID# 322528)
achristina@lowey.com
200 Barr Harbor Drive, Suite 400
West Conshohocken, PA
Tel.: (610) 941-2760
Fax: (610) 862-9777

*Counsel for Plaintiffs Adam Morris, Arthur Burkle, Denise Graham, Danie Keegan, Shon Meckfessel and the Proposed Class*

**PEIFFER WOLF CARR & KANE, APLC**
Brandon M. Wise (to be admitted *pro hac vice*)
bwise@prwlegal.com
818 Lafayette Ave., Floor 2
St. Louis, MO 63104
Tel.: (314) 833-4825
Fax: (504) 523-2464

*Counsel for Plaintiff Danielle Salvatore and the Proposed Class*

**EDELSON & ASSOCIATES, LLC**
Marc H. Edelson (PA ID# 51834)
medelson@edelson-law.com
Liberato Verderame (PA ID# 80279)
lverderame@edelson-law.com
3 Terry Drive, Suite 205
Newtown, PA 18940
Tel.: (215) 867-2399
Fax: (267) 685-0676

*Counsel for Plaintiffs Carol Clancy and Arielle Anderson and the Proposed Class*

**GRABAR LAW OFFICE**
Joshua H. Grabar (PA ID# 82525)
jgrabar@grabarlaw.com
1735 Market Street, Suite 3750
Philadelphia, PA 19103
Tel.: (267) 507-6085

*Counsel for Plaintiffs Carol Clancy and Arielle Anderson and the Proposed Class*

12

**GOLDMAN SCARLATO & PENNY, P.C.**
Paul Scarlato (PA ID# 47155)
scarlato@lawgsp.com
Brian Penny (PA ID# 86805)
penny@lawgsp.com
8 Tower Bridge, Suite 1025
161 Washington Street
Conshohocken, PA 19428
Tel.: (484) 342-0700
Fax: (484) 580-8747

*Counsel for Plaintiffs Carol Clancy and Arielle Anderson and the Proposed Class*