**UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION** | **MDL Docket No. 18-2833** |
| **ALL CASES** | **Hon. C. Darnell Jones, II** |

**MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT PENNSYLVANIA HIGHER EDUCATION ASSISTANCE AGENCY'S MOTION TO DISMISS THE CONSOLIDATED CLASS ACTION COMPLAINT**

**BALLARD SPAHR LLP**

1735 Market Street, 51st Floor
Philadelphia, PA 19103
Telephone: 215.665.8500

**TABLE OF CONTENTS**

**Contents**

I.     INTRODUCTION ................................................................................. 1
II.    FACTUAL BACKGROUND ................................................................ 3
       A.    The Origin of the Federal Student Loan Program ................... 3
       B.    The TEACH Grant Program ..................................................... 4
       C.    Income-Driven Repayment Plans ............................................. 5
       D.    The Public Service Loan Forgiveness Program ....................... 6
       E.    The Department's Oversight of PHEAA .................................. 7
III.   THE CONSOLIDATED CLASS ACTION COMPLAINT ................. 12
       A.    TEACH Plaintiffs ................................................................... 13
       B.    IDR Plaintiffs ......................................................................... 14
       C.    PSLF Plaintiffs ....................................................................... 14
IV.    LEGAL STANDARD ........................................................................ 15
       A.    Motion to Dismiss for Lack of Subject-Matter Jurisdiction ... 15
       B.    Motion to Dismiss for Failure to State a Claim ..................... 16
       C.    Motion to Dismiss for Failure to Meet Heightened Pleading Requirements ........ 17
V.     ARGUMENT ..................................................................................... 17
       A.    The Court lacks subject matter-jurisdiction because PHEAA is entitled to
             derivative sovereign immunity under *Yearsley* ..................... 17
             1.    Applicable Law ............................................................. 18
             2.    The Department validly conferred authority to PHEAA to
                   administer federal student loans .................................. 20
             3.    PHEAA has serviced Plaintiffs' federal loans in accordance with
                   federal directives. ........................................................ 21
       B.    The Court should dismiss Plaintiffs' state-law claims as preempted by the
             HEA. ......................................................................................... 24
             1.    Applicable law .............................................................. 24
             2.    The HEA expressly preempts Plaintiffs' state-law claims. ..... 25
             3.    Federal law preempts Plaintiffs' state-law claims. ............ 29
             4.    The Department's position on preemption supports PHEAA's
                   motion. .......................................................................... 31
       C.    The Court lacks subject-matter jurisdiction over many of Plaintiffs'
             claims. ...................................................................................... 33
             1.    Many of the PSLF and TEACH Plaintiffs have not alleged an
                   injury-in-fact and, therefore, lack standing. ................. 33
             2.    The PSLF-related claims of the Pre-Forgiveness Plaintiffs are not
                   ripe. .............................................................................. 36
             3.    In the absence of an injury connected to a specific jurisdiction,
                   Plaintiffs lack standing to bring claims under the laws of that
                   jurisdiction. .................................................................. 38
       D.    The Court should dismiss the vast majority of Plaintiffs' state-law claims
             for failure to state a claim under Rule 12(b)(6). ................. 40
             1.    Plaintiffs fail to state a claim for breach of contract. ...... 40
             2.    Plaintiffs fail to state a claim for unjust enrichment. ...... 45

i

3.      Plaintiffs fail to state claims for breach of fiduciary duty, constructive fraud, negligence, negligent misrepresentation, and negligence *per se*..................................................................... 46

4.      Thirteen Plaintiffs fail to assert claims for constructive fraud and negligent misrepresentation. ................................................... 56

5.      Plaintiffs' fail to state claims under five of the consumer protection statutes................................................................................... 56

E.     The Court should dismiss the majority of Plaintiffs' claims for negligent misrepresentation, constructive fraud, and violations of consumer protection statutes for failure to satisfy Rule 9(b). ............................................... 60

# **TABLE OF AUTHORITIES**

**Page(s)**

**Federal Cases**

*3D Global Sols., Inc. v. MVM, Inc.*,
  552 F. Supp. 2d 1 (D.D.C. 2008) ............................................................63

*ACA Comput. Integrators, Inc. v. Cubic Transp. Sys.*,
  No. 10-cv-11926, 2012 U.S. Dist. LEXIS 42643 (D. Mass. Mar. 28, 2012) ........................43

*Ackerson v. Bean Dredging LLC*,
  589 F.3d 196 (5th Cir. 2009) ...............................................................21

*Africare, Inc. v. Xerox Complete Document Sols. Md., LLC*,
  Nos. 17-cv-1712, 17-cv-1945, 2020 U.S. Dist. LEXIS 8362 (D.D.C. Jan. 17,
  2020) ........................................................................................44

*Allstate Transp. Co. v. SEPTA*,
  No. 97-cv-1482, 2000 U.S. Dist. LEXIS 3831 (E.D. Pa. Mar. 27, 2000) ..............................41

*Alston v. Pa. State Univ.*,
  No. 14-cv-2480, 2015 U.S. Dist. LEXIS 174003 (M.D. Pa. June 9, 2015)..............................55

*Alvarez v. Ins. Co. of N. Am.*,
  313 F. App'x 465 (3d Cir. 2008) ...........................................................48

*Asemota v. Suntrust Mortg.*,
  No. 11-cv-2816, 2012 U.S. Dist. LEXIS 83744 (W.D. Tenn. June 18, 2012) .......................62

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009)..........................................................................16

*Bell v. Blue Cross & Blue Shield*,
  823 F.3d 1198 (8th Cir. 2016) ...............................................................25

*Bennett v. Nationstar Mortg., LLC*,
  No. 15-cv-00165, 2015 U.S. Dist. LEXIS 119532 (S.D. Ala. Aug. 17, 2015).......................47

*Biggs v. Bank of Am. Corp.*,
  No. 15-cv-00267, 2015 U.S. Dist. LEXIS 73405 (C.D. Cal. June 15, 2015) ........................59

*Bissett v. Verizon Wireless*,
  401 F. Supp. 3d 487 (M.D. Pa. July 18, 2019) ...............................................42

*Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States*,
  258 F. Supp. 3d 1 (D.D.C. 2017).............................................................62

*Boyle v. United Techs. Corp.*,
    487 U.S. 500 (1998)...........................................................................................19

*Bravia Capital Partners, Inc. v. Fike*,
    No. 09-cv-6375, 2010 U.S. Dist. LEXIS 88104 (S.D.N.Y. Aug. 25, 2010)............................44

*Brown v. AXA Re*,
    No. 02-cv-10138, 2004 U.S. Dist. LEXIS 7624 (S.D.N.Y. May 3, 2004) ..............................43

*Brown v. Bank of Am. Corp.*,
    No. 10-cv-11085, 2011 U.S. Dist. LEXIS 36235 (D. Mass. Mar. 31, 2011) .........................58

*Brown v. Philip Morris, Inc.*,
    250 F.3d 789 (3d Cir. 2001)...............................................................................16

*Burger King Corp. v. Weaver*,
    169 F.3d 1310 (11th Cir. 1999) ...........................................................................44

*Butters v. Vance Int'l, Inc.*,
    225 F.3d 462 (4th Cir. 2000) ..............................................................................18

*C & E Servs., Inc. v. Ashland Inc.*,
    601 F. Supp. 2d 262 (D.D.C. 2009) ......................................................................44

*Camasta v. Jos. A. Bank Clothiers, Inc.*,
    761 F.3d 732 (7th Cir. 2014) ..............................................................................63

*Campbell-Ewald Co. v. Gomez*,
    136 S. Ct. 663 (2016)...........................................................................17, 18, 19

*Carley v. Wheeled Coach*,
    991 F.2d 1117 (3d Cir. 1993)...........................................................................18, 19

*Cattie v. Wal-Mart Stores, Inc.*,
    504 F. Supp. 2d 939 (S.D. Cal. 2007).....................................................................57

*Cecile Indus., Inc. v. United States*,
    793 F.2d 97 (3d Cir. 1986)................................................................................52

*Ceithaml v. Celebrity Cruises, Inc.*,
    207 F. Supp. 3d 1345 (S.D. Fla. 2017) ...................................................................62

*Chae v. SLM Corp.*,
    593 F.3d 936 (9th Cir. 2010) ...................................................................2, 26, 28, 30

*Chalfin v. Beverly Enters., Inc.*,
    745 F. Supp. 1117 (E.D. Pa. 1990) .......................................................................54

*Chesney v. TVA*,
782 F. Supp. 2d 570 (E.D. Tenn. 2011) ..................................................................18

*In re Chocolate Confectionary Antitrust Litig.*,
602 F. Supp. 2d 538 (M.D. Pa. 2009) ....................................................................39

*Clapper v. Amnesty Int'l USA*,
568 U.S. 398 (2013) ................................................................................................34

*Constitution Party of Pa. v. Aichele*,
757 F.3d 347 (3d Cir. 2014) ..............................................................15, 16, 18, 34

*Coventry Health Care of Mo., Inc. v. Nevils*,
137 S. Ct. 1190 (2017) ............................................................................................25

*Crosby v. Nat'l Foreign Trade Council*,
530 U.S. 363 (2000) ................................................................................................30

*Cruz v. FXDirectDealer LLC*,
720 F.3d 115 (2d. Cir. 2013) ..................................................................................44

*Cty. of Santa Clara v. Astra USA, Inc*,
No. 05-cv-03740, 2006 U.S. Dist. LEXIS 33047 (N.D. Cal. May 17, 2006) .........43

*Cunningham v. Gen. Dynamics Info. Tech.*,
888 F.3d 640 (4th Cir. 2018) ......................................................................18, 19, 21

*Daniel v. Navient Sols., LLC*,
328 F. Supp. 3d 1319 (M.D. Fla. 2018) ..................................................................29

*Davis v. Navient Corp.*,
No. 17-cv-00992, 2018 U.S. Dist. LEXIS 41365 (W.D.N.Y. Mar. 12, 2018) .........29

*Dep't of Army v. Blue Fox, Inc.*,
525 U.S. 255 (1999) ................................................................................................20

*Deweese v. AMTRAK*,
590 F.3d 239 (3d Cir. 2009) ....................................................................................24

*Dicicco v. Citizens Fin. Grp., Inc.*,
No. 15-cv-267, 2015 U.S. Dist. LEXIS 120798 (E.D. Pa. Sep. 10, 2015) .............60

*Eaglehead Corp., v. Cambridge Capital Grp., Inc.*,
170 F. Supp. 2d 552 (D. Md. 2001) ........................................................................44

*Edwards v. Ocwen Loan Servicing, LLC*,
24 F. Supp. 3d 21 (D.D.C. 2014) ............................................................................49

*Elesh v. Ocwen Loan Servicing, LLC*,
  No. 12-cv-10356, 2013 U.S. Dist. LEXIS 56283 (N.D. Ill. Apr. 19, 2013) ...........................49

*Enola Contracting Servs. v. URS Grp., Inc.*,
  No. 08-cv-2, 2008 U.S. Dist. LEXIS 33441 (N.D. Fla. Apr. 23, 2008) .................................44

*Errico v. Pac. Capital Bank*,
  753 F. Supp. 2d 1034 (N.D. Cal. 2014) ...................................................................62

*In re Express Scripts, Inc.*,
  MDL No. 1672, 2007 U.S. Dist. LEXIS 44722 (E.D. Mo. June 20, 2007)..........................62

*F.E.I. Co. v. United States*,
  No. 16-cv-02237, 2019 U.S. Dist. LEXIS 135644 (M.D. Pa. Aug. 12, 2019) ......................54

*In re Federal-Mogul Global*,
  684 F.3d 355 (3d Cir. 2012)...................................................................................24

*Finkelman v. NFL*,
  810 F.3d 187 (3d Cir. 2016)...........................................................................33, 34

*Fleshman v. Wells Fargo Bank, N.A.*,
  27 F. Supp. 3d 1127 (D. Ore. 2014).................................................................49, 51

*Foisy v. Royal Maccabees Life Ins. Co.*,
  241 F. Supp. 2d 65 (D. Mass. 2002) .......................................................................58

*Frederico v. Home Depot*,
  507 F.3d 188 (3d Cir. 2007)...........................................................................61, 63

*Freightliner Corp. v. Myrick*,
  514 U.S. 280 (1995)................................................................................................30

*Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*,
  528 U.S. 167 (2000)................................................................................................34

*Gade v. Nat'l Solid Wastes Mgmt. Ass'n*,
  505 U.S. 88 (1992)..........................................................................................24, 30

*In re Generic Pharms. Pricing Antitrust Litig.*,
  368 F. Supp. 3d 814 (E.D. Pa. 2019) ......................................................................39

*Genna v. Sallie Mae, Inc.*,
  No. 11-cv-7371, 2012 U.S. Dist. LEXIS 54044 (S.D.N.Y. Apr. 17, 2012) ..........................29

*Gerbitz v. ING Bank, FSB*,
  967 F. Supp. 2d 1072 (D. Del. 2013)......................................................................60

*Giordano v. Claudio,*
    714 F. Supp. 2d 508 (E.D. Pa. 2010) ....................................................................45

*Gordon v. Chipotle Mexican Grill, Inc.,*
    344 F. Supp. 3d 1231, 1246 (D. Colo. 2018) ........................................................53

*Gordon v. Chipotle Mexican Grill, Inc.,*
    No. 17-cv-1415, 2018 U.S. Dist. LEXIS 129928 (D. Colo. Aug. 1, 2018) ...........53

*Gratz v. Bollinger,*
    539 U.S. 244 (2003) ...............................................................................................34

*Great Am. Assurance Co. v. Ferguson,*
    No. 10-cv-0915, 2010 U.S. Dist. LEXIS 131867 (D. Md. Dec. 14, 2010) ............47

*Grenadier v. BWW Law Grp.,*
    No. 14-cv-827, 2015 U.S. Dist. LEXIS 11418 (E.D. Va. Jan. 30, 2015) ..............63

*Gress v. Freedom Mortg. Corp.,*
    386 F. Supp. 3d 455 (M.D. Pa. 2019) ....................................................................63

*Hahn v. OnBoard LLC,*
    No. 09-cv-03639, 2009 U.S. Dist. LEXIS 107606 (D.N.J. Nov. 16, 2009) ..........44

*Harold v. McGann,*
    406 F. Supp. 2d 562 (E.D. Pa. 2005) .....................................................................48

*Harris v. Kellogg, Brown & Root Servs.,*
    No. 08-cv-563, 2016 U.S. Dist. LEXIS 121859 (W.D. Pa. Sept. 9, 2016) ...........18

*Heflebower v. JPMorgan Chase Bank, NA,*
    No. 12-cv-01671, 2013 U.S. Dist. LEXIS 141278 (E.D. Cal. Sep. 27, 2013) .......51

*Helfrich v. Blue Cross & Blue Shield Ass'n,*
    804 F.3d 1090 (10th Cir. 2015) .............................................................................25

*Henderson v. Wells Fargo Bank, N.A.,*
    No. 13-cv-378, 2016 U.S. Dist. LEXIS 9326 (D. Conn. Jan. 27, 2016) ...............51

*Henok v. Chase Home Fin., LLC,*
    915 F. Supp. 2d 162 (D.D.C. 2013) .......................................................................51

*Hildebrand v. Dentsply Int'l, Inc.,*
    No. 06-cv-5439, 2011 U.S. Dist. LEXIS 112458 (E.D. Pa. Sept. 30, 2011) .........38

*Holk v. Snapple Beverage Corp.,*
    575 F.3d 329 (3d Cir. 2009)...................................................................................24

*Howard v. Nationstar Mortg., LLC*,
    No. 16-cv-2831, 2017 U.S. Dist. LEXIS 222636 (W.D. Tenn. June 13, 2017) ....................50

*Hunt v. U. S. Tobacco Co.*,
    538 F.3d 217 (3d Cir. 2008)................................................................................60

*Hyland v. Navient Corp.*,
    No. 18-cv-9031, 2019 U.S. Dist. LEXIS 113038 (S.D.N.Y. July 8, 2019) ..........29, 42, 46, 47,
    .........................................................................................................49, 50, 51, 52, 60

*In re Insulin Pricing Litig.*,
    No. 17-cv-699, 2019 U.S. Dist. LEXIS 25185 (D.N.J. Feb. 15, 2019) ..................................39

*Interwave Tech. Inc. v. Rockwell Automation, Inc.*,
    No. 05-cv-398, 2005 U.S. Dist. LEXIS 37980 (E.D. Pa. Dec. 30, 2005)...............................44

*Joern v. Ocwen Loan Servicing, LLC*,
    No. 10-cv-0134, 2010 U.S. Dist. LEXIS 92703 (E.D. Wash. Sep. 2, 2010) .........................62

*Johnson v. DeVos*,
    775 F. App'x 86 (4th Cir. 2019) .........................................................................20

*Johnson v. Nationstar Mortg., LLC*,
    No. 14-cv-02536, 2014 U.S. Dist. LEXIS 149275 (D. Md. Oct. 21, 2014) ..........................49

*In re KBR, Inc., Burn Pit. Litig.*,
    744 F.3d 326 (4th Cir. 2014) .............................................................................23

*Kearns v. Ford Motor Co.*,
    567 F.3d 1120 (9th Cir. 2009) ...........................................................................63

*Kehr Packages v. Fidelcor, Inc.*,
    926 F.2d 1406 (3d Cir. 1991)..............................................................................16

*King v. Avtech Aviation, Inc.*,
    655 F.2d 77 (5th Cir. 1981) ...............................................................................53

*Kokkonen v. Guardian Life Ins. Co. of Am.*,
    511 U.S. 375 (1994).........................................................................................20

*Kuhns v. Scottrade, Inc.*,
    868 F.3d 711 (8th Cir. 2017) .............................................................................63

*L.R. v. Sch. Dist. of Phila.*,
    836 F.3d 235 (3d Cir. 2016)...............................................................................17

*Lane v. Pena*,
    518 U.S. 187 (1996).........................................................................................20

*Laspina v. SEIU Pa. State Council*,
  No. 18-cv-2018, 2019 U.S. Dist. LEXIS 147506 (M.D. Pa. Aug. 29, 2019) ........................39

*Laster v. T-Mobile USA, Inc.*,
  407 F. Supp. 2d 1181 (S.D. Cal. 2005) .................................................................................57

*Lawson-Ross v. Great Lakes Higher Educ. Corp.*,
  No. 17-cv-0253, 2018 U.S. Dist. LEXIS 199048 (N.D. Fla. Sept. 20, 2018) .......26, 28, 29, 32

*Leon v. Cont'l AG*,
  301 F. Supp. 3d 1203 (S.D. Fla. 2017) .................................................................................63

*Leveto v. Lapina*,
  258 F.3d 156, 161 (3d Cir. 2001).........................................................................................18

*Levy-Tatum v. Navient Sols., Inc.*,
  183 F. Supp. 3d 701 (E.D. Pa. 2016) ...................................................................................53

*Linsley v. FMS Inv. Corp.*,
  No. 11-cv-961, 2012 U.S. Dist. LEXIS 53735 (D. Conn. Apr. 17, 2012).......................26, 28

*Markle v. HSBC Mortg. Corp. (USA)*,
  844 F. Supp. 2d 172 (D. Mass. 2011) ...................................................................................51

*McBride v. PHH Mortg. Corp.*,
  No. 18-cv-1401, 2019 U.S. Dist. LEXIS 147534 (W.D. Pa. Aug. 28, 2019).........................54

*McCann v. Newman Irrevocable Tr.*,
  458 F.3d 281 (3d Cir. 2006)..................................................................................................16

*McCray v. Bank of Am., Corp.*,
  No. 14-cv-2446, 2017 U.S. Dist. LEXIS 54388 (D. Md. Aug. 10, 2017) ..............................55

*McCue v. City of New York (In re World Trade Ctr. Disaster Site, Litig.)*,
  521 F.3d 169 (2d Cir. 2008)...........................................................................................19, 21

*McCulloch v. PNC Bank Inc.*,
  298 F.3d 1217 (11th Cir. 2002) ............................................................................................26

*McCullough v. World Wrestling Entm't, Inc.*,
  172 F. Supp. 3d 528 (D. Conn. 2016)...................................................................................62

*Metz v. Wyeth*,
  872 F. Supp. 2d 1335, 1343 (M.D. Fla. 2012).................................................................47, 53

*Miller Inv. Tr. v. Morgan Stanley & Co., LLC*,
  308 F. Supp. 3d 411 (D. Mass. 2018) ...................................................................................62

*Milmark Services, Inc. v. United States*,
  2 Cl. Ct. 116 (Cl. Ct. 1983) ........................................................................22

*Minn. Life Ins. Co. v. Wilmington Trust Co.*,
  No. 14-cv-443, 2016 U.S. Dist. LEXIS 27730 (E.D. Tenn. Mar. 4, 2016) ............................63

*Montanez v. HSBC Mortg. Corp.*,
  876 F. Supp. 2d 504 (E.D. Pa. 2012) ...................................................45

*In re Naispan Antitrust Litig.*,
  42 F. Supp. 3d 735 (E.D. Pa. 2014) ........................................38, 46

*NE Hub Partners, L.P. v. CNG Transmission Corp.*,
  239 F.3d 333 (3d Cir. 2001) ....................................................36, 37

*Neale v. Volvo Cars of N. America*,
  794 F.3d 353 (3d Cir. 2015) .............................................................39

*Nelson v. Great Lakes Educ. Loan Services*,
  928 F.3d 639 (7th Cir. 2019) ............................................................27

*Nguyen v. U.S. Catholic Conference*,
  548 F. Supp. 1333 (W.D. Pa. 1982) ...........................................41, 42

*Nguyen v. U.S. Catholic Conference*,
  719 F.2d 52 (3d Cir. 1983) ............................................................41

*In re Niaspin Antitrust Litig.*,
  MDL No. 2460, 2015 U.S. Dist. LEXIS 164021 (E.D. Pa. Dec. 8, 2015) ............................39

*Northview Motors, Inc. v. Chrysler Motors Corp.*,
  227 F.3d 78 (3d Cir. 2000) ............................................................43

*In re Oil Spill by the Oil Rig "Deepwater Horizon"*,
  MDL No. 2179, 2016 U.S. Dist. LEXIS 18248 (E.D. La. Feb. 16, 2016) ............................21

*Oran v. Stafford*,
  226 F.3d 275 (3d Cir. 2000) ............................................................9

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
  193 F.3d 781 (3d Cir. 1999) ...................................................53, 54

*Pa. v. Navient Corp.*,
  354 F. Supp. 3d 529 (M.D. Pa. 2018) ....................................................29

*In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*,
  No. 18-cv-00825, 2019 U.S. Dist. LEXIS 181298 (W.D. Ky. Oct. 21, 2019) ...........................9

*Paradise Hotel Corp. v. Bank of Nova Scotia*,
   842 F.2d 47 (3d Cir. 1988).................................................................................49

*Peachlum v. City of New York*,
   333 F.3d 429 (3d Cir. 2003).........................................................................36, 37

*Peterson v. GMAC Mortg., LLC*,
   No. 11-cv-11115, 2011 U.S. Dist. LEXIS 123216 (D. Mass. Oct. 25, 2011) ........................57

*Precision Pine & Lumber, Inc. v. United States*,
   596 F.3d 817 (Fed. Cir. 2010).............................................................................44

*Reilly v. Ceridian Corp.*,
   664 F.3d 38 (3d Cir. 2011)................................................................................34

*Republic Servs. of Pa., LLC v. Caribbean Operators, LLC*,
   301 F. Supp. 3d 468 (E.D. Pa. 2018)......................................................................34

*Rick v. Profit Mgmt. Assocs.*,
   241 F. Supp. 3d 215 (D. Mass. 2017)......................................................................63

*Ries v. AMTRAK*,
   960 F.2d 1156 (3d Cir. 1992)..............................................................................53

*Rister v. Cmty. Bank of Rowan*,
   No. 14-cv-5079, 2015 U.S. Dist. LEXIS 127325 (E.D. Pa. Sept. 21, 2015) ...........................43

*Rivera v. Bank of Am. Home Loans*,
   No. 09-cv-2450, 2011 U.S. Dist. LEXIS 43138 (E.D.N.Y. Apr. 21, 2011) .............................42

*In re Rockefeller Ctr. Props., Inc. Sec. Litig.*,
   184 F.3d 280 (3d Cir. 1999)..............................................................................15

*Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*,
   965 F. Supp. 2d 1141 (E.D. Cal. 2013)....................................................................63

*Scott v. J.P. Morgan Chase & Co.*,
   296 F. Supp. 3d 98 (D.D.C. 2017).........................................................................20

*Selman v. CitiMortgage, Inc.*,
   No. 12-cv-0441, 2013 U.S. Dist. LEXIS 37017 (S.D. Ala. Mar. 5, 2013).............................51

*SEPTA v. Guilead Scis., Inc.*,
   102 F. Supp. 3d 688 (E.D. Pa. 2015)......................................................................47

*Smith v. Allstate Ins. Co.*,
   904 F. Supp. 2d 515 (W.D. Pa. 2012)......................................................................44

*Spaulding v. Wells Fargo Bank, N.A.*,
  714 F.3d 769 (4th Cir. 2013) ...................................................................63

*Spinnato v. Unity of Omaha Life Ins. Co.*,
  322 F. Supp. 3d 377 (E.D.N.Y. 2018) .....................................................63

*Stone Motor Co. v. Gen. Motors Corp.*,
  293 F.3d 456 (8th Cir. 2002) ...................................................................44

*Taggart v. Wells Fargo Home Mortg., Inc.*,
  No. 10-cv-00843, 2010 U.S. Dist. LEXIS 102747 (E.D. Pa. Sep. 27, 2010) ..........................49

*Tatum v. Oberg*,
  650 F. Supp. 2d 185 (D. Conn. 2009) ......................................................63

*Texas v. United States*,
  523 U.S. 296 (1998) .............................................................................36, 37

*In re Thalomid & Revlimid Antitrust Litig.*,
  No. 14-cv-6997, 2015 U.S. Dist. LEXIS 177541 (D.N.J. Oct. 29, 2015) ...............................39

*Thomas v. Indep. Twp.*,
  463 F.3d 285 (3d Cir. 2006).....................................................................17

*Threshold Techs., Inc. v. United States*,
  117 Fed. Cl. 681 (Fed. Cl. 2014) .............................................................43

*Timberline Hills Inv'rs, LLC v. Hoviss Dev. Grp., LLC*,
  No. 15-cv-02170, 2016 U.S. Dist. LEXIS 87940 (D. Or. July 7, 2016)................................62

*Toll Bros., Inc. v. Twp. of Readington*,
  555 F.3d 131 (3d Cir. 2009)................................................................33, 34

*Travelers Indem. Co. v. Cephalon, Inc.*,
  32 F. Supp. 3d 538 (E.D. Pa. 2014) ........................................................47

*Tutwiler v. Sandoz Inc.*,
  No. 16-cv-01246, 2017 U.S. Dist. LEXIS 122325 (N.D. Ala. Aug. 3, 2017) ..........................62

*United States v. Locke*,
  529 U.S. 89 (2000)..................................................................................25

*United States v. Mitchell*,
  445 U.S. 535 (1980)................................................................................20

*United States ex rel. Matheny v. Medco Health Sols., Inc.*,
  671 F.3d 1217 (11th Cir. 2012) ...............................................................22

*United States ex rel. Rigsby v. State Farm Fire & Cas. Co.*,
    No. 06-cv-433, 2016 U.S. Dist. LEXIS 69924 (S.D. Miss. May 27, 2016) ............................9

*In re Universal Serv. Fund Tel. Billing Practices Litig.*,
    300 F. Supp. 2d 1107 (D. Kan. 2003) ....................................................................................63

*In re Vehicle Carrier Servs. Antitrust Litig.*,
    846 F. 3d 71 (3d Cir. 2017)...................................................................................................25

*Vernon v. Qwest Communs. Int'l, Inc.*,
    643 F. Supp. 2d 1256 (W.D. Wash. 2009)............................................................................63

*Von Grabe v. Sprint*,
    312 F. Supp. 2d 1285 (S.D. Cal. 2003).................................................................................57

*W. Chester Univ. Found. v. Metlife Ins. Co.*,
    259 F. Supp. 3d 211 (E.D. Pa. 2017) (Jones, J.)..................................................................17

*Wachovia Bank, Nat'l Ass'n v. Preston Lake Homes, LLC*,
    750 F. Supp. 2d 682 (W.D. Va. 2010) .................................................................................44

*Walker v. Deutsche Bank Nat'l Trust Co.*,
    No. 16-cv-6976, 2017 U.S. Dist. LEXIS 43044 (D. Conn. Mar. 24, 2017) ...........................49

*Weinbach v. Starwood Hotels & Resorts Worldwide, Inc.*,
    No. 16-cv-783, 2017 U.S. Dist. LEXIS 134884 (E.D. Mo. Aug. 23, 2017).....................53, 54

*Weinstein v. JP Morgan Chase/Chase Fin.*,
    No. 12-cv-361, 2013 U.S. Dist. LEXIS 65937 (E.D. Pa. May 8, 2013)..................................45

*In re Wellbutrin XL Antitrust Litig*,
    260 F.R.D. 143 (E.D. Pa. 2009)......................................................................................39, 47

*Winebarger v. PHEAA*,
    411 F. Supp. 3d 1070 (C.D. Cal. 2019) ....................................2, 26, 29, 30, 35, 42, 51, 52, 59

*Winer Family Tr. v. Queen*,
    503 F.3d 319 (3d Cir. 2007).................................................................................................38

*Wyeth v. Levine*,
    555 U.S. 555 (2009)............................................................................................................31

*Yearsley v. W.A. Ross Construction Co.*,
    309 U.S. 18 (1940)..................................................................................................1, 18, 19

*Zimmerman v. HBO Affiliate Grp.*,
    834 F.2d 1163 (3d Cir. 1987)...............................................................................................38

**State Cases**

*Badgett v. Sec. State Bank*,
   807 P.2d 356 (Wash. 1991)........................................................................44

*Cenatiempo v. Bank of Am., N.A.*,
   219 A.3d 767 (Conn. 2019) .......................................................................51

*Chadbourne v. Kappaz*,
   779 A.2d 293 (D.C. 2001) .........................................................................53

*City of Bristol v. R.C. Knox & Co.*,
   No. 07-cv-5004598, 2012 Conn. Super. LEXIS 1836 (Conn. Super. Ct. July
   13, 2012) ....................................................................................................43

*Dietz v. Atchison, T. & S.F. Ry.*,
   823 P.2d 810 (Kan. Ct. App. 1991) ...........................................................53

*Doe v. Evans*,
   814 So. 2d 370 (Fla. 2002).........................................................................48

*Donald B. Murphy Contractors v. King Cty.*,
   49 P.3d 912 (Wash. Ct. App. 2002)...........................................................43

*Eigerman v. Putnam Invs., Inc.*,
   877 N.E.2d 1258 (Mass. 2007) ..................................................................44

*Fagerquist v. W. Sun Aviation, Inc.*,
   236 Cal. Rptr. 633 (Cal. Ct. App. 1987) ....................................................53

*Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.*,
   647 A.2d 852 (N.J. Super. Ct. App. Div. 1994)..........................................44

*Guz v. Bechtel Nat'l, Inc.*,
   8 P.3d 1089 (Cal. 2000) .............................................................................44

*Healthmart USA, LLC v. Directory Assistants, Inc.*,
   No. 12-cv-00606, 2013 Tenn. App. LEXIS 307 (Tenn. Ct. App. Apr. 29,
   2013) ..........................................................................................................44

*Kanamaru v. Holyoke Mut. Ins. Co.*,
   892 N.E. 2d 759 (Mass. App. Ct. 2008) .....................................................58

*Kenney v. Sci., Inc.*,
   497 A.2d 1310 (N.J. Super. Ct. App. Div. 1985)........................................47

*Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc.*,
   601 So. 2d 942 (Ala. 1992).........................................................................44

*Landry v. Spitz*,
  925 A.2d 334 (Conn. App. Ct. 2007)......................................................................44

*N. Tr. Co. v. VIII S. Mich. Assocs.*,
  657 N.E.2d 1095 (Ill. App. Ct. 1995) ...................................................................44

*People v. Coventry First LLC*,
  915 N.E.2d 616 (N.Y. 2009)..................................................................................48

*Pollack v. Quick Quality Rests., Inc.*,
  172 A.3d 568 (N.J. Super. Ct. App. Div. 2017).....................................................43

*Queen's Park Oval Asset Holding Tr. v. Belveal*,
  Nos. 114,849, 115,246, 2017 Kan. App. Unpub. LEXIS 348 (Kan. Ct. App.
  May 12, 2017) ........................................................................................................59

*SMS Fin. V, LLC v. Conti*,
  865 N.E.2d 1142 (Mass. Ct. App. 2007) ...............................................................58

*Steward v. Holland Family Props., LLC*,
  726 S.E.2d 251 (Va. 2012).....................................................................................54

*Vassalli v. Ahneman Kirby, LLC*,
  FSTCV176030884S, 2018 Conn. Super. LEXIS 111 (Conn. Super. Ct. Jan.
  12, 2018) ................................................................................................................53

*W. Prop. Holdings, Ltd. Liab. Co. v. Aequitas Capital Mgmt.*,
  392 P.3d 770 (Or. Ct. App. 2017)..........................................................................44

*Waste Connections of Kan., Inc. v. Ritchie Corp.*,
  298 P.3d 250 (Kan. 2013) ......................................................................................44

**Federal Statutes**

12 U.S.C. § 5481......................................................................................................55

12 U.S.C. § 5531.............................................................................................51, 52, 54

12 U.S.C. § 5536.............................................................................................51, 52, 54

12 U.S.C. § 5552......................................................................................................55

12 U.S.C. § 5564......................................................................................................55

20 U.S.C. §§ 1070g–1070g-4 ...................................................................................3, 4

20 U.S.C. § 1070g-1 ....................................................................................................4

20 U.S.C. § 1082.................................................................................................3, 7, 55

20 U.S.C. § 1083 .................................................................................................28

20 U.S.C. §§ 1087a–1087j ...................................................................................3

20 U.S.C. § 1087a .................................................................................................7

20 U.S.C. § 1087e ...........................................................................................3, 6, 7

20 U.S.C. § 1087f .............................................................................................7, 21

20 U.S.C. § 1098g ...........................................................................................2, 26

44 U.S.C. § 1507 ...................................................................................................7

Consolidated Appropriations Act,
    Pub. L. No. 115-141, § 315, 132 Stat. 348 (2018) ...........................................7, 11

Higher Education Act,
    20 U.S.C. §§ 1070–1099c ...........................................................................1, 3, 21

**State Statutes**

24 Pa. Stat. § 5101 ...............................................................................................7

24 Pa. Stat. § 5102 ............................................................................................7, 8

24 Pa. Stat. § 5104 ...............................................................................................8

24 Pa. Stat. § 5105.6 .........................................................................................7, 8

Cal. Civ. Code § 1750 *et seq.* .............................................................................57

Cal. Civ. Code § 1782(a) ....................................................................................57

D.C. Code § 28-3901 *et seq.* ...............................................................................58

M.G.L. c. 93A .....................................................................................................57

Wash. Rev. Code § 5.40.050................................................................................47, 54

**Rules**

Fed. R. Civ. P. 8(a) .............................................................................................42

Fed. R. Civ. P. 9(b) .........................................................................1, 3, 17, 61, 62, 63

Fed. R. Civ. P. 12(b)(1)...........................................................1, 2, 15, 18, 33, 37

Fed. R. Civ. P. 12(b)(6)...................................................1, 3, 15, 16, 18, 33, 40

**Regulations**

34 C.F.R. § 682.209 ...................................................................................................5, 8

34 C.F.R. § 682.210 .......................................................................................................8

34 C.F.R. § 682.211 ...........................................................................................8, 51, 52

34 C.F.R. § 682.215 ....................................................................................................6, 8

34 C.F.R. § 682.700 .....................................................................................................10

34 C.F.R. § 685.204–05 .................................................................................................8

34 C.F.R. § 685.208 ....................................................................................................5, 8

34 C.F.R. § 685.209 .................................................................................................5, 6, 8

34 C.F.R. § 685.219 ..................................................................................................6, 35

34 C.F.R. § 685.220 .......................................................................................................8

34 C.F.R. § 685.221 .......................................................................................................6

34 C.F.R. § 686.43 .........................................................................................................5

**U.S. Constitutional Provisions**

U.S. CONST. art. III, § 2 ...............................................................................................33

**Other Authorities**

Consumer Financial Protection Bureau, *Consumer Financial Protection Bureau
   and U.S. Department of Education Sign Memorandum of Understanding to
   Better Serve Student Loan Borrowers* (Feb. 3, 2020), *available at*
   https://www.consumerfinance.gov/about-us/newsroom/cfpb-us-department-
   education-sign-memorandum-understanding-better-serve-student-loan-
   borrowers/ ...............................................................................................................12

Consumer Financial Protection Bureau, *Staying On Track While Giving Back*
   (June 2017), *available at*
   https://files.consumerfinance.gov/ f/documents/201706_cfpb_PSLF-midyear-
   report.pdf ................................................................................................................12

Department of Education FY 2018 Agency Financial Report (2018 FY Report),
   *available at* https://www2.ed.gov/about/reports/annual/2018report/agency-
   financial-report.pdf ..........................................................................................4, 6, 35

*Federal Preemption and State Regulation of the Department of Education's*
    *Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed.
    Reg. 10,619 (Mar. 12, 2018)........................................................................7, 8, 10, 11, 31, 32

Federal Student Aid, TEACH Grant Reconsideration Process, *available at*
    https://studentaid.gov/understand-aid/types/grants/teach/teach-reconsideration
    (last accessed Feb. 6, 2020) ...........................................................................................5

*Public Service Loan Forgiveness*, Federal Student Aid, *available at*
    https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service
    (last accessed Feb. 9, 2020) ...........................................................................................7

Statement of Interest, *Chae v. SLM Corp.*, No. 08-56154 (9th Cir. Feb. 26, 2009)
    (Dkt. No. 22) .................................................................................................................32

Statement of Interest, *Massachusetts v. PHEAA*, No. 1784-cv-02682 (Mass.
    Super. Ct., Jan. 8, 2018)..............................................................................................9, 11

Statement of Interest, *Sanchez v. ASA College, Inc.*,
    No. 14-cv-5006 (S.D.N.Y. Jan. 23, 2015) (Dkt. No. 64)..............................................32

Statement of Interest, *Student Loan Servicing Alliance v. Taylor*, No. 18-640
    (D.D.C. Aug. 24, 2018) (Dkt. No. 64) ..........................................................................11

U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan*
    *Forgiveness: Education Needs to Provide Better Information for the Loan*
    *Servicer and Borrowers* (2018) ...............................................................................10, 11

U.S. Gov't Accountability Office, GAO-19-595, *Public Service Loan*
    *Forgiveness: Improving the Temporary Expanded Process Could Help*
    *Reduce Borrower Confusion* (2019) .............................................................................11

U.S. Gov't Accountability Office, GAO-19-347, *Federal Student Loans:*
    *Education Needs to Verify Borrowers' Information for Income-Driven*
    *Repayment Plans* (2019) ..............................................................................................12

Pursuant to Federal Rules of Civil Procedure 9(b), 12(b)(1), and 12(b)(6), Defendant Pennsylvania Higher Education Assistance Agency (PHEAA), doing business as FedLoan Servicing, moves this Court for an Order dismissing the putative class-action claims against PHEAA with prejudice.

## I.    INTRODUCTION

Plaintiffs, a group of 33 federal student loan borrowers, have filed these putative class actions against the U.S. Department of Education and the Secretary of Education (together, the Department) and one of the Department's contractual student loan servicers, PHEAA, based on alleged servicing errors relating to three federal student borrower benefit programs: (1) the Teacher Education Assistance for College and Higher Education (TEACH) Grant program, (2) income-driven repayment (IDR) plans, and (3) the Public Service Loan Forgiveness (PSLF) program. Plaintiffs' claims against PHEAA must be dismissed for several reasons, including PHEAA's entitlement to derivative sovereign immunity, federal preemption of state law, lack of standing and ripeness, and failure to plead necessary elements.

First, PHEAA, as a federal contractor, is immune from suit as a matter of both derivative sovereign immunity and intergovernmental immunity. Derivative sovereign immunity, which was first articulated in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), immunizes a federal contractor acting within an authorized grant of contractual authority. Here, the Higher Education Act (HEA), 20 U.S.C. §§ 1070–1099c, authorizes the Department to contract with PHEAA to service federal student loans and grants. The terms of PHEAA's performance, including its remediation of any servicing errors that may occur, are specifically and entirely dictated by its Contract with the Department, applicable statutes and regulations, and the Department's day-to-day directives. Because PHEAA has acted at all times within the scope of

1

its duly authorized federal contract, and because the federal government itself is immune from suit, Plaintiffs' claims should be dismissed under Rule 12(b)(1) for lack of subject-matter jurisdiction.

Second, the HEA bars Plaintiffs' state-law claims as a matter of express preemption and conflict preemption. The HEA expressly preempts "*any* disclosure requirements of any State law" that might otherwise apply to federal borrower loans. 20 U.S.C. § 1098g (emphasis added). Plaintiffs' state-law claims, however, are grounded in what PHEAA allegedly disclosed or should have disclosed to borrowers, and those claims are therefore expressly preempted. Separately, entertaining Plaintiffs' state-law claims would open the door to piecemeal regulation of federal loan servicing under a patchwork of disparate state law, and thereby undercut Congress's command that the HEA "[e]stablish[ed] a set of rules that will apply across the board." *Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010) (affirming dismissal of disclosure claims based on preemption). Plaintiffs' claims therefore are also subject to dismissal based on conflict preemption.

The vast majority of Plaintiffs' claims fail for additional reasons. Ten Plaintiffs, for instance, allege that PHEAA has undercounted their qualifying payments under the PSLF program, thereby pushing out the earliest date on which they can achieve PSLF forgiveness. But even if the disputed payments were counted in their favor, they would still not be eligible for PSLF forgiveness as of today. They will have to make further qualifying payments while working for a qualifying employer, which is highly speculative, and in the view of the only federal court to address similar claims, negates the Article III standing necessary to pursue their claim. *See Winebarger v. PHEAA*, 411 F. Supp. 3d 1070, 1086–88 (C.D. Cal. 2019). Many of Plaintiffs' TEACH claims and most of their state-law consumer protection claims, too, should be dismissed for standing-related reasons.

2

Last, many of Plaintiffs' claims sounding in tort, contract, and state-law consumer protection statutes must be dismissed under Federal Rule of Procedure 12(b)(6) for failure to state a claim, or under Rule 9(b) for failure to plead fraud with specificity. Due to the number of plaintiffs and claims, and for the Court's convenience, PHEAA has attached as exhibits a series of tables and charts outlining the applicability of its defenses to each plaintiff and claim. *See* Ex. 3-8.

For all of these reasons, set forth more fully below, the Court should dismiss the Complaint as to all claims asserted against PHEAA.

## II.    FACTUAL BACKGROUND

### A.    The Origin of the Federal Student Loan Program

Since Congress passed the HEA in 1965, the federal government has taken an increasingly large role in the origination and administration of student grants and loans. *See* 20 U.S.C. §§ 1070–1099c; Compl. ¶¶ 256–59. The federal government's initial role was in federally guaranteeing privately issued loans through the Federal Family Education Loan (FFEL) program. Compl. ¶¶ 256–57. Beginning in 1994, that role expanded dramatically when Congress authorized the Department to begin originating Direct Loans (i.e., loans directly from the federal government, rather than private banks, to student borrowers) under the William D. Ford Direct Loan Program. *See* 20 U.S.C. §§ 1087a–1087j. Direct Loans are governed by standardized Master Promissory Notes (MPNs) constituting contracts between the federal government and the borrower, *see* 20 U.S.C. §§ 1082(m)(1)(D), 1087e(a)(1). Loan servicers are not parties to the underlying notes for loans issued under either program.

In 2007, Congress authorized the Department to administer a number of loan forgiveness programs, including the PSLF program. *See* 20 U.S.C. § 1087e(m). The same year, Congress created the TEACH Grant program to incentivize teachers to work in low-income schools. 20

U.S.C. §§ 1070g–1070g-4; Compl. ¶ 298.  In 2010, Congress discontinued the FFEL Program, meaning that all new federal student loans since that time have been Direct Loans.  Compl. ¶¶ 256–58.

In the ensuing decade, federally owned student loan debt has increased from less than $400 billion to over $1.2 trillion, making student loans one of the largest assets owned by the United States.  *See* Department of Education FY 2018 Agency Financial Report (2018 FY Report) 9, 24, *available at* https://www2.ed.gov/about/reports/annual/2018report/agency-financial-report.pdf; Compl. ¶ 7.  Today, the Department oversees "more than 100 grant and loan programs."  2018 FY Report at 14.

Plaintiffs' allegations concern three facets of the federal student loan framework: (1) the TEACH Grant program; (2) IDR plans; and (3) the PSLF program.  Compl. ¶ 3.

### B.      The TEACH Grant Program

In 2007, Congress created the TEACH Grant program with the goal of attracting and retaining teachers in certain fields at low-income schools.  20 U.S.C. §§ 1070g–1070g-4; Compl. ¶ 298.  Through TEACH, participants may receive up to $4,000 per academic year for undergraduate, post-baccalaureate, and graduate programs.  Compl. ¶ 299.  Undergraduate students may receive a maximum of $16,000 in grants, while graduate students are capped at $8,000 in grants.  20 U.S.C. § 1070g-1(d); Compl. ¶ 299.

To receive a TEACH grant, a student must sign an "Agreement to Serve," in which they agree to teach for at least four years in an eligible position at a low-income school within eight years of graduating.  Compl. ¶¶ 302–03.  Included in the Agreement to Serve are a series of notices and rules established by the Department, stating, *inter alia*, that recipients must: (1) certify within 120 days of completing school that they are employed in a qualifying position or intend to satisfy the terms of service, Compl. Ex. B at 3; and (2) certify annually that they intend to complete their

4

service and are on track to do so within the permitted time frame. *Id.* at 3–4. In addition, in accordance with Department Regulations, recipients are informed that if they fail to comply with these provisions their grants "*will be converted to a Direct Unsubsidized Loan* that [they] must repay in full, with interest." *Id.* at 4 (emphasis added); 34 C.F.R. § 686.43(a).

In February 2019, the Department launched a TEACH Grant "reconsideration" program, administered by PHEAA, under which certain borrowers whose TEACH Grants were converted into loans may seek "reconversion" of the loan into a TEACH Grant. *See* Federal Student Aid, TEACH Grant Reconsideration Process, *available at* https://studentaid.gov/understand-aid/types/grants/teach/teach-reconsideration (last accessed Feb. 6, 2020); *see also* Compl. ¶¶ 308, 509. Specifically, for borrowers who had a TEACH Grant converted because of failure to complete their annual certification requirements, but (1) completed their four years of qualifying teaching service, or (2) can still complete their service, the reconsideration program provides an opportunity to have the loan reconverted to a Grant. *Id.*

## C.      Income-Driven Repayment Plans

When a federal student borrower enters repayment following the six-month post-graduation grace period, the borrower may choose from more than ten repayment plan options, which dictate the schedule, overall number, and dollar amount of their loan payments. *See* 34 C.F.R. §§ 682.209, 685.208, 685.209; Compl. ¶ 262. The Standard Repayment Plan, which is the default, sets a fixed monthly payment that will result in repayment of the loan in ten years. Compl. ¶ 263. Depending on various eligibility factors, such as income and family size, borrowers also may choose an IDR plan—including Income-Contingent Repayment (ICR); Income-Based Repayment (IBR); Pay-As-You-Earn (PAYE); and Revised Pay-As-You-Earn (REPAYE). Compl. ¶ 265. Payments on an IDR plan result in forgiveness of any remaining loan balance after twenty or twenty-five years, depending on the plan. 34 C.F.R. § 685.209(a)(6) (PAYE

5

forgiveness); *id.* § 685.209(c)(5) (REPAYE forgiveness); *id.* §§ 682.215(f), 685.221(f) (IBR forgiveness); Compl. ¶ 270.

If a borrower chooses to switch repayment plans, or is obligated to switch repayment plans due to a change in their eligibility, federal regulations require that outstanding interest be capitalized, i.e., added to the principal balance of the loan.   34 C.F.R. §§ 682.215(b)(5), 685.221(b)(4) (IBR); 34 C.F.R. § 685.209(a)(2)(iv)(A) (PAYE); 34 C.F.R. § 685.209(c)(2)(iv) (REPAYE); Compl. ¶ 278.

> **D.      The Public Service Loan Forgiveness Program**

In 2007, Congress authorized the Department to administer a number of loan forgiveness programs, including the PSLF program.  *See* 20 U.S.C. § 1087e(m).  The PSLF program provides an opportunity for student borrowers with Direct Loans to seek forgiveness of their student loan balance after satisfaction of several conditions.  *See id.*; 34 C.F.R. § 685.219; Compl. ¶ 285. Federal law provides that to be eligible for forgiveness, the borrower must: (1) make 120 separate on-time monthly qualifying payments on a Direct Loan; (2) while enrolled in a qualifying repayment plan; (3) while working full-time; (4) for a qualifying public-service employer.  20 U.S.C. § 1087e(m); 34 C.F.R. § 685.219(c); Compl. ¶ 287.  Only some repayment plans are PSLF-qualifying.  34 C.F.R. § 685.219(c)(1)(iv); Compl. ¶ 287.

Borrowers may, but need not, submit an interim Employment Certification Form (ECF) to receive confirmation that their employer qualifies and to track their progress toward PSLF forgiveness.  Compl. ¶¶ 290–91.  The fact that a borrower has submitted an ECF and made at least some qualifying payments does not entitle them to loan forgiveness; as the Department has observed,  "[m]any borrowers who file employment certification forms early in their careers may also move into private sector employment before reaching . . . 10 years."  2018 FY Report at 23. Because it takes at least ten years to become eligible for PSLF loan forgiveness, the earliest any

borrower could have had his or her loans forgiven was October 2017.  *See Public Service Loan Forgiveness*, Federal Student Aid, *available at* https://studentaid.gov/manage-loans/forgiveness-cancellation/public-service (last accessed Feb. 9, 2020).

In 2018, Congress created the Temporary Expanded Public Service Loan Forgiveness (TEPSLF) program, which extended PSLF loan forgiveness to Direct Loan borrowers who were enrolled in an ineligible repayment plan for some or all of their payments, but otherwise satisfied the requirements of PSLF.  *See* Consolidated Appropriations Act, Pub. L. No. 115-141, § 315, 132 Stat. 348, 752–53 (2018); Compl. ¶ 295.

### E.   The Department's Oversight of PHEAA

Every aspect of servicing federal loans is regulated by the Department, which has been directed by Congress to implement the federal student loan regime.  *See* 20 U.S.C. §§ 1082(a)(1), 1087a, 1087e.  The Department has express authority to "enter into contracts" for loan servicing and "such other aspects of the direct student loan program as the Secretary determines are necessary."  20 U.S.C. § 1087f(a), (b)(2), (4); Compl. ¶ 342.  The Department selects its servicers for the Direct Loan program and drafts the servicing contracts to ensure compliance with federal requirements.  *Federal Preemption and State Regulation of the Department of Education's Federal Student Loan Programs and Federal Student Loan Servicers*, 83 Fed. Reg. 10,619, 10,620–22 (Mar. 12, 2018) (the Preemption Notice).[1]

PHEAA was created in 1963 by the Commonwealth of Pennsylvania as "a body corporate and politic constituting a public corporation and government instrumentality."  24 Pa. Stat. § 5101. PHEAA's founding mission is to improve higher education opportunities for Pennsylvania

---

[1]    Federal statute provides that courts must take judicial notice of the contents of the Federal Register.  44 U.S.C. § 1507.

residents by funding student loans and grants.  24 Pa. Stat. §§ 5102, 5105.6.  Over time, PHEAA came not only to fund but also service student loans and grants.  *Id.* § 5104(1.1)(iii).  In 2009, the Department selected PHEAA as one of several national Direct Loan servicers.  Compl. ¶ 310; *see also* Compl. Ex. C (the Servicing Contract).  Later, by way of contract modifications, PHEAA received exclusive authority to administer the TEACH Grant and PSLF programs under the Department's oversight.  Compl. ¶¶ 289, 313.

PHEAA receives instruction from the Department in three ways: regulation, contract, and day-to-day oversight.  First, federal regulations govern every aspect of federal loan servicing, including administration of loan repayment, 34 C.F.R. §§ 682.209, 685.208; IDR plans, *id.* §§ 682.215, 685.209; deferments and forbearances, *id.* §§ 682.210–211, 685.204–205; Direct Loan consolidation, *id.* § 685.220; and "a carefully crafted disclosure regime specifying what information must be provided."  Preemption Notice, 83 Fed. Reg. at 10,621.  PHEAA's Servicing Contract requires that PHEAA understand and comply with "all federal and state laws and regulations and FSA requirements."  Servicing Contract at C.1.4.3.

Second, the Servicing Contract also "specifies in detail [PHEAA's] responsibilities and obligations" for servicing Direct Loans, including with respect to various repayment plans and programs such as PSLF.  Preemption Notice, 83 Fed. Reg. at 10,620.  The Contract is "voluminous"—over 600 pages long—and "includ[es] provisions governing [PHEAA's] financial controls, internal monitoring, communications with borrowers, and many other topics."  *Id.*; Statement of Interest by the United States at 5, *Massachusetts v. PHEAA*, No. 1784-cv-02682,

(Mass. Super. Ct., Jan. 8, 2018) (MA Statement of Interest) (attached hereto as Exhibit 1).[2]  Since

the Servicing Contract's inception, the Department has implemented more than 450 "change

requests" (modifications to the Contract).  Ex. 1, MA Statement of Interest 5.

Third, the Department, through its dedicated contract officers and other staff, provides

additional directives to PHEAA and addresses borrower-specific issues during the course of its

"daily" communications with PHEAA.   Ex. 1, MA Statement of Interest 6.   "These

communications have the intent and effect of filling any remaining gaps for servicer discretion."

*Id.*

Overall, the Department's oversight of PHEAA's performance is robust and multi-faceted.

As the Department has explained in the Federal Register:

> [T]he Department monitors servicer compliance with the Department's contracts,
> which include requirements related to customer service. These oversight efforts
> include, but are not limited to, call monitoring, process monitoring, and servicer
> auditing, conducted both remotely and on-site by the Department's office of
> Federal Student Aid (FSA). FSA has dedicated staff with the responsibility to
> ensure that servicers are adhering to regulatory and contractual requirements for
> servicing loans. For example, FSA reviews interactions between servicers and
> borrowers and compares the servicers' performance against a detailed Department
> checklist. FSA provides its performance evaluations to servicers through written
> reports and meetings and requires servicers to alter their practices when needed to
> correct deficiencies. FSA also maintains direct access to servicer systems and
> therefore can review individual borrower accounts to evaluate the servicers'
> treatment of those accounts against regulatory and contractual requirements.
>
> …

---

[2]     Because the Department's Statement of Interest is a public record, the Court may properly
take judicial notice of it.  *See Oran v. Stafford*, 226 F.3d 275, 289 (3d Cir. 2000); *see also
In re Papa John's Emp. & Franchisee Emp. Antitrust Litig.*, No. 18-cv-00825, 2019 U.S.
Dist. LEXIS 181298, at *16–18 (W.D. Ky. Oct. 21, 2019) (taking judicial notice of
Department of Justice Statement of Interest filed in other cases); *United States ex rel.
Rigsby v. State Farm Fire & Cas. Co.*, No. 06-cv-433, 2016 U.S. Dist. LEXIS 69924, at
*12–13 (S.D. Miss. May 27, 2016) (taking judicial notice of United States Statement of
Interest filed in a similar case).

> FSA [also] maintains a Feedback System, which includes a formal process for borrowers to report issues or file complaints about their loan experiences, including problems with servicing. Borrowers may also elevate complaints to the FSA Ombudsman Group—a neutral and confidential resource available to borrowers to resolve disputes related to their loans.

Preemption Notice, 83 Fed. Reg. at 10,622. PHEAA, in turn, is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed." Servicing Contract, Attachment A-1 at 7–12. Borrowers have alternative recourse in the event that they disagree with PHEAA's servicing of their account, including "filing an official complaint with [the Department of] Education's Federal Student Aid Ombudsman Group or through the Federal Student Aid Feedback System." U.S. Gov't Accountability Office, GAO-18-547, *Public Service Loan Forgiveness: Education Needs to Provide Better Information for the Loan Servicer and Borrowers*, at 23 (2018) (GAO-18-547) (cited at Compl. ¶ 294, n. 32).

The Department's enforcement mechanisms in the event of servicer noncompliance are also substantial. The Department has plenary authority to limit, suspend, or terminate the activities of a federal student loan servicer that violates its regulatory obligations under the FFEL program or breaches its Direct Loan servicing contract. 34 C.F.R. § 682.700(a); Preemption Notice, 83 Fed. Reg. at 10,620–22. The Department may opt to withhold payment in the event that PHEAA fails to comply with contract provisions or statutory and legislative requirements. Servicing Contract at B.13.L. Even the Department's allocation of loans among servicers is driven by servicer performance—the Department "allocat[es] more loans to servicers that meet performance metrics such as high levels of customer satisfaction and . . . pay[s] servicers higher rates for loans that are in a nondelinquent status." Preemption Notice, 83 Fed. Reg. at 10,622. Indeed, as the Complaint states, the Department "maintains ultimate responsibility for the performance of the operational processes of its loan servicers" and "has the ultimate authority to review [PHEAA's] actions under its contract." Compl. ¶ 343.

The Department has repeatedly stressed the importance of maintaining cost-effective and streamlined federal regulation of servicers, and avoiding the imposition of patchwork state-by-state regulations.  *See* Preemption Notice, 83 Fed. Reg. at 10,620–22; Ex. 1, MA Statement of Interest 1, 21; Statement of Interest at 1–2, *Student Loan Servicing Alliance v. Taylor*, No. 18-cv-640 (D.D.C. Aug. 24, 2018) (Dkt. No. 20) (SLSA Statement of Interest) (attached hereto as Exhibit 2).  Indeed, the Department's management of the $1.4 trillion in student loans underwritten by the federal government constitutes a "uniquely federal interest."  Ex. 2, SLSA Statement of Interest 3, 21.

The attention of other federal agencies, too, signals the federal government's overriding interest in the management of the federal student loan portfolio.  For example, in 2018, the U.S. Government Accountability Office (GAO) attributed a low initial approval rate of PSLF applications to, among other things, the fact that over half of all borrowers requesting forgiveness did not meet the basic eligibility requirements or had not yet made any qualifying loan payments.  *See* GAO-18-547 at 11 (cited at Compl. ¶ 294, n. 32).  Congress, in response, enacted the TEPSLF Program to provide loan forgiveness to borrowers who would have been eligible for the PSLF Program, but were ineligible due to enrollment in a non-qualifying repayment plan.  Consolidated Appropriations Act, § 315, 132 Stat. 348, 752–53.  The GAO later reviewed and commented on challenges to the success of that program as well.  *See* U.S. Gov't Accountability Office, GAO-19-595, *Public Service Loan Forgiveness: Improving the Temporary Expanded Process Could Help Reduce Borrower Confusion* 1 (2019) (GAO-19-595) (cited at Compl. ¶ 296, n. 33).  The Department has agreed with the recommendations in both GAO reports and committed to implementation of those recommendations.  GAO-18-547 at 27–28; GAO-19-595 at 24–26.

Federal agencies have submitted other assessments of various federal loan programs, such as IDR and PSLF, and made recommendations to policymakers. *See* Consumer Financial Protection Bureau, *Staying On Track While Giving Back* (June 2017), *available at* https://files.consumerfinance.gov/f/documents/201706_cfpb_PSLF-midyear-report.pdf (cited at Compl. ¶ 285, n. 26); U.S. Gov't Accountability Office, GAO-19-347, *Federal Student Loans: Education Needs to Verify Borrowers' Information for Income-Driven Repayment Plans* 1 (2019). Indeed, the Department recently entered into an information-sharing agreement with the federal agency chiefly focused on consumer protection to ensure that borrower complaints are appropriately tracked and resolved. *See* Consumer Financial Protection Bureau, *Consumer Financial Protection Bureau and U.S. Department of Education Sign Memorandum of Understanding to Better Serve Student Loan Borrowers* (Feb. 3, 2020), *available at* https://www.consumerfinance.gov/about-us/newsroom/cfpb-us-department-education-sign-memorandum-understanding-better-serve-student-loan-borrowers/.

## III.   THE CONSOLIDATED CLASS ACTION COMPLAINT

Plaintiffs are 33 borrowers and grant recipients from seventeen jurisdictions, bringing claims on behalf of themselves and three putative classes. Plaintiffs purport to raise claims for (1) violations of the consumer protection statutes of fourteen jurisdictions and (2) state common-law actions for: (a) breach of contract; (b) breach of fiduciary duty; (c) constructive fraud; (d) unjust enrichment; (e) negligence; (f) negligence *per se*; and (g) negligent misrepresentation. The factual basis for each named plaintiff's claim varies: as described below, some describe their experience with the TEACH Grant program, while others claim problems with IDR plans or the PSLF program.

### A.      TEACH Plaintiffs

Eight plaintiffs (the TEACH Plaintiffs) bring TEACH-related claims on behalf of themselves and a putative class.[3]   The TEACH Plaintiffs allege that they were harmed by the inappropriate conversion of their grants to loans after: (1) PHEAA rejected certification paperwork for "hyper-technical" errors, and/or (2) PHEAA failed to give appropriate notice of certification deadlines.   Compl. ¶ 9.   All eight TEACH Plaintiffs later applied for reconsideration of their conversions through the Department's reconsideration process.   Two concede that they received full relief through the reconsideration process, *see* Compl. ¶¶ 106 (Jones), 230 (Webb), and four others received partial relief, *see* Compl. ¶¶ 58–59 (Charles), 165 (Musser), 210 (Stevens), 222– 23 (Wardlow).   The reconsideration application of one TEACH Plaintiff remains pending.   *See* Compl. ¶ 145 (Meyer).   Only one TEACH Plaintiff alleges that he was completely denied reconsideration.   *See* Compl. ¶ 42 (Asby).

---

[3]      The TEACH Plaintiffs are Michael Asby (Florida), Jacquelynn Charles (Illinois), Lindsey Jones (Kansas), Steven Meyer (Tennessee), Megan Musser a/k/a Megan Holland (Illinois), Chris Stevens (California), Katherine Wardlow (New York), and Maggie Webb (Massachusetts).   There are no TEACH Plaintiffs from Alabama, Connecticut, District of Columbia, Maryland, Missouri, New Jersey, Oregon, Pennsylvania, Virginia, or Washington.

### B.    IDR Plaintiffs

Nineteen plaintiffs (the IDR Plaintiffs) assert IDR-related claims on behalf of themselves and a putative class.[4]  The IDR claims arise from allegations that PHEAA failed to: (1) disclose the availability of IDR plans, *see, e.g.*, Compl. ¶ 215; (2) disclose that accrued interest would capitalize after periods of forbearance or when a borrower switched IDR plans, *see, e.g.*, Compl. ¶¶ 79-80, 171, 215; (3) timely process IDR applications, *see, e.g.*, Compl. ¶ 170; and (4) give adequate notice of annual IDR recertification deadlines, *see, e.g.*, Compl. ¶ 50.  The IDR Plaintiffs allege they were harmed by having to pay higher monthly amounts, losing eligibility for future forbearances, and losing the opportunity to make qualifying payments toward IDR forgiveness. *See, e.g.*, Compl. ¶¶ 52, 173, 195.

### C.    PSLF Plaintiffs

Fifteen Plaintiffs (the PSLF Plaintiffs) bring PSLF-related claims on behalf of themselves and a putative class.[5]  The PSLF Plaintiffs all allege that they have been harmed by PHEAA under-counting their PSLF-qualifying payments, such that they claim to be either already eligible for

---

[4]     The IDR Plaintiffs are Arielle M. Anderson (Washington), Tanuja Goulet Arany (California), Laura Brady (New York), Jamie Coleman a/k/a Jamie McFarland (New Jersey), Arianne Gallagher (District of Columbia), Mark Hawkins (Pennsylvania), Seniqua Johnson (New Jersey), Brittany King (Missouri), Yannet Lathrop (Maryland), Amanda Leone (New Jersey), Shon Meckfessel (Washington), Adam Morris (Pennsylvania), Heather Pruess (Oregon), Meagan Pryor (Pennsylvania), Stacey Puccini (Illinois), Hannah Rockwell (Illinois), Seth Shelley (Virginia), Adele S. Turnage (Florida), and Nichole Wolff (Oregon).  There are no IDR Plaintiffs from Alabama, Connecticut, Kansas, Massachusetts, or Tennessee.

[5]     The PSLF Plaintiffs are Katie Bonham (Alabama), Jamie Coleman (New Jersey), Andrea Davis (Connecticut), Arianne Gallagher (District of Columbia), Dr. Garima Gupta (California), Nathan Harig (Pennsylvania), Brittany King (Missouri), Yannet Lathrop (Maryland), Adela Levis (Virginia), Shon Meckfessel (Washington), Amanda Miller (Virginia), Adam Morris (Pennsylvania), Heather Pruess (Oregon), Seth Shelley (Virginia), and Nicole Wolff (Oregon).  There are no PSLF Plaintiffs from Florida, Illinois, Kansas, Massachusetts, New York, or Tennessee.

PSLF forgiveness or closer than PHEAA's disclosed figures would indicate.  As of February 2020, however, ten of the fifteen PSLF Plaintiffs—even if credited with the PSLF-qualifying payments that they say PHEAA has not counted—are at least a full year away from potentially qualifying for PSLF forgiveness.[6]

## IV.   LEGAL STANDARD

### A.   Motion to Dismiss for Lack of Subject-Matter Jurisdiction

A motion to dismiss for lack of subject-matter jurisdiction is governed by Rule 12(b)(1).  A challenge to subject-matter jurisdiction may be either facial or factual.  *Constitution Party of Pa. v. Aichele*, 757 F.3d 347, 358 (3d Cir. 2014).  A facial attack "is an argument that considers a claim on its face and asserts that it is insufficient to invoke the subject matter-jurisdiction of the court because, for example, it does not present a question of federal law."  *Id.*  A court assesses a Rule 12(b)(1) motion based upon a facial challenge by "consider[ing] the allegations of the complaint and documents referenced therein and attached thereto, in the light most favorable to the plaintiff."  *Id.*  A court may also review documents explicitly relied upon in the complaint as well as judicially noticed public records outside the pleadings.  *In re Rockefeller Ctr. Props., Inc. Sec. Litig.*, 184 F.3d 280, 287 (3d Cir. 1999).  The standard of review for a facial attack is the same as for a motion to dismiss under Rule 12(b)(6).  *Aichele*, 757 F.3d at 358.

---

[6]    Specifically, these ten PSLF Plaintiffs have the following minimum repayment durations remaining: Coleman - 2 years (Compl. ¶ 62); Gallagher - 2 years (Compl. ¶ 74); Gupta - 3 years (Compl. ¶ 84); Harig - 1 year (Compl. ¶ 88); King - 6 years (Compl. ¶ 108); Lathrop - 2 years (Compl. ¶ 115); Levis - 3 years (Compl. ¶ 131); Meckfessel - 7 years (Compl. ¶ 134); Miller - 7 years (Compl. ¶ 149); Morris - 6 years (Compl. ¶¶ 154–55).  In addition, Plaintiff Wolff implausibly claims to have begun making "PSLF-qualifying payments" in 2005, two years before Congress created the PSLF program, while admitting that she was never on a PSLF-qualifying repayment plan, and that she only became aware that she was not on a qualifying plan after her loans were transferred to PHEAA in late 2016.  Compl. ¶ 473.

A factual attack is an argument that subject-matter jurisdiction is lacking "because the facts of the case . . . do not support the asserted jurisdiction." *Aichele*, 757 F.3d at 358. When reviewing a factual attack, the court "may look beyond the pleadings to ascertain the facts," *id.*, "the court must permit the plaintiff to respond with rebuttal evidence in support of jurisdiction, and the court then decides the jurisdictional issue by weighing the evidence." *McCann v. Newman Irrevocable Tr.*, 458 F.3d 281, 290 (3d Cir. 2006). Where subject-matter jurisdiction is factually challenged, the plaintiff has the burden of persuading the court that jurisdiction is indeed proper. *Kehr Packages v. Fidelcor, Inc.*, 926 F.2d 1406, 1409 (3d Cir. 1991).

### B.     Motion to Dismiss for Failure to State a Claim

Should the Court not dismiss the entire action for lack of subject-matter jurisdiction, the Court should dismiss the vast majority of the remaining claims under Rule 12(b)(6). When considering a motion to dismiss under Rule 12(b)(6), a court must accept all well-pleaded allegations of material fact as true and draw all reasonable inferences in favor of the plaintiff. *Brown v. Philip Morris, Inc.*, 250 F.3d 789, 796 (3d Cir. 2001). The court, however, need not accept as true a legal conclusion presented as a factual allegation. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Id.* (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 554, 570 (2007)). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. A pleading that offers only "'labels and conclusions' or 'a formulaic recitation of the elements of a cause of action'" will not survive a motion to dismiss under Rule 12(b)(6). *Id.* (quoting *Twombly*, 550 U.S. at 555).

16

C.      **Motion to Dismiss for Failure to Meet Heightened Pleading Requirements**

Counts 10, 14, and 15–28 of the Complaint are predicated upon allegedly fraudulent representations by PHEAA, and are therefore subject to the heightened pleading requirements of Rule 9(b).  As this Court has explained, "[i]n alleging fraud or mistake, a party must state with particularity the circumstances constituting fraud or mistake." *W. Chester Univ. Found. v. Metlife Ins. Co.*, 259 F. Supp. 3d 211, 215 (E.D. Pa. 2017) (Jones, J.) (citing Fed. R. Civ. P. 9(b)).  At a minimum, plaintiffs must provide "all of the essential background facts  that would accompany the first paragraph of any newspaper story—that is, the who, what, when, where, and how, of the events at issue.'" *Id.*  (quoting *In re Rockefeller Ctr. Props. Sec. Litig.,* 311 F.3d 198, 217 (3d Cir. 2002)) (internal citations omitted).

V.      **ARGUMENT**

A.      **The Court lacks subject matter-jurisdiction because PHEAA is entitled to derivative sovereign immunity under *Yearsley*.**

Plaintiffs' claims are aimed at PHEAA's servicing of federal student loans and its administration of federal student loan programs.  Because PHEAA is a federal contractor performing its obligations at the direction of the Department, the doctrine of derivative sovereign immunity shields PHEAA from suit for complying with its Servicing Contract and the Department's directives.[7]

---

[7]    The Supreme Court "repeatedly ha[s] stressed the importance of resolving immunity questions at the earliest possible stage in litigation." *Thomas v. Indep. Twp.*, 463 F.3d 285, 291 (3d Cir. 2006) (quoting *Hunter v. Bryant*, 502 U.S. 224, 227 (1991)); *see also Campbell-Ewald Co. v. Gomez*, 136 S. Ct. 663, 672–73 (2016) (discussing *Yearsley* immunity in the context of qualified immunity).  "This is so because qualified immunity . . . is both a defense to liability and a limited entitlement not to stand trial or face the other burdens of litigation." *L.R. v. Sch. Dist. of Phila.*, 836 F.3d 235, 240 (3d Cir. 2016) (quoting *Ashcroft*, 556 U.S. at 672).

### 1.      Applicable Law

"[G]overnment contractors obtain certain immunity in connection with work which they do pursuant to their contractual undertakings with the United States." *Campbell-Ewald*, 136 S. Ct. at 672 (quotation omitted) (alteration in original).  Consequently, it is "well-settled law that contractors and common law agents acting within the scope of their employment for the United States have derivative sovereign immunity." *Butters v. Vance Int'l, Inc.*, 225 F.3d 462, 466 (4th Cir. 2000).  Such immunity derives from the "government's unquestioned need to delegate governmental functions," such that "[i]mposing liability on private agents of the government would directly impede the significant governmental interest in the completion of its work." *Id.* When claims against federal contractors are barred by derivative sovereign immunity, the proper course is to dismiss for lack of jurisdiction. *See, e.g.*, *Cunningham v. Gen. Dynamics Info. Tech.*, 888 F.3d 640, 649 (4th Cir. 2018); *Chesney v. TVA*, 782 F. Supp. 2d 570, 586 (E.D. Tenn. 2011).[8]

"Derivative immunity was first extended to private contractors in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940), where the contractor was working pursuant to the authorization and direction of the federal government and the acts of which the plaintiff complained fell within the scope of those government directives." *McCue v. City of New York (In re World Trade Ctr. Disaster Site, Litig.)*, 521 F.3d 169, 196 (2d Cir. 2008).  In *Yearsley*, a

---

[8]     One Pennsylvania federal district court has concluded that a *Yearsley* defense must be raised under Rule 12(b)(6), not Rule 12(b)(1), on the theory that it is a qualified immunity, not a complete immunity, and therefore is not "jurisdictional." *Harris v. Kellogg, Brown & Root Servs.*, No. 08-cv-563, 2016 U.S. Dist. LEXIS 121859, at *2 (W.D. Pa. Sept. 9, 2016).  The cases cited therein, however, do not directly support that proposition. *See Leveto v. Lapina*, 258 F.3d 156, 161 (3d Cir. 2001) (defendants moved to dismiss complaint under Rule 12(b)(6) only); *Carley v. Wheeled Coach*, 991 F.2d 1117, 1118 (3d Cir. 1993) (defendant asserting *Boyle* immunity, not *Yearsley* immunity).  In any event, the issue of whether Rule 12(b)(1) or Rule 12(b)(6) applies is of no moment.  Because PHEAA asserts a facial challenge under Rule 12(b)(1), the standard of review is the same as for a motion to dismiss under Rule 12(b)(6). *See Aichele*, 757 F.3d at 358.

landowner sued a contractor for damages when part of his land was washed out after the contractor built a river dike under a federal contract. *Yearsley*, 309 U.S. at 19. The Supreme Court held that the contractor was not answerable to the landowner because "the work which the contractor had done in the river bed was all authorized and directed by the Government of the United States" and "performed pursuant to the Act of Congress." *Id.* at 20. The Supreme Court contrasted that scenario with instances where a government contractor had "exceeded his authority" or the authority "was not validly conferred." *Id.* at 21.

In 2016, the Supreme Court reaffirmed the applicability of *Yearsley* immunity, explaining that, "[c]ritical in *Yearsley* was not the involvement of public works, but the contractor's performance in compliance with all federal directions." *Campbell-Ewald*, 136 S. Ct. at 673 n.7. Such immunity "reduces the risk that contractors will shy away from government work." *Id.* at 673. Other courts have since distilled the doctrine into a two-element test, under which a federal contractor is immune from suit when "(1) the government authorized the contractor's actions and (2) the government 'validly conferred' that authorization, meaning it acted within its constitutional power." *Cunningham*, 888 F.3d at 643 (quoting *In re KBR, Inc., Burn Pit. Litig.*, 744 F.3d 326, 342 (4th Cir. 2014)).[9] Consequently, to overcome an assertion of *Yearsley* immunity in the face of a valid federal contract, "a complaint must contain plausible factual allegations that a private contractor acted pursuant to invalidly conferred authority or exceeded its validly conferred authority . . . ." *Scott v. J.P. Morgan Chase & Co.*, 296 F. Supp. 3d 98, 107 (D.D.C. 2017).

---

[9] Prior to *Campbell-Ewald*, which reaffirmed the vitality of *Yearsley* as a standalone doctrine, courts at times combined *Yearsley* immunity with the contractor defense outlined in *Boyle v. United Technologies Corp.*, 487 U.S. 500 (1998). *See, e.g.*, *In re World Trade Center Disaster Site Litig.*, 521 F.3d at 196; *Carley*, 991 F.2d at 1118. To the extent that the Court believes that the *Boyle* immunity analysis may apply, PHEAA requests permission to submit supplemental briefing on this issue.

Here, the Department enjoys sovereign immunity from all monetary, injunctive, and equitable relief sought by Plaintiffs.  "It is elementary that the United States, as sovereign, is immune from suit save as it consents to be sued, and the terms of its consent to be sued in any court define that court's jurisdiction to entertain the suit." *United States v. Mitchell*, 445 U.S. 535, 538 (1980) (alterations omitted).  Thus, "[a]bsent a waiver, sovereign immunity shields the Federal Government and its agencies from suit." *Dep't of Army v. Blue Fox, Inc.*, 525 U.S. 255, 260 (1999) (quoting *FDIC v. Meyer*, 510 U.S. 471, 475 (1994)).  "A waiver of the Federal Government's sovereign immunity must be unequivocally expressed in statutory text, and will not be implied." *Lane v. Pena*, 518 U.S. 187, 192 (1996) (internals citations omitted).  The burden of establishing a waiver of sovereign immunity "rests upon the party asserting jurisdiction."  *Kokkonen v. Guardian Life Ins. Co. of Am.,* 511 U.S. 375, 377 (1994).  Like any other federal government agency, the Department is protected by sovereign immunity apart from express waiver.  *See Johnson v. DeVos*, 775 F. App'x 86, 87 (4th Cir. 2019) (affirming dismissal for lack of subject-matter jurisdiction based on sovereign immunity).

PHEAA, as a federal contractor servicing loans pursuant to a valid federal contract and in accordance with all federal directions, is entitled to derivative immunity in the same measure as the federal government.  This Court therefore should dismiss Plaintiffs' claims for lack of subject-matter jurisdiction.

> **2.     The Department validly conferred authority to PHEAA to administer federal student loans.**

Under *Yearsley*, "[a]uthorization is 'validly conferred' on a contractor if Congress authorized the government agency to perform a task and empowered the agency to delegate that task to the contractor, provided it was within the power of Congress to grant the authorization." *Cunningham*, 888 F.3d at 647 (citing *Yearsley*, 309 U.S. at 20).  Nothing in the Complaint would

support a finding that PHEAA performed federal student loan servicing tasks without validly conferred authorization.

Under the HEA, Congress authorized the Department to issue Direct Loans, 20 U.S.C. §§ 1070–1099c, and to contractually delegate the task of servicing such loans, 20 U.S.C. § 1087f(a), (b)(2), (4).  In 2009, pursuant to that mandate, the Department contracted with PHEAA to service federal loans, and later expanded that contract to include administration of the PSLF program and the TEACH program.  The Complaint does not contest either the fact of congressional delegation of authority to the Department, or the Department's contractual delegation of work to PHEAA. As a result, this element of *Yearsley* immunity is satisfied.

### 3. PHEAA has serviced Plaintiffs' federal loans in accordance with federal directives.

The second question under *Yearsley* is whether PHEAA's performance under the Servicing Contract accords with the Department's directives.  *In re World Trade Ctr. Disaster Site Litig.*, 521 F.3d at 196 (derivative immunity applies where "the acts of which the plaintiff complained fell within the scope of [the] government directives," (citing *Yearsley*, 309 U.S. at 20–21)); *see also Ackerson v. Bean Dredging LLC*, 589 F.3d 196, 207 (5th Cir. 2009) (holding that "the district court did not err in dismissing the action" because plaintiffs failed to "allege that the Contractor Defendants exceeded their authority or in any way deviated from Congress's direction or expectations"); *In re Oil Spill by the Oil Rig "Deepwater Horizon"*, MDL No. 2179, 2016 U.S. Dist. LEXIS 18248, at *33 (E.D. La. Feb. 16, 2016) (plaintiffs' "nonspecific and generalized allegations" were insufficient to show that defendants "exceed[ed] or disobey[ed] the authority conferred by the federal government"; defendants are thus "entitled to derivative immunity").

The Complaint and the documents referenced or attached thereto make clear that PHEAA's federal student loan servicing activities fell within the scope of its Contract with the Department

and the Department's directives.  As an initial matter, Plaintiffs provide only conclusory allegations that PHEAA exceeded the Department's directives or failed to adhere to the terms of its Contract with the Department, which the Court is not required to accept as true.  *See* Compl. ¶ 659 (alleging that PHEAA "fail[ed] to properly service borrowers' federal student loans . . . as required by the terms of the Servicing Contract and applicable federal law").

More specifically, the Servicing Contract unambiguously anticipates that PHEAA's performance of its contractual obligations will at times include servicing errors, and that PHEAA will work with the Department to remediate such errors as they arise.  Servicing Contract, Attachment A-1 at 7–12 (providing that PHEAA is "responsible for resolving all deficiencies identified during audits and participating in corrective action plans as needed").  Plaintiffs' allegations that individual borrowers have at times experienced processing errors during the course of PHEAA's loan servicing, then, do not establish that PHEAA has failed to comply with all governmental directives.  Indeed, many federal contracts incorporate a degree of error tolerance, within which the contractor remains in contractual compliance.  *See, e.g.*, *United States ex rel. Matheny v. Medco Health Sols., Inc.*, 671 F.3d 1217, 1221 (11th Cir. 2012) (tolerating 5% error rate in medical billing); *Milmark Services, Inc. v. United States*, 2 Cl. Ct. 116, at *126–27 (Cl. Ct. 1983) (tolerating 2.5% error rate in immigration data entry contract).  Further, given the Servicing Contract's provisions permitting PHEAA to correct deficiencies under the Department's supervision, even an allegation that PHEAA exceeded an error tolerance would not suffice to undermine PHEAA's claim of immunity, so long as PHEAA remediated the issue under the Department's oversight and to the Department's satisfaction.  *See, e.g.*, *In re KBR, Inc., Burn Pit Litig.*, 744 F.3d 326, 345 (4th Cir. 2014) (observing that probative evidence in the *Yearsley*

analysis includes "whether the military permitted or required [the contractor] to deviate from the contract's terms under certain circumstances").

These principles are manifest in all of PHEAA's contractual interactions with the Department, but one case in point—the TEACH Grant reconsideration process—illustrates their operation in practice. The eight TEACH Plaintiffs claim that PHEAA erroneously converted their TEACH grants to loans after failing to process timely their annual certification papers, or failing to communicate with them about the certification requirements. Compl. ¶ 9. In February 2019, the Department addressed these claims with specific instructions to PHEAA as to the manner and extent of relief to which Plaintiffs are entitled: where a borrower's TEACH Grant has been converted to a loan based on a failure to satisfy the annual certification requirement, that loan must be reconverted to a Grant if the borrower has actually completed their four years of qualifying teaching service, or can still complete their service within the time allotted. *See* Federal Student Aid, TEACH Grant Reconsideration Process, *available at* https://studentaid.gov/understand-aid/types/grants/ teach/teach-reconsideration (last accessed Feb. 6, 2020). All eight of the TEACH Plaintiffs have availed themselves of that process. *See* Compl. ¶¶ 42, 58–59, 106, 145, 165, 210, 222–23, 230. Though the relief extended to each Plaintiff has varied with their circumstances, the point is the Department has addressed their claims through implementation of a prescribed channel for relief, and PHEAA has implemented that opportunity according to its contractual directives. PHEAA has neither an obligation nor an ability to extend any further relief of any kind. Because the Department itself is immune from claims stemming from the TEACH reconsideration process, so too is PHEAA.

In sum, PHEAA is entitled to derivative sovereign immunity because the Complaint establishes that Plaintiffs seek to hold PHEAA liable for conduct performed at the direction of the

23

federal government and for which the federal government would be immune. Because the Complaint alleges no instance of PHEAA's failure to comply with federal directives, the Complaint must be dismissed for lack of subject-matter jurisdiction.

**B.      The Court should dismiss Plaintiffs' state-law claims as preempted by the HEA.**

Plaintiffs' state-law claims also should be dismissed because they are preempted by federal law, both expressly under the HEA and because they stand as an obstacle to the federal government's administration of the Direct Loan program.

**1.      Applicable law**

The Supreme Clause states that "any state law, however clearly within a State's acknowledged power, which interferes with or is contrary to federal law, must yield." *Gade v. Nat'l Solid Wastes Mgmt. Ass'n*, 505 U.S. 88, 108 (1992), *quoted in Deweese v. AMTRAK*, 590 F.3d 239, 245 (3d Cir. 2009). This inquiry is guided "by the rule that the purpose of Congress is the ultimate touchstone in every preemption case." *Holk v. Snapple Beverage Corp.*, 575 F.3d 329, 334 (3d Cir. 2009) (quoting *Altria Grp., Inc. v. Good*, 555 U.S. 70, 76 (2008)) (internal quotation marks omitted). Federal courts have recognized that preemption may arise in three analytically distinct ways: "'by express language in a congressional enactment, by implication from the depth and breadth of a congressional scheme that occupies the legislative field, or by implication because of a conflict with a congressional enactment.'" *In re Federal-Mogul Global*, 684 F.3d 355, 364 (3d Cir. 2012) (quoting *Lorillard Tobacco Co. v. Reilly*, 533 U.S. 525, 541 (2001)).

Although courts have applied a presumption against preemption in some instances, that presumption does not apply where "considerable federal interest[s]" are at stake. *United States v. Locke*, 529 U.S. 89, 94 (2000); *accord Bell v. Blue Cross & Blue Shield*, 823 F.3d 1198, 1201–02

(8th Cir. 2016); *Helfrich v. Blue Cross & Blue Shield Ass'n*, 804 F.3d 1090, 1104–06 (10th Cir.

2015). *Bell* and *Helfrich*, in particular, rejected the presumption and applied preemption in the

context of state-law efforts to regulate federal healthcare employee contracts. The Tenth Circuit

in *Helfrich* explained:

> The federalism concern (respecting state sovereignty) behind the presumption
> against preemption has little purchase in this case. The preemption provision does
> not affect the relationships between private citizens. Section 8902(m)(1) governs
> only contracts for the benefit of federal employees. It is an understatement to say
> that "there has been a history of significant federal presence," *Locke*, 529 U.S. at
> 108, in the area of federal employment. Congress has legislated on the matter from
> the outset.

804 F.3d at 1105. The Supreme Court later affirmed the finding of preemption in both *Bell* and

*Helfrich. Coventry Health Care of Mo., Inc. v. Nevils*, 137 S. Ct. 1190 (2017). The Third Circuit,

too, has found the presumption inapplicable to preemption questions arising in areas "uniquely in

the federal domain." *In re Vehicle Carrier Servs. Antitrust Litig.*, 846 F.3d 71, 84 (3d Cir. 2017).

Here, the federal student loan environment—under the Direct Loan program, in

particular—consists exclusively of contracts between the federal government and individuals,

along with the federal government's contract with PHEAA. The entire paradigm was created by

Congress and continues to be administered by the Department. Under these circumstances, the

Court should decline to apply a presumption against preemption.

### 2.      The HEA expressly preempts Plaintiffs' state-law claims.

Federal law provides that FFEL Loans and Direct Loans "shall not be subject to *any*

disclosure requirements of *any* State law." 20 U.S.C. § 1098g (emphasis added). Numerous courts

have held that § 1098g expressly preempts state-law claims relating to loan servicers'

representations to borrowers concerning their federal student loans. *See, e.g.*, *Chae*, 593 F.3d at

942–43 (express preemption of misrepresentation claim as to FFEL Loans); *McCulloch v. PNC*

*Bank Inc.*, 298 F.3d 1217, 1226 (11th Cir. 2002) ("Congress specifically intended for the HEA to

preempt any State disclosure requirements relating to loans under the federal guaranteed student loan program.") (interpreting predecessor to 20 U.S.C. § 1098g); *Winebarger v. PHEAA*, 411 F. Supp. 3d 1070, 1090 (C.D. Cal. 2019) (express preemption of misrepresentation claim as to PSLF-related communications for Direct Loans); *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, No. 17-cv-0253, 2018 U.S. Dist. LEXIS 199048, at *8–9 (N.D. Fla. Sept. 20, 2018) (same); *Linsley v. FMS Inv. Corp.*, No. 11-cv-961, 2012 U.S. Dist. LEXIS 53735, at *17 (D. Conn. Apr. 17, 2012) (express preemption of misrepresentation claim as to consolidation-related communications for federal loans).

Here, all of Plaintiffs' claims for constructive fraud and negligent misrepresentation, and many of Plaintiffs' claims for breach of fiduciary duty, negligence, negligence *per se*, and violations of state consumer protection statutes, are grounded in alleged disclosures that PHEAA made, or failed to make, to borrowers.  *See* Compl. ¶¶ 671; 679; 716g-j, o; 742; 749; sub-paragraphs c and f of 761, 775, 791, 807, 824, 840, 857, 872, 887, 902, 917, 932, 939, 956. Consequently, all such claims—whether based on alleged omissions or affirmative misrepresentations—are expressly preempted by § 1098g.

### a. The HEA expressly preempts Plaintiffs' omission-based claims.

As the Seventh Circuit stated in *Nelson v. Great Lakes Education Loan Services*, "[w]hen a plaintiff alleges a defendant's actionable failure to disclose, it is easy to understand how that claim implies a 'disclosure requirement,' to use the language of § 1098g."  928 F.3d 639, 649 (7th Cir. 2019).[10]  In other words, where Plaintiffs argue that PHEAA should have, but did not, inform

---

[10]    The *Nelson* panel also concluded that claims predicated on affirmative misrepresentations, as opposed to omissions, are less likely to be preempted under § 1098g.  *Id.* at 648–50.  For the reasons discussed below in Section V.B.2.b, PHEAA submits that *Nelson* decided that latter issue incorrectly.

26

or advise them on a particular point, they are asserting that PHEAA was obligated to make an additional disclosure under state law.  Consequently, such claims fall within the core area preempted by § 1098g.

The gravamen of many of Plaintiffs' allegations is that PHEAA failed to disclose certain information to borrowers.  *See* Compl. ¶¶ 679 a, c-f (constructive fraud); 716 i, j, o (negligence); 742 (negligence *per se*); and subparts c and f of ¶¶ 761, 775, 791, 807, 824, 840, 857, 872, 887, 902, 917, 932, 939, 956 (consumer protection statutes).  More specifically, in support of their constructive fraud claim (Count 10) and consumer protection claims (Counts 15–28), Plaintiffs describes the actionable conduct as being PHEAA's "failing to communicate," "failing to disclose," "failing to fully disclose," "failing to fully explain," and/or "failing to inform" regarding topics such as the requirements of federal loan programs, interest capitalization, forbearance, and means of communication.  Compl. ¶ 679 a, c–f; *see, e.g.*, Compl. ¶ 761 c, f.  In support of their negligence claim (Count 12), Plaintiffs allege that PHEAA failed to "fully inform borrowers of financial consequences and interest capitalization that will result from forbearance," "notify borrowers of recertification requirements," and "educate borrowers about the consequences of switching repayment plans."  Compl. ¶ 716i, j, o.  And in their negligence *per se* claim (Count 13), Plaintiffs allege omissions consisting of failure to advise about IDR options, alternatives to forbearance, and upcoming renewal or recertification deadlines.  Compl. ¶ 742.

Plaintiffs also characterize one omission-related claim as an affirmative act, i.e., "steer[ing] borrowers into loan forbearance" or "consecutive loan forbearance."  *Id.*  But it is clear that "preemption cannot be avoided simply by relabeling an otherwise preempted claim."  *Chae*, 593 F.3d at 943; *see also Linsley*, 2012 U.S. Dist. LEXIS 53735, at *17 (holding that plaintiff cannot "avoid preemption by relabeling his otherwise-preempted claim as one of misrepresentation and

27

not improper disclosure").  Here, the factual predicate for the "forbearance steering" claim is PHEAA's alleged failure to discuss IDR options.  *See* Compl. at ¶¶ 403–05 (discussing benefits of IDR); 413 (failing to advise on the availability of IDR); 416 (same); 417 (same).  The HEA already explicitly dictates the disclosures required regarding a borrower's repayment options.  *See* 20 U.S.C. § 1083(e)(2).  It is unsurprising that Congress would expressly preempt state-law disclosure obligations on the same topic.

> **b.      The HEA expressly preempts Plaintiffs' misrepresentation-based claims.**

Federal courts have also extended preemption under §1098g to state-law claims based on a federal loan servicer's alleged affirmative misrepresentations (as opposed to omissions) because "[c]laims that a servicer provided inaccurate information is no different than a claim that [it] failed to make proper disclosures."  *Lawson-Ross*, 2018 U.S. Dist. LEXIS 199048, at *9; *see also Chae*, 593 F.3d at 943 (holding that "the state-law prohibition on misrepresenting a business practice '[was] merely the converse' of a state-law requirement that alternate disclosures be made" and found the plaintiff's claims to be preempted).  In the only opinion to address claims concerning alleged misrepresentation of PSLF payment counts—exactly what some Plaintiffs allege here—a federal district court found that such claims, whether based on omissions or affirmative misrepresentations, were expressly preempted.  *See Winebarger*, 411 F. Supp. 3d at 1090 (state-

law claims preempted because "the failure to provide accurate information is, in essence, nothing more than a disclosure claim").[11]

Here, many of Plaintiffs' claims for constructive fraud, negligent misrepresentation, breach of fiduciary duty, negligence, negligence *per se*, and violations of state consumer protection statutes rely on supposed misrepresentations by PHEAA.  *See* Compl. ¶¶ 671; 679; 716g–j, o; 742; 749; sub-paragraphs c and f of 761, 775, 791, 807, 824, 840, 857, 872, 887, 902, 917, 932, 939, 956.  But these claims "in essence, [are] about [PHEAA's] failure to provide accurate information—disclosure, in other words."  *Lawson-Ross*, 2018 U.S. Dist. LEXIS 199048, at *9.  They therefore are expressly preempted under the HEA.

### 3.   Federal law preempts Plaintiffs' state-law claims.

Plaintiffs' state-law claims, along with being expressly preempted by the HEA, are also preempted because they would conflict with and impede the federal government's ongoing implementation of the Direct Loan program, and thus run afoul of the Supremacy Clause.  Conflict preemption arises when state law "stands as an obstacle to the accomplishment and execution of

---

[11]     A number of courts have found that § 1098g does not preempt state-law misrepresentation claims, and PHEAA submits that these cases were wrongly decided.  Two such opinions rely heavily on the fact that the alleged misstatements pertained only to FFEL Loans and thus were not "explicitly regulated and sanctioned by federal law."  *See Davis v. Navient Corp.*, No. 17-cv-00992, 2018 U.S. Dist. LEXIS 41365, at *6 (W.D.N.Y. Mar. 12, 2018); *Genna v. Sallie Mae, Inc.*, No. 11-cv-7371, 2012 U.S. Dist. LEXIS 54044, at *23 (S.D.N.Y. Apr. 17, 2012).  Here, by contrast, PHEAA's Direct Loan servicing performance is closely monitored by the Department.  *See supra* at pp. 7-12.  Other courts have wrongly applied a presumption against preemption or a heightened standard to defendant's preemption defense, despite the "considerable federal interests" at stake in the context of federal student lending.  *See Hyland v. Navient Corp.*, No. 18-cv-9031, 2019 U.S. Dist. LEXIS 113038, at *16 (S.D.N.Y. July 8, 2019) (requiring "compelling evidence of an intention to preempt"); *Pa. v. Navient Corp.*, 354 F. Supp. 3d 529, 547–48 (M.D. Pa. 2018) (applying presumption); *Daniel v. Navient Sols., LLC*, 328 F. Supp. 3d 1319, 1323–24 (M.D. Fla. 2018) (same).  Yet other cases involved allegations that defendants' affirmative misrepresentations were designed to save on operating costs—an allegation not advanced here.  *See Hyland*, 2019 U.S. Dist. LEXIS 113038, at *8–9.

the full purposes and objectives of Congress." *Freightliner Corp. v. Myrick*, 514 U.S. 280, 287 (1995); *see also Crosby v. Nat'l Foreign Trade Council*, 530 U.S. 363, 373 (2000) ("For when the question is whether a Federal act overrides a state law, the entire scheme of the statute must, of course, be considered and that which [is] . . . implied is of no less force than that which is expressed."); *Gade*, 505 U.S. at 103 ("A state law also is pre-empted if it interferes with the methods by which the federal statute was designed to reach th[at] goal." (internal quotation marks and citations omitted)).

Through the HEA, Congress provided "a clear command for uniformity." *Chae*, 593 F.3d at 945. Speaking to Congress's objectives through the FFEL Program, the Ninth Circuit noted that "[o]ne need not have an advanced degree in risk management and financial practices to believe . . . . that exposure to lawsuits under fifty separate sets of laws and court systems could make lenders reluctant to make new federally-guaranteed student loans." *Id*. (citation and quotation marks omitted). The same uniformity concerns motivated the Direct Loan Program. *See Winebarger*, 411 F. Supp. 3d at 1090 (holding that state law claims regarding alleged inaccurate disclosures would "undermine Congress's unequivocal objective of uniformity" for Direct Loans); *Chae*, 593 F.3d at 945 ("Congress created a policy of inter-program uniformity by requiring that 'loans made to borrowers . . . shall have the same terms, conditions, and benefits, and be available in the same amounts, as loans made to borrowers under [the FFEL program].'") (quoting 20 U.S.C. § 1087e(a)(1)).[12]

This case alone incorporates tort and consumer-protection claims arising under the laws of seventeen jurisdictions, many of which differ in ways ranging from subtle to significant.

---

[12]     PHEAA respectfully submits that for the reasons described above, the aforementioned decisions were wrongly decided as to conflict preemption as well.

PHEAA's exposure to such claims—as opposed to its existing obligations to adhere to a uniform body of federal regulations and its Servicing Contract—would significantly undermines the HEA's goal of establishing uniform rules and regulations for the servicing of federal loans.  Congress envisioned that such questions would be resolved by federal law—embodied by the Department's regulations and contracts with loan servicers.  Because Plaintiffs' state-law claims conflict with Congress's overarching goal of uniformity in this context, those claims are preempted.

###### 4.      The Department's position on preemption supports PHEAA's motion.

A federal agency's interpretation of the preemptive effect of federal law is entitled to so-called *Skidmore* deference, with the weight of that deference depending upon the interpretation's "thoroughness, consistency, and persuasiveness."  *Wyeth v. Levine*, 555 U.S. 555, 576–77 (2009) (citing *Skidmore v. Swift & Co.*, 323 U.S. 134, 140 (1944)).

Here, in its recent Preemption Notice, the Department voiced its view that state servicing laws "attempt[ing] to impose new prohibitions on misrepresentations or the omission of material information . . . run afoul of the express preemption provision of 20 U.S.C. § 1098g."  Preemption Notice, 83 Fed. Reg. at 10,621.  Such laws, according to the Department, are "barred whether they are enacted legislatively or implied judicially in the context of a tort suit."  *Id.*  The Preemption Notice is consistent with the position that the Department has taken in other cases involving application of consumer protection laws to alleged misrepresentations by loan servicers.  *See* Ex.

31

1, MA  Statement of Interest at 1–2; Brief of Plaintiff-Intervenor-Appellee at 8, Statement of

Interest, *Chae v. SLM Corp.*, No. 08-56154 (9th Cir. Feb. 26, 2009) (Dkt. No. 22).[13]

The Department likewise agrees with PHEAA's position on conflict preemption because

"the purpose of the Direct Loan Program [was] to establish a uniform, streamlined, and simplified

lending program managed at the Federal level."  Preemption Notice, 83 Fed. Reg. at 10,621.  The

Department has specifically observed that "the imposition of liability on Government contractors

will directly affect the terms of Government contracts, at the very least by raising the price of such

contracts and the interests of the United States will be directly affected."  *Id.* (citation and quotation

marks omitted).

Although federal courts have split on the degree of deference to which the Preemption

Notice is entitled, PHEAA submits that the correct view was adopted in *Lawson-Ross v. Great*

*Lakes Higher Educ. Corp.*, in which the court found that the Preemption Notice "is persuasive and

due deference under *Skidmore* . . . ."  2018 U.S. Dist. LEXIS 199048, at *8.  Characterizing the

Preemption Notice as "well-reasoned and sensible," the court observed that "[i]t articulates unique

federal interests in controlling student loan servicers through government contracts that advance

the comprehensive disclosure requirements detailed in federal regulations."  *Id.*  This Court, too,

should deem the Preemption Notice persuasive, defer to the Department's interpretation of the

federal statutory framework it is charged with implementing, and conclude that Plaintiffs' state-

law claims are preempted.

---

[13]     The Department did not take a contrary position on this specific issue in *Sanchez v. ASA College, Inc.*, No. 14-cv-5006, (S.D.N.Y. Jan. 23, 2015) (Dkt. No. 64). The claims in *Sanchez* involved a privately owned for-profit college making misrepresentations about the programs it offered, the cost of enrollment, the availability of federal funding, and job placements.  *Id.*  The *Sanchez* action did not involve federal student loans; indeed, the Department did not even discuss the HEA's disclosure provision.  *Id.*

PHEAA respectfully submits that, as set forth above, the Court has two independent, compelling grounds—derivative sovereign immunity and preemption—upon which to dismiss all of Plaintiffs' claims without needing to address PHEAA's challenges to those claims under Rule 12(b)(6).  Were the Court, however, to hold that PHEAA is not entitled to derivative sovereign immunity and not all of Plaintiffs' claims are preempted, numerous other grounds exist on which to dismiss Plaintiffs' claims.  These grounds are detailed in the following sections.

C.     **The Court lacks subject-matter jurisdiction over many of Plaintiffs' claims.**

Plaintiffs' claims suffer from additional constitutional infirmities.  Article III limits the federal judiciaries' authority to "Cases" and "Controversies."  U.S. CONST. art. III, § 2.  Courts enforce this limitation "through the several justiciability doctrines that cluster about Article III," including standing and ripeness.  *Toll Bros., Inc. v. Twp. of Readington*, 555 F.3d 131, 137 (3d Cir. 2009).  Here, several of the PSLF Plaintiffs and TEACH Plaintiffs have not alleged an injury-in-fact sufficient to establish standing or ripeness.  Plaintiffs also attempt to bring claims related to the TEACH program, the IDR plans, and PSLF in 14 states without a named plaintiff who can alleged the necessary injury-in-fact to support standing for each of those claims.  Many of the Plaintiffs' claims, therefore, fail under Rule 12(b)(1) and the Court should dismiss those claims.

1.     **Many of the PSLF and TEACH Plaintiffs have not alleged an injury-in-fact and, therefore, lack standing.**

Standing is a threshold issue in every case.  *Finkelman v. NFL*, 810 F.3d 187, 203 (3d Cir. 2016) (concluding appellants had no standing based on speculative nature of plaintiffs' claims).  To satisfy Article III standing, a plaintiff must allege:  (1) an injury-in-fact that is concrete and particularized, as well as actual and imminent; (2) the injury is fairly traceable to the challenged action of the defendant; and (3) it is likely (not merely speculative) that injury will be redressed by a favorable decision.  *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S.

167, 180–81 (2000).  In a class action, named plaintiffs "must allege and show that they personally have been injured, not that injury has been suffered by other, unidentified members of the class to which they belong and which they purport to represent."  *Gratz v. Bollinger*, 539 U.S. 244, 289 (2003) (internal citations and quotation marks omitted).

The first element, injury-in-fact, "is often determinative."  *Toll Bros.,* 555 F.3d at 138.  For an injury to be concrete, the injury must be "real, or distinct and palpable, as opposed to merely abstract."  *Finkelman*, 810 F.3d at 193 (quoting *N.J. Physicians, Inc. v. President of the United States*, 653 F.3d 234, 238 (3d Cir. 2011)).  Courts do not find injury where the claimed harm is conjectural.  *See Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 410 (2013).  Mere "[a]llegations of 'possible future injury' are not sufficient to satisfy Article III."  *Reilly v. Ceridian Corp.*, 664 F.3d 38, 42 (3d Cir. 2011).  "For a future harm to constitute an injury-in-fact, it must be 'certainly impending,'" *Republic Servs. of Pa., LLC v. Caribbean Operators, LLC*, 301 F. Supp. 3d 468, 475 (E.D. Pa. 2018) (quoting *Clapper*, 568 U.S. at 410), and must "proceed with a high degree of immediacy, so as to reduce the possibility of deciding a case in which no injury would have occurred at all."  *Reilly,* 664 F.3d at 42 (quoting *Lujan v. Defenders of Wildlife*, 504 U.S. 555, 564 n.2 (1992)).  By contrast, "when [plaintiffs] rely on a 'chain of contingencies' or 'mere speculation,'" they do not allege an injury-in-fact.  *Finkelman*, 810 F.3d at 193 (quoting *Aichele*, 757 F.3d at 364).

Here, Plaintiffs Coleman, Gallagher, Gupta, Harig, King, Lathrop, Levis, Meckfessel, Miller, and Morris (the Pre-Forgiveness Plaintiffs) allege only that they have been denied "the opportunity to make qualifying [loan] payments, which delays loan forgiveness under the PSLF program."  *See* Compl. ¶¶ 67, 81, 86, 111, 122, 132, 136, 150, 158.  None of these Plaintiffs, though, alleges he or she has completed the requisite 120 qualifying payments for PSLF

forgiveness; the Complaint establishes that most are years away from eligibility, even if they are credited with the periods they say that PHEAA has wrongfully refused to count. *See* Compl. ¶¶ 62 (Coleman at least 2 years from eligibility); 73 (Gallagher - 2 years); 83 (Gupta - 3 years); 89 (Harig - 1 year); 108 (King - 6 years); 115 (Lathrop - 2 years); 131 (Levis - 4 years); 134 (Meckfessel - 7 years); 148 (Miller - 7 years); 154 (Morris - 6 years).  In a nutshell, they have not alleged that loan forgiveness has in fact been delayed—they have alleged that it *might* be delayed.

To obtain forgiveness, each Pre-Forgiveness Plaintiff must continue to make separate monthly loan payments until he or she meets the 120-payment threshold.  34 C.F.R. § 685.219(c)(iii).  During that time, each Plaintiff must work for a qualifying employer.  34 C.F.R. § 685.219(c)(ii).  PHEAA and the Department also must fail to correct the allegedly erroneous qualifying payment tallies.  There is no guarantee that these events will occur, meaning there is no guarantee that Plaintiffs' alleged harm—a delay in obtaining PSLF forgiveness—will occur either. *See* 2018 FY Report at 23 (explaining that "many" borrowers who begin progressing toward PSLF forgiveness will leave public-sector employment before making the 120 qualifying payments). Consequently, until and unless they qualify for PSLF forgiveness, the Pre-Forgiveness Plaintiffs cannot establish the "actual and imminent" harm necessary for Article III standing.

This is not a novel theory, and it has already been applied to these facts.  In *Winebarger v. PHEAA*, 411 F. Supp. 3d 1070 (C.D. Cal. 2019), a separate putative class brought identical allegations against PHEAA pertaining to the same program, i.e., that PHEAA had undercounted plaintiffs' PSLF-qualifying payments and thereby delayed their potential entitlement to loan forgiveness.  The court found that this "unfounded fear" was "wholly speculative and far too remote to confer standing." *Id.* at 1087.  Thus, because any supposed harm resulting from a delay in loan forgiveness may not occur, the PSLF-related claims of the Pre-Forgiveness Plaintiffs must

35

be dismissed.  Because Plaintiffs Gupta, Harig, Levis, and Miller assert only PSLF-related claims, they should be dismissed from this action entirely.

Two TEACH Plaintiffs, too, have failed to allege an injury-in-fact because they concede that their allegedly improper Grant conversion was reversed as a result of the Department's TEACH reconsideration process, meaning that their loans were reconverted to grants, and all payments on the loans were refunded to them.  *See* Compl. ¶¶ 106 (Jones), 230 (Webb).  Because the Department's reconsideration process has left these Plaintiffs financially whole, their claims should be dismissed for lack of standing.

### 2. The PSLF-related claims of the Pre-Forgiveness Plaintiffs are not ripe.

The PSLF-related claims of the Pre-Forgiveness Plaintiffs also fail under the ripeness doctrine.  Courts consider two factors in the ripeness analysis:  (1) whether delayed review of the issue would cause hardship to the parties and (2) whether the issues are fit for judicial decision or would benefit from further factual development.  *Peachlum v. City of New York*, 333 F.3d 429, 434 (3d Cir. 2003).  As for "fit," the Third Circuit has identified as "relevant" the following non-exhaustive factors:  "whether the issue is purely legal (as against factual), the degree to which the challenged action is final, whether the claim involves uncertain and contingent events that may not occur as anticipated or at all, the extent to which further factual development would aid decision, and whether the parties to the action are sufficiently adverse."  *NE Hub Partners, L.P. v. CNG Transmission Corp.*, 239 F.3d 333, 341 n.8 (3d Cir. 2001) (citation omitted).  As for the "hardship" consideration, the Court has focused "on whether a plaintiff faces a direct and immediate dilemma, such that lack of review will put it to costly choices."  *Id.*  At bottom, "[a] claim is not ripe for adjudication if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all."  *Texas v. United States*, 523 U.S. 296, 300 (1998); *see also Peachlum*, 333 F.3d at 433 ("The function of the ripeness doctrine is to determine whether a party has brought an

36

action prematurely, and counsels abstention until such time as a dispute is sufficiently concrete to satisfy the constitutional and prudential requirements of the doctrine." (internal citation omitted)).

As discussed above, the claims of the Pre-Forgiveness Plaintiffs each depend on two critical contingencies: (1) completing the necessary 120 qualifying payments for loan forgiveness while satisfying all PSLF program requirements during that time; and (2) PHEAA and the Department's refusal to restore each plaintiff's qualifying payment count to the state he or she alleges is correct. Those claims therefore impermissibly "rest[] upon contingent future events that may not occur as anticipated or indeed may not occur at all." *Texas*, 523 U.S. at 300 (internal quotation marks omitted). The appropriate time to adjudicate whether those contingencies have occurred, and thus whether or not the Pre-Forgiveness Plaintiffs have been harmed, will be several years from now, when each plaintiff has applied for (and has either been granted or denied) loan forgiveness under PSLF.

As to the other factors outlined by the Third Circuit, they too weigh in favor of finding these claims premature—each claim is highly factual, the challenged action is not final, and further factual development would aid a decision by the Court. *See NE Hub Partners, L.P.*, 239 F.3d at 341 n.8. For all of these reasons, the PSLF-related claims of the Pre-Forgiveness Plaintiffs are unripe and should be dismissed under Rule 12(b)(1).[14]

---

[14] Relatedly, one TEACH Plaintiff alleges that he has applied for reconsideration of the conversion of his TEACH grants, and that his application remains pending. *See* Compl. ¶ 145 (Meyer). Because that application process may result in full satisfaction of that Plaintiff's TEACH-related claim—as it has for two other TEACH Plaintiffs—this Court should dismiss that claim as unripe at this time.

       **3.**     **In the absence of an injury connected to a specific jurisdiction, Plaintiffs lack standing to bring claims under the laws of that jurisdiction.**

Plaintiffs assert claims under the consumer protection statutes of fourteen jurisdictions, all in reliance on identical allegations regarding PHEAA's practices and procedures concerning TEACH, PSLF, and IDR.  *See* Compl. at ¶¶ 761, 775, 791, 807, 824, 840, 857, 872, 887, 902, 917, 932, 939, 956.  For many of these fourteen jurisdictions, though, the Plaintiffs with residence in a given jurisdiction assert claims only as to TEACH, PSLF, *or* IDR.  To the extent that Plaintiffs are attempting broadly to state claims relating to each program in each state, many of those claims must be dismissed for lack of standing.

As a matter of first principles, each Plaintiff must establish his or her own personal standing as to every claim in the Complaint.  *See Winer Family Tr. v. Queen*, 503 F.3d 319, 326 (3d Cir. 2007) ("The initial inquiry . . . is whether the lead plaintiff individually has standing."); *Zimmerman v. HBO Affiliate Grp.*, 834 F.2d 1163, 1169 (3d Cir. 1987) ("[T]o be a class representative on a particular claim, the plaintiff must himself have a cause of action on that claim.").  Accordingly, where plaintiffs assert numerous claims under disparate state laws, "'each claim must be analyzed separately, and a claim cannot be asserted on behalf of a class unless at least one plaintiff has suffered the injury that gives rise to that claim.'"  *In re Naispan Antitrust Litig.*, 42 F. Supp. 3d 735, 758 (E.D. Pa. 2014) (quoting *In re Wellbutrin XL Antitrust Litig*, 260 F.R.D. 143, 152 (E.D. Pa. 2009)).  Named plaintiffs cannot "assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *In re Naispan Antitrust Litig.*, 42 F. Supp. 3d at 758 (citation and quotation marks omitted); *see also Hildebrand v.*

*Dentsply Int'l, Inc.*, No. 06-cv-5439, 2011 U.S. Dist. LEXIS 112458, at \*7–9 (E.D. Pa. Sept. 30, 2011) (Jones, J.) (holding that Pennsylvania resident could not represent New Jersey subclass).[15]

The question here, then, is whether, for each state consumer protection claim, (1) a named plaintiff resides in that state, and (2) a named plaintiff has alleged an injury in that jurisdiction that has a causal relationship with the variety of claim (e.g., TEACH, PSLF, or IDR) being asserted. Only if both conditions are satisfied does standing for that claim exist. PHEAA has attached a chart depicting those allegations. *See* Ex. 5. The only jurisdiction in which the prerequisite conditions for standing are satisfied is California. *Id.* For the remaining thirteen state consumer protection claims, the resident Plaintiffs have not alleged injuries that support each variety of claim (TEACH, PSLF, and IDR). *Id.*

For example, the only Plaintiff with ostensible standing under the Massachusetts Consumer Protection Law (Count 22) by virtue of residency is Maggie Webb. Compl. ¶ 867. Webb alleges facts related to TEACH, but not IDR or PSLF; indeed, she is a member of only the "TEACH" putative class. *See id.* at ¶¶ 225–31, 242. Because Webb alleges no facts or injuries that relate to

---

[15]      Decisions deferring this inquiry to the class certification stage run counter to Third Circuit law, as well as the weight of authority. *See, e.g.*, *Gress v. Freedom Mortg. Corp.*, 386 F. Supp. 3d 455, 461–62 (M.D. Pa. 2019); *In re Generic Pharms. Pricing Antitrust Litig.*, 368 F. Supp. 3d 814, 827–31 (E.D. Pa. 2019); *In re Thalomid & Revlimid Antitrust Litig.*, No. 14-cv-6997, 2015 U.S. Dist. LEXIS 177541, at \*54–59 (D.N.J. Oct. 29, 2015); *In re Chocolate Confectionary Antitrust Litig.*, 602 F. Supp. 2d 538, 578–80 (M.D. Pa. 2009). As the Third Circuit has explained, standing is a necessary prerequisite to Rule 23 considerations. *Neale v. Volvo Cars of N. Am.*, 794 F.3d 353, 360 (3d Cir. 2015). Moreover, deferring a ruling on standing creates the exact problem that the standing inquiry seeks to avoid: "plaintiffs would apply for class certification, proposing to represent the claims of parties whose injuries and modes of redress they would not share." *In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. at 155; *see also Laspina v. SEIU Pa. State Council*, No. 18-cv-2018, 2019 U.S. Dist. LEXIS 147506, at \*12–13 (M.D. Pa. Aug. 29, 2019) (standing must be decided before Rule 23 class certification); *In re Insulin Pricing Litig.*, No. 17-cv-699, 2019 U.S. Dist. LEXIS 25185, at \*51–52 (D.N.J. Feb. 15, 2019) (same); *In re Niaspin Antitrust Litig.*, MDL No. 2460, 2015 U.S. Dist. LEXIS 164021, at \*7–8 (E.D. Pa. Dec. 8, 2015) (same).

PSLF and IDR, she does not have standing to bring a claim related to these causes of action under the Massachusetts Consumer Protection Law.  The Court should thus dismiss Count 22 in part, to the extent it purports to relate to alleged PSLF- and IDR-related errors.

To the extent that any of Plaintiffs' claims survive the motion to dismiss, the partial dismissal of the unsupported consumer-protection claims in Counts 16 through 28 will substantially narrow the issues in dispute.  More specifically, the Court should dismiss in part the following claims for lack of standing, because no resident Plaintiff has alleged a violation relating to the specific program at issue:

- TEACH claims under Counts 16, 17, 21, 23, 24, and 26–28;

- PSLF claims under Counts 18–20, 22, and 25; and

- IDR claims under Counts 16, 20, and 22.

*See* Ex. 5.[16]

### D.   The Court should dismiss the vast majority of Plaintiffs' state-law claims for failure to state a claim under Rule 12(b)(6).

Apart from issues with standing and ripeness, many of Plaintiffs' claims against PHEAA fall short on substantive grounds and should be dismissed under Rule 12(b)(6).

#### 1.   Plaintiffs fail to state a claim for breach of contract.

Plaintiffs' claim for breach of contract (Count 8) rests on the theory that Plaintiffs are "third-party beneficiaries" of the Servicing Contract between PHEAA and the Department. Compl. ¶ 653.  The claim fails for two reasons:  (1) the Servicing Contract does not contain

---

[16]   Further, to the extent that the Court dismisses any of Plaintiffs' claims for lack of standing or ripeness as argued by PHEAA in Section V.C.1 and V.C.2, the Court should also preclude Plaintiffs collectively from raising claims under the laws of those jurisdictions if no representative Plaintiff remains.  The bases for dismissal as depicted in PHEAA's Exhibit 3 reflects that position.

language reflecting an intent to make PHEAA liable to borrowers should PHEAA fail to perform; and (2) Plaintiffs fail to identify the specific terms of the Contract that PHEAA allegedly breached. Plaintiffs' "alternative" claim for breach of the duty of good faith and fair dealing, Compl. ¶ 660, fails because there is no contract between Plaintiffs and PHEAA, the claim is duplicative of Plaintiffs' contract claim, and Plaintiffs provide no notice of how PHEAA allegedly breached the covenant.

### a.    Plaintiffs are not third-party beneficiaries of the Servicing Contract.

Because the Servicing Contract is a federal government contract, federal common law governs its interpretation.  *See Allstate Transp. Co. v. SEPTA*, No. 97-cv-1482, 2000 U.S. Dist. LEXIS 3831, at *51–52 (E.D. Pa. Mar. 27, 2000).  Courts within the Third Circuit "apply the rules for government contracts established in the second Restatement of Contracts."  *Id.* at *52; *Nguyen v. U.S. Catholic Conference*, 719 F.2d 52, 55 (3d Cir. 1983).  Under the Restatement, "individual members of the public are treated as incidental beneficiaries unless the contract manifests a different intent."  *Allstate Transp. Co.*, 2000 U.S. Dist. LEXIS 3831, at *52 (citing Restatement (Second) of Contracts § 313 cmt. (1981)).  The contract at issue must "contain some specific language or provision reflecting the intent to make the party contracting with the government liable to third parties should it fail to perform."  *Id.* at *53 (citing *Nguyen*, 719 F.2d at 55).  Where that language is missing, "the third parties are merely incidental beneficiaries having no actionable rights under the contract."  *Nguyen v. U.S. Catholic Conference*, 548 F. Supp. 1333, 1348 (W.D. Pa. 1982), *aff'd*, 719 F.2d 52 (3d Cir. 1983).

While Plaintiffs allege that the Servicing Contract contains language that reflects an express or implied intention to benefit Plaintiffs, Compl. ¶¶ 654–56, 658, they fail to identify any language that evinces an intent to make PHEAA liable to third parties should PHEAA fail to

41

perform.[17]  Other courts addressing this exact claim have held that student borrowers constitute only incidental beneficiaries without ability to sue.  *See Winebarger*, 411 F. Supp. 3d at 1092 (holding that plaintiffs cannot "allege any facts or point to any language in the Servicing Contract between [the Department] and [PHEAA] that even arguably would allow a borrower to sue to enforce the Servicing Contract"); *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *22–23 (dismissing a breach of contract claim with similar allegations).

> **b.**   **Plaintiffs fail to identify the specific terms of the Contract that PHEAA allegedly breached.**

Plaintiffs' claim also fails the basic notice requirements of Federal Rule 8(a).  Plaintiffs allege that PHEAA breached its Servicing Contract with the Department by "failing to properly service borrowers' federal student loans . . . as required by the terms of the Servicing Contract and applicable federal law."  Compl. ¶ 659.  Plaintiffs fail, however, to point to any specific *term* of the Servicing Contract that PHEAA allegedly breached.  As discussed above, the Servicing Contract is over 600 pages and has been subject to over 450 modifications.  *See supra* at p. 8.  Without notice of the specific provisions allegedly breached, PHEAA cannot respond adequately to Plaintiffs' contract claims, nor will the Court be able to analyze whether Plaintiffs have in fact stated a claim.  *See Bissett v. Verizon Wireless*, 401 F. Supp. 3d 487, 499–501 (M.D. Pa. July 18,

---

[17]   The language that Plaintiffs identify in paragraphs 654–56 and 658 suggests, at best, that the Servicing Contract was intended to benefit student borrowers.  Compl. ¶¶ 654–56, 658. This alone, however, does not support that the further conclusion that the federal government intended for borrowers to enforce the Contract.  *See Nguyen*, 548 F. Supp. at 1348 ("The fact that third parties will benefit more directly from performance of the contract than members of the public at large does not alter their status as incidental beneficiaries."); *Rivera v. Bank of Am. Home Loans*, No. 09-cv-2450, 2011 U.S. Dist. LEXIS 43138, at *14–17 (E.D.N.Y. Apr. 21, 2011) (holding that even though the contract provisions included language that outlined the servicers' duties to the borrower and stated that the primary purpose was to provide services to eligible borrowers, this was insufficient to make the borrowers third-party beneficiaries to the agreement).

2019) (dismissing contract claim where the complaint did not "allege facts sufficient to place the defendant on notice of the contract claim in such a way that the defendant can reasonably respond") (quoting *Transp. Int'l Pool, Inc. v. Ross Stores, Inc.*, No. 06-cv-1812, 2009 U.S. Dist. LEXIS 32424, at \*9 (E.D. Pa. Apr. 15, 2009)); *Rister v. Cmty. Bank of Rowan*, No. 14-cv-5079, 2015 U.S. Dist. LEXIS 127325, at \*16 (E.D. Pa. Sept. 21, 2015) (dismissing contract claim where plaintiff failed to allege the violation of any section or clause contained in the agreement).  The contract claims, therefore, fail for this reason as well.

> ### c.   Plaintiffs cannot in the alternative use the implied covenant of good faith and fair dealing to expand PHEAA's contractual duties.

Plaintiffs allege (in the alternative) that PHEAA breached the implied covenant of good faith and fair dealing.  Compl. ¶ 660.  Plaintiffs' implied-covenant claim fails for several reasons.  First, in the absence of a contract between Plaintiffs and PHEAA, they cannot state an implied-covenant claim.[18]  Second, the claim is based on the same facts as Plaintiffs' claim for breach of contract, and is therefore redundant.  *Northview Motors, Inc. v. Chrysler Motors Corp.*, 227 F.3d 78, 92 (3d Cir. 2000) ("[A] party is not entitled to maintain an implied duty of good faith claim where the allegations of bad faith are identical to a claim for relief under an established cause of

---

[18]    *See, e.g.*, *Threshold Techs., Inc. v. United States*, 117 Fed. Cl. 681, 708 (Fed. Cl. 2014); *ACA Comput. Integrators, Inc. v. Cubic Transp. Sys.*, No. 10-cv-11926, 2012 U.S. Dist. LEXIS 42643, at \*24–25 (D. Mass. Mar. 28, 2012); *accord Cty. of Santa Clara v. Astra USA, Inc*, No. 05-cv-03740, 2006 U.S. Dist. LEXIS 33047, at \*31 (N.D. Cal. May 17, 2006); *Brown v. AXA Re*, No. 02-cv-10138, 2004 U.S. Dist. LEXIS 7624, at \*14 (S.D.N.Y. May 3, 2004); *Pollack v. Quick Quality Rests., Inc.*, 172 A.3d 568, 578–79 (N.J. Super. Ct. App. Div. 2017); *City of Bristol v. R.C. Knox & Co.*, No. 07-cv-5004598, 2012 Conn. Super. LEXIS 1836, at \*4–5 (Conn. Super. Ct. July 13, 2012); *Donald B. Murphy Contractors v. King Cty.*, 49 P.3d 912, 915 (Wash. Ct. App. 2002).

action." (internal quotations omitted)).[19]   Third, Plaintiffs' claim is pleaded in conclusory fashion

and provides no notice of how PHEAA allegedly breached the implied covenant.  *See* Compl.

¶ 660 ("[E]ven if it is determined that PHEAA did not breach its express obligations under the

Servicing Contract, PHEAA breached the covenant of good faith and fair dealing implied in the

Servicing Contract.").  To the extent that Plaintiffs seek to use the covenant to "expand [PHEAA's]

contractual duties beyond those in the express contract," Plaintiffs' claim also fails because the

implied covenant cannot "create duties inconsistent with the contract's provisions."  *Precision*

*Pine & Lumber, Inc. v. United States*, 596 F.3d 817, 831 (Fed. Cir. 2010).[20]

---

[19]     *Accord Cruz v. FXDirectDealer LLC*, 720 F.3d 115, 125 (2d. Cir. 2013); *Africare, Inc. v. Xerox Complete Document Sols. Md., LLC*, Nos. 17-cv-1712, 17-cv-1945, 2020 U.S. Dist. LEXIS 8362, *32 n.16 (D.D.C. Jan. 17, 2020); *Smith v. Allstate Ins. Co.*, 904 F. Supp. 2d 515, 522 (W.D. Pa. 2012); *Hahn v. OnBoard LLC*, No. 09-cv-03639, 2009 U.S. Dist. LEXIS 107606, at *15 (D.N.J. Nov. 16, 2009); *Enola Contracting Servs. v. URS Grp., Inc.*, No. 08-cv-2, 2008 U.S. Dist. LEXIS 33441, at *8–9 (N.D. Fla. Apr. 23, 2008); *Guz v. Bechtel Nat'l, Inc.*, 8 P.3d 1089, 1112 (Cal. 2000).

[20]     *Accord Stone Motor Co. v. Gen. Motors Corp.*, 293 F.3d 456, 466 (8th Cir. 2002); *Burger King Corp. v. Weave*r, 169 F.3d 1310, 1316 (11th Cir. 1999); *Bravia Capital Partners, Inc. v. Fike*, No. 09-cv-6375, 2010 U.S. Dist. LEXIS 88104, at *12 (S.D.N.Y. Aug. 25, 2010); *Wachovia Bank, Nat'l Ass'n v. Preston Lake Homes, LLC*, 750 F. Supp. 2d 682, 688–89 (W.D. Va. 2010); *C & E Servs., Inc. v. Ashland Inc.*, 601 F. Supp. 2d 262, 275 (D.D.C. 2009); *Interwave Tech. Inc. v. Rockwell Automation, Inc*., No. 05-cv-398, 2005 U.S. Dist. LEXIS 37980, at *27 (E.D. Pa. Dec. 30, 2005); *Eaglehead Corp., v. Cambridge Capital Grp., Inc.*, 170 F. Supp. 2d 552, 562 (D. Md. 2001); *Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992); *Guz*, 8 P.3d at 1110; *Landry v. Spitz*, 925 A.2d 334, 344 (Conn. App. Ct. 2007); *N. Tr. Co. v. VIII S. Mich. Assocs.*, 657 N.E.2d 1095, 1104 (Ill. App. Ct. 1995); *Waste Connections of Kan., Inc. v. Ritchie Corp.*, 298 P.3d 250, 266 (Kan. 2013); *Eigerman v. Putnam Invs., Inc.*, 877 N.E.2d 1258, 1264–65 (Mass. 2007); *Glenfed Fin. Corp., Commercial Fin. Div. v. Penick Corp.*, 647 A.2d 852, 857 (N.J. Super. Ct. App. Div. 1994); *W. Prop. Holdings, Ltd. Liab. Co. v. Aequitas Capital Mgmt.*, 392 P.3d 770, 776 (Or. Ct. App. 2017); *Healthmart USA, LLC v. Directory Assistants, Inc.*, No. 12-cv-00606, 2013 Tenn. App. LEXIS 307, at *12 (Tenn. Ct. App. Apr. 29, 2013); *Badgett v. Sec. State Bank*, 807 P.2d 356, 360 (Wash. 1991).

**2.      Plaintiffs fail to state a claim for unjust enrichment.**

Plaintiffs also purport to state a claim for unjust enrichment (Count 11) "under the law of Pennsylvania."  Compl. ¶ 699.  Plaintiffs do not and cannot allege, though, that they have conferred any benefit on PHEAA that they would be entitled to have returned.  Further, because the claim arises only under Pennsylvania law, none of the non-Pennsylvania Plaintiffs may assert that claim.

In Pennsylvania, an unjust-enrichment claim requires "(1) a benefit conferred on the defendant by the plaintiff; (2) appreciation of the benefit by the defendant; and (3) the defendant's acceptance and retention of the benefit 'under such circumstances that it would be inequitable for defendant to retain the benefit without payment of value.'"  *Giordano v. Claudio*, 714 F. Supp. 2d 508, 530 (E.D. Pa. 2010) (quoting *Filippi v. City of Erie*, 968 A.2d 239, 242 (Pa. Commw. Ct. 2009)).  The plaintiff's conferral of a benefit upon the defendant, obviously, is central to the claim.  *See Montanez v. HSBC Mortg. Corp.*, 876 F. Supp. 2d 504, 517 n.14 (E.D. Pa. 2012) (dismissing unjust-enrichment claim where plaintiff failed to allege conferral of direct benefit on defendant); *Weinstein v. JP Morgan Chase/Chase Fin.*, No. 12-cv-361, 2013 U.S. Dist. LEXIS 65937, at *12–13 (E.D. Pa. May 8, 2013) (Jones, J.) (same).

Here, Plaintiffs premise their unjust-enrichment claim on the alleged "millions of dollars in loan servicing fees" PHEAA received from the *Department*—not from Plaintiffs—as a result of Plaintiffs' alleged overpayments on loans PHEAA serviced.  Compl. ¶ 694.  Plaintiffs claim that they "conferred" this benefit on PHEAA through their alleged overpayments, and that the benefit to PHEAA is "traceable" to their overpayments.  Compl. ¶¶ 695–96.  But the reality is that Plaintiffs never conferred the loan servicing fees to PHEAA in the first place.  As the Southern District of New York explained when considering a nearly identical claim made by student borrowers, "[t]he core of an unjust enrichment claim is that the defendant has received something that does not belong to it, and that rightly belongs to the plaintiff.  *This is not the plaintiffs' claim*."

45

*Hyland*, 2019 U.S. Dist. LEXIS 113038, at *37 (emphasis added).  Because the loan servicing fees at issue never rightly belonged to Plaintiffs, they could not have conferred the fees on PHEAA. The Court should therefore dismiss Plaintiffs' unjust-enrichment claim.

Further, as explained *supra*, "named plaintiffs lack standing to assert claims under the laws of the states in which they do not reside or in which they suffered no injury."  *In re Naispan Antitrust Litig.*, 42 F. Supp. 3d at 758.  Here, to the extent that non-Pennsylvania Plaintiffs purport to state a claim for unjust enrichment under Pennsylvania law, the Court should dismiss that claim in relevant part.

### 3.   Plaintiffs fail to state claims for breach of fiduciary duty, constructive fraud, negligence, negligent misrepresentation, and negligence *per se*.

Plaintiffs premise their claims for breach of fiduciary duty (Count 9), constructive fraud (Count 10), negligence (Count 12), and negligent misrepresentation (Count 14) on allegations that PHEAA breached either a duty of care or a fiduciary duty to act in good faith.  Compl. ¶¶ 666, 675, 707, 711, 713, 750.  These claims fail at the outset because Plaintiffs do not identify the governing state law.  But even assuming that Plaintiffs will invoke the laws of the seventeen jurisdictions represented by the named Plaintiffs, the vast majority of their claims for breach of fiduciary duty, constructive fraud, negligence, and negligent misrepresentation must be dismissed because lenders and loan servicers—including student loan servicers—do not owe a fiduciary duty or a legal duty of care to borrowers.[21]  Further, Plaintiffs' negligence *per se* claim fails because they impermissibly tie that claim to irrelevant laws and regulations.

---

[21]     *See* Exhibit 3 for a tabular representation of the claims that must be dismissed on this basis.

a.   **Plaintiffs' claims for breach of fiduciary duty, constructive fraud, negligence, negligent misrepresentation, and negligence *per se* fail because they do not identify the applicable law(s).**

It is black-letter law that plaintiffs have an obligation to identify the state law under which their claims arise. *See In re Wellbutrin XL Antitrust Litig.*, 260 F.R.D. 143, 167 (E.D. Pa. 2009) (dismissing unjust-enrichment claim for failure to identify governing law); *see also SEPTA v. Guilead Scis., Inc.*, 102 F. Supp. 3d 688, 705 (E.D. Pa. 2015) ("Plaintiffs fail to state under what state law they bring [their good faith and fair dealing] claim, and on that basis alone Count III fails."); *Travelers Indem. Co. v. Cephalon, Inc.*, 32 F. Supp. 3d 538, 550 n.15 (E.D. Pa. 2014) (dismissing tort claims for failure to identify relevant state law).

Here, Plaintiffs identify no governing law for their claims for breach of fiduciary duty (Count 9), constructive fraud (Count 10), negligence (Count 12), negligence *per se* (Count 13), and negligent misrepresentation (Count 14).  This failure is not academic: four of the seventeen jurisdictions in which Plaintiffs reside—Florida, Maryland, New Jersey, and Washington—do not recognize a cause of action for negligence *per se* at all.  *Metz v. Wyeth*, 872 F. Supp. 2d 1335, 1343 (M.D. Fla. 2012) (Florida does not allow negligence *per se* actions for violations of a federal statute unless the statute provides for a private right of action); *Great Am. Assurance Co. v. Ferguson*, No. 10-cv-0915, 2010 U.S. Dist. LEXIS 131867, at *15 (D. Md. Dec. 14, 2010); *Kenney v. Sci., Inc.*, 497 A.2d 1310, 1324 (N.J. Super. Ct. App. Div. 1985); Wash. Rev. Code § 5.40.050 (limiting negligence *per se* to four enumerated actions relating to public safety).  Maryland does not recognize breach of fiduciary duty as a separate cause of action; Alabama does not recognize a claim for negligent misrepresentation.  *See Hyland*, 2019 U.S. Dist. LEXIS 113038, at *29 (citing *Int'l Bhd. of Teamsters v. Willis Corroon Corp. of Md.*, 802 A.2d 1050, 1051 n.1 (Md. 2002)); *Bennett v. Nationstar Mortg., LLC*, No. 15-cv-00165, 2015 U.S. Dist. LEXIS 119532, at *10 n.5

47

(S.D. Ala. Aug. 17, 2015).  Even in states where these causes of action do exist, there is no guarantee that the elements are the same across jurisdictions.

Accordingly, Plaintiffs must identify the law applicable to their tort claims or face summary dismissal of those counts.

> **b.    Plaintiffs' claims for breach of fiduciary duty and constructive fraud fail because PHEAA is not Plaintiffs' fiduciary.**

As explained *supra* in Section V.C.3, Plaintiffs have standing to assert claims only under the laws of their home jurisdictions.  Under most of these jurisdictions' laws, Plaintiffs' claims for breach of fiduciary duty and constructive fraud must be dismissed because no fiduciary relationship existed between Plaintiffs and PHEAA.  *See, e.g.*, *Alvarez v. Ins. Co. of N. Am.*, 313 F. App'x 465, 469 (3d Cir. 2008) ("[I]n the absence of a confidential relationship, [a] constructive fraud claim must fail."); *Harold v. McGann*, 406 F. Supp. 2d 562, 571 (E.D. Pa. 2005) ("In order to plead a violation of fiduciary duty or confidential relationship, [a] [p]laintiff must show that such a relationship existed.").  Although the precise formulation varies from state to state, a fiduciary relationship generally exists "when one [party] is under a duty to act for or to give advice for the benefit of another upon matters within the scope of that relation."  *Doe v. Evans,* 814 So. 2d 370, 374 (Fla. 2002) (quoting Restatement (Second) of Torts § 874 cmt. a).  In other words, "[i]t exists only when a person reposes a high level of confidence and reliance in another, who thereby exercises control and dominance over him."  *People v. Coventry First LLC*, 915 N.E.2d 616, 620 (N.Y. 2009).

48

State law is consistent that lenders and loan servicers are not the borrower's fiduciaries and do not owe a fiduciary duty of care.[22]  This holds even where borrowers allege that servicers have taken on additional responsibilities beyond merely collecting payments, such as assisting with loan modifications.[23]  In the context of student loans, the *Hyland* court rejected allegations—similar to those advanced by Plaintiffs here, *see* Compl. ¶¶ 667, 669—that the student loan servicer defendant had established a fiduciary duty to the borrower by "[holding] itself out as a source of guidance and expertise . . . and encourag[ing] borrowers to rely on its advice and representations."  2019 U.S. Dist. LEXIS 113038, at *30.  In dismissing the plaintiffs' fiduciary duty claims under New York, California, Florida, and Maryland law, the *Hyland* court explained that the "allegations that

---

[22]    *See, e.g.*, *Paradise Hotel Corp. v. Bank of Nova Scotia*, 842 F.2d 47, 53 (3d Cir. 1988) ("Creditor-debtor relationships . . . rarely are found to give rise to a fiduciary duty."); *Edwards v. Ocwen Loan Servicing, LLC*, 24 F. Supp. 3d 21, 30 (D.D.C. 2014) ("[L]oan servicers, as such, owe no fiduciary duties to borrowers . . . ."); *Fleshman v. Wells Fargo Bank, N.A.*, 27 F. Supp. 3d 1127, 1132 (D. Ore. 2014) ("[A] loan servicer-borrower relationship is not a special relationship capable of allowing tort-type damages . . . ."); *Elesh v. Ocwen Loan Servicing, LLC*, No. 12-cv-10356, 2013 U.S. Dist. LEXIS 56283, at *4 (N.D. Ill. Apr. 19, 2013) ("[T]here is nothing inherent in business dealings between a [loan servicer] and a borrower from which springs a cognizable fiduciary relationship." (quoting *Citicorp Sav. Of Ill. v. Rucker*, 692 N.E.2d 1319, 1325–26 (Ill. Ct. App. 1998) (alteration in original)); *Taggart v. Wells Fargo Home Mortg., Inc.*, No. 10-cv-00843, 2010 U.S. Dist. LEXIS 102747, at *25–26 (E.D. Pa. Sep. 27, 2010) ("Pursuant to Pennsylvania law, a lender normally does not have a fiduciary duty to a borrower.  . . .  A lender owes a [fiduciary] duty to the borrower only if a confidential relationship is created whereby the creditor gains substantial control over the debtor's business affairs."  (internal citations omitted)).

[23]    *See, e.g.*, *Walker v. Deutsche Bank Nat'l Trust Co.*, No. 16-cv-6976, 2017 U.S. Dist. LEXIS 43044, at *10–12 (D. Conn. Mar. 24, 2017) (finding no fiduciary duty where servicer "assist[ed] and advis[ed]" borrowers during loan modification negotiations); *Johnson v. Nationstar Mortg., LLC*, No. 14-cv-02536, 2014 U.S. Dist. LEXIS 149275, at *7–8 (D. Md. Oct. 21, 2014) (dismissing a constructive fraud claim based on denial of borrower's loan modification application because "there was no duty to Plaintiff created under [the modification program]"); *Taggart*, 2010 U.S. Dist. LEXIS 102747, at *25–27 (finding no fiduciary duty where the lender persuaded the borrower to disadvantageously refinance rather than take out a home equity loan).

[the student loan servicer] made representations on its public-facing website about the quality of its customer service . . . [did] not establish that [the loan servicer] has undertaken a fiduciary duty to act or give advice for the benefit of its borrowers." *Id.* at *30–31.

Plaintiffs' breach of fiduciary duty and constructive fraud claims parallel those dismissed by the *Hyland* court. *See, e.g.*, Compl. ¶¶ 336–37 (describing PHEAA website copy encouraging borrowers to reach out for assistance with loan repayment). PHEAA cannot have breached a fiduciary duty to borrowers, or committed constructive fraud against the borrowers, because such a duty does not exist. As a result, the Court should dismiss Plaintiffs' claims for breach of fiduciary duty and constructive fraud to the extent that Plaintiffs assert them in Alabama, California, Connecticut, District of Columbia, Florida, Illinois, Massachusetts, Maryland, New Jersey, New York, Oregon, Pennsylvania, Tennessee, and Virginia.

c.   **Plaintiffs' negligence and negligence misrepresentation claims fail because PHEAA, as a loan servicer, does not owe Plaintiffs a duty of care.**

Plaintiffs' claims for negligence and negligent misrepresentation require that PHEAA owe a duty of care[24] to Plaintiffs.[25]  *See, e.g.*, *Winebarger v. PHEAA*, 411 F. Supp. 3d at 1090–91; *Henok v. Chase Home Fin., LLC*, 915 F. Supp. 2d 162, 170 (D.D.C. 2013).  Similar to the law concerning fiduciary duties, courts across the seventeen jurisdictions where the named Plaintiffs reside overwhelmingly hold that loan servicers do not owe any non-contractual duties of care, including in negligence, when servicing borrowers' loans.[26]  Courts facing these precise claims

---

[24]   Plaintiffs also allege that PHEAA's liability for negligence arises from alleged statutory and regulatory duties, naming 34 C.F.R. § 682.211 and 12 U.S.C. §§ 5531(a), 5536(a)(1)(B).  (Compl. ¶¶ 713–14.)  Like Plaintiffs' negligence *per se* claim involving the same regulation and statute, this is an attempt to create a private cause of action under statutes and regulations that were never intended to supply them.  *See* § V.E.3.d, *supra*.  In similar cases involving loan servicers, courts have held that while a regulatory violation may be relevant to negligence, "it does not create . . . a duty in the first place."  *Markle v. HSBC Mortg. Corp. (USA)*, 844 F. Supp. 2d 172, 185 (D. Mass. 2011) (citation omitted); *see Heflebower v. JPMorgan Chase Bank, NA*, No. 12-cv-01671, 2013 U.S. Dist. LEXIS 141278, at *32 (E.D. Cal. Sep. 27, 2013) (holding that a violation of a statute or regulation "is irrelevant if no duty has first been established").

[25]   There are a few exceptions, including Connecticut, in which negligent misrepresentation requires only a plaintiff's justified reliance and the defendant's lack of reasonable care, rather than a preexisting duty of care.  *See Henderson v. Wells Fargo Bank, N.A.*, No. 13-cv-378, 2016 U.S. Dist. LEXIS 9326, at *25–26 (D. Conn. Jan. 27, 2016).

[26]   *See, e.g.*, *Fleshman, N.A.*, 27 F. Supp. 3d at 1137 (no duty of care based on servicer-borrower relationship); *Winebarger*, 411 F. Supp. 3d at 1091–92 ("Under [California] law, loan servicers do not owe general duties of care to borrowers."); *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *29 ("The general rule is that a lender does not owe tort duties to a borrower."); *Howard v. Nationstar Mortg., LLC*, No. 16-cv-2831, 2017 U.S. Dist. LEXIS 222636, at *6 (W.D. Tenn. June 13, 2017) (finding "no duty of care in the servicing of [a] mortgage"); *Selman v. CitiMortgage, Inc.*, No. 12-cv-0441, 2013 U.S. Dist. LEXIS 37017, at *20–21 (S.D. Ala. Mar. 5, 2013) (holding that a loan servicer has no duty of care in negligence to a borrower); *Cenatiempo v. Bank of Am., N.A.*, 219 A.3d 767, 791 (Conn. 2019) (declining to create "a common-law duty requiring a loan servicer to use reasonable care in the review and processing of a mortgagor's loan modification applications").

against PHEAA and other student loan servicers have dismissed negligence and negligent misrepresentation claims against student loan servicers on the basis the borrower cannot establish the requisite duty. *See, e.g.*, *Winebarger*, 411 F. Supp. 3d at 1091–92; *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *30–31. The Court should dismiss these claims to the extent that Plaintiffs assert them in Alabama, California, Connecticut, District of Columbia, Florida, Illinois, Kansas, Maryland, Massachusetts, New Jersey, New York, Oregon, Pennsylvania, Tennessee, and Virginia.

> **d.      Plaintiffs' negligence *per se* claim fails because neither the statute nor the regulation they cite contains a private right of action or is intended to protect consumers.**

Plaintiffs' state-law claims for negligence *per se* (Count 13) fail substantively as well. Plaintiffs have not identified an appropriate legal predicate for a negligence *per se* claim because the laws they cite—the Consumer Financial Protection Act (CFPA) (12 U.S.C. §§ 5531(a), 5536(a)(1)(B)), and Department regulations (34 C.F.R. § 682.211(e)(1))—do not contain a private right of action and are not aimed at protecting consumers from personal injury.

Violating a federal statute or regulation "may be negligence *per se* 'if under state law criteria, it may be considered the kind of . . . regulation violation of which is negligence *per se*.'" *Cecile Indus., Inc. v. United States*, 793 F.2d 97, 99 (3d Cir. 1986) (quoting *Schindler v. United States*, 661 F.2d 552, 560–61 (6th Cir. 1981)) (alteration in original). First, the Third Circuit (and state courts more broadly) prohibit negligence *per se* actions based on federal laws containing no

private cause of action.[27]   Second, courts have prohibited negligence *per se* actions based on

statutes creating broad standards of conduct, such as unfair trade practices statutes, because they

do not require "specific conduct."[28]   Third, where enforcement authority for federal law is granted

---

[27]   *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d 781, 791 (3d Cir. 1999) (lack of private cause of action in federal statute weighed against allowing state tort claim premised on violation of that statute); *Ries v. AMTRAK*, 960 F.2d 1156, 1164 (3d Cir. 1992) (finding that OSHA violations cannot be used as the basis for a negligence *per se* suit because there is no private cause of action under OSHA); *Weinbach v. Starwood Hotels & Resorts Worldwide, Inc.*, No. 16-cv-783, 2017 U.S. Dist. LEXIS 134884, at *14–15 (E.D. Mo. Aug. 23, 2017) (dismissing negligence *per se* claim because it was based on a law that "[did] not create a private cause of action"); *Levy-Tatum v. Navient Sols., Inc.*, 183 F. Supp. 3d 701, 708 (E.D. Pa. 2016) (finding that a negligence *per se* claim could not be grounded in the federal E-Sign Act because it "contains no rights-creating language and manifests no intent to create a private right or remedy"); *Metz*, 872 F. Supp. 2d at 1343 (Florida does not allow negligence *per se* actions for violations of a federal statute unless the statute provides for a private right of action.); *Vassali v. Ahneman Kirby, LLC*, FSTCV176030884S, 2018 Conn. Super. LEXIS 111, at *12–13 (Conn. Super. Ct. Jan. 12, 2018) (the lack of a private cause of action in a federal statute weighed in favor of dismissing a negligence *per se* claim); *Dietz v. Atchison, T. & S.F. Ry.*, 823 P.2d 810, 814 (Kan. Ct. App. 1991) (requiring a showing that the legislature intended "an individual right of action for injury arising out of the violation").

[28]   *See, e.g.*, *King v. Avtech Aviation, Inc.*, 655 F.2d 77, 79 (5th Cir. 1981) (negligence *per se* claim based on FAA regulations requiring aircraft owners to maintain their plane in "airworthy condition" failed because the regulation "does not require specific conduct and is far too broad to establish a standard of care"); *Gordon v. Chipotle Mexican Grill, Inc.*, No. 17-cv-1415, 2018 U.S. Dist. LEXIS 129928, at *56–58 (D. Colo. Aug. 1, 2018) *approved and adopted by Gordon v. Chipotle Mexican Grill, Inc.*, 344 F. Supp. 3d 1231, 1246 (D. Colo. 2018) (federal unfair practices statute too broad to state negligence *per se* claim under Arizona, Colorado, and Missouri law); *Vassali*, 2018 Conn. Super. LEXIS 111, at *13–14 (the "broad and general" standard contained in a federal statute weighed in favor of dismissing the negligence *per se* action); *Chadbourne v. Kappaz*, 779 A.2d 293, 297 (D.C. 2001) (a statute grounding a negligence *per se* claim must contain "specific guidelines," not a "general standard of care"); *Fagerquist v. W. Sun Aviation, Inc.*, 236 Cal. Rptr. 633, 640 (Cal. Ct. App. 1987) ("the doctrine of negligence *per se* is not applicable unless the statute, rule or ordinance allegedly violated sets forth a specific standard of conduct").

exclusively to a government agency, that law cannot be the basis for a negligence *per se* claim.[29]

Finally, courts have limited usage of federal law in negligence *per se* actions to "safety" laws

aimed at protecting individuals from personal injury, not economic harm.[30]

Here, Plaintiffs base part of their negligence *per se* claim upon violations of the CFPA,

which makes it unlawful to, *inter alia*, "commit[] or engag[e] in an unfair, deceptive, or abusive

act or practice under Federal law," 12 U.S.C. § 5531, or "offer or provide to a consumer any

financial product or service not in conformity with Federal consumer financial law," 12 U.S.C.

§5536(a)(1)(A); Compl. ¶¶ 733–46. This language is too general and broad in application to create

the specific code of conduct or duty required to support a negligence *per se* claim.[31]   Moreover,

the CFPA contains no private right of action, reserves enforcement authority exclusively to the

Consumer Financial Protection Bureau (CFPB) and state attorney generals, and is not a safety

statute aimed at protecting consumers from personal injury.  *See McBride v. PHH Mortg. Corp.*,

---

[29]   *See, e.g.*, *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 193 F.3d at 791 (dismissing state tort claim based on violation of federal statute "expressly restrict[ing] its enforcement to the federal government"); *Ries*, 960 F.2d at 1164 (dismissing negligence *per se* action based on OSHA violations because "Congress has established an elaborate system of administrative civil and criminal penalties for punishing OSHA violations"); *F.E.I. Co. v. United States*, No. 16-cv-02237, 2019 U.S. Dist. LEXIS 135644, at *25 (M.D. Pa. Aug. 12, 2019) (holding that a negligence *per se* claim could not be based on a federal regulation granting enforcement authority solely to the USDA).

[30]   *See Chalfin v. Beverly Enters., Inc.*, 745 F. Supp. 1117, 1120 n.6 (E.D. Pa. 1990) ("The statutes in the case at bar are administrative in nature.  They are not 'safety' statutes where the negligence *per se* doctrine is traditionally applied."); *see also Ries*, 960 F.2d at 1165 ("OSHA is not a safety statute under the FELA, thus a violation of an OSHA regulation could not constitute negligence *per se*."); *Weinbach*, 2017 U.S. Dist. LEXIS 134884, at *14 ("negligence *per se* is 'ordinarily' based on safety statutes"); *Steward v. Holland Family Props., LLC*, 726 S.E.2d 251, 254 (Va. 2012) (requiring negligence *per se* action to be based on statue "enacted for public health and safety reasons"); Wash. Rev. Code § 5.40.050 (limiting negligence *per se* to four enumerated actions relating to public safety).

[31]   *See supra* footnote 28.

No. 18-cv-1401, 2019 U.S. Dist. LEXIS 147534, at *19 (W.D. Pa. Aug. 28, 2019) (no private right of action under CFPA); *McCray v. Bank of Am., Corp.*, No. 14-cv-2446, 2017 U.S. Dist. LEXIS 54388, at *39 (D. Md. Aug. 10, 2017) (same); 12 U.S.C. §§ 5552(a)(1), 5564(a) (providing litigation authority under CFPA only for the CFPB and, upon notice to CFPB, state attorneys general); 12 U.S.C. § 5481(5) (CFPA covers only "financial" products and services, not products that may cause personal injury).

Similarly, the HEA regulation upon which Plaintiffs base their negligence *per se* claim contains no private right of action, reserving enforcement authority exclusively to the Department. *See* 20 U.S.C. § 1082 (providing Secretary of Education with wide-ranging authority to enforce provisions of the Act); *Alston v. Pa. State Univ.*, No. 14-cv-2480, 2015 U.S. Dist. LEXIS 174003, at *11 (M.D. Pa. June 9, 2015), *adopted by*, 2016 U.S. Dist. LEXIS 1817 (M.D. Pa. Jan. 6, 2016) (listing cases holding no private right of action under the HEA).  In addition, the HEA is facially not a safety statute aimed at protecting consumers from personal injury, nor have Plaintiffs alleged any personal injuries.  *See* Compl. ¶¶ 24–241, 719–46 (alleging only economic injuries).

Because these are precisely the types of statutes and regulations courts have routinely prohibited plaintiffs from using to allege negligence *per se* claims, the Court should dismiss Plaintiffs' negligence *per se* claim.

### 4.    Thirteen Plaintiffs fail to assert claims for constructive fraud and negligent misrepresentation.

Plaintiffs premise their constructive fraud (Count 10) and negligent misrepresentation (Count 14) claims on alleged representations that PHEAA failed to make (i.e., omissions) or made "to borrowers."  Compl. ¶¶ 679, 749.  Eight Plaintiffs—Anderson, Gallagher, Johnson, King, Lathrop, Leone, Morris, and Pruess—allege only omissions by PHEAA, *see* Compl. ¶¶ 26, 78, 99, 109, 117, 126, 154, 156, 171, and their claims are therefore preempted.  *See supra* Section V.B.2.a. Thirteen other Plaintiffs—Arany, Asby, Brady, Gupta, Hawkins, Jones, Musser, Pryor, Puccini, Rockwell, Stevens, Wardlow, and Webb—fail to allege that PHEAA made *any* representation (or omission).[32]  Compl. ¶¶ 30–36; 37-43, 48–52; 82–86; 92–96; 101–07; 159–67; 174–95; 202–12; 218–31.  Because Plaintiffs' constructive fraud and negligent misrepresentation claims require a representation by PHEAA, these claims fail.

Moreover, because Plaintiffs Arany, Gupta, Stevens, Brady, Wardlow, Gallagher, Jones, King, and Lathrop are the only named plaintiffs for California, New York, District of Columbia, Kansas, Missouri, and Maryland, the Court should dismiss in part the constructive fraud and negligent misrepresentation claims for each of those jurisdictions, because no named Plaintiff has asserted a cognizable injury in those jurisdictions.

### 5.    Plaintiffs' fail to state claims under five of the consumer protection statutes.

In addition to their common-law claims, Plaintiffs bring claims under consumer protection statutes of fourteen jurisdictions (Counts 15–28).  Of these, the Court should dismiss five (Counts

---

[32]    Even if the Court were to construe Plaintiffs Asby, Brady, Musser, Rockwell, and Jones allegations as asserting a representation claim, at best, the allegations suggest that PHEAA failed to tell Plaintiffs that its notifications were in Plaintiffs' paperless inboxes.  As such, the representations constitute omissions and are preempted by the HEA.

15, 17, 20, 22, 27) as either procedurally deficient or inapplicable to loan servicers, or the named plaintiff(s) failed to state a claim under the statute.

> ### a. Plaintiffs' consumer protection claims under California and Massachusetts law fail because Plaintiffs failed to comply with statutory demand requirements.

The Court should dismiss Plaintiffs' claims under California's Legal Remedies Act (CLRA), Cal. Civ. Code § 1750 *et seq*. (Count 15) [33] and Massachusetts's Consumer Protection Law, M.G.L. c. 93A, (c. 93A) (Count 22) because Plaintiffs failed to fulfill the CLRA's and c. 93's notice requirements.

Under the CLRA, a consumer must give notice at least thirty days before commencing an action for damages. *See* Cal. Civ. Code § 1782(a). This is not a mere procedural step: "[C]ompliance with this requirement is necessary to state a claim" under the CLRA. *Cattie v. Wal-Mart Stores, Inc.*, 504 F. Supp. 2d 939, 949 (S.D. Cal. 2007). Accordingly, "failure to give notice before seeking damages necessitates dismissal with prejudice, even if a plaintiff later gives notice and amends." *Id.* at 950; *accord Laster v. T-Mobile USA, Inc.*, 407 F. Supp. 2d 1181, 1195–96 (S.D. Cal. 2005); *Von Grabe v. Sprint*, 312 F. Supp. 2d 1285, 1304 (S.D. Cal. 2003) (dismissing premature claims for damages with prejudice). Here, Plaintiffs Stevens, Arany, and Gupta did not serve the required notice before they filed suit and they do not allege otherwise. Accordingly, the Court should dismiss Count 15.

Massachusetts law contains a similar written-demand requirement. M.G.L. c. 93A, § 9(3). As with California, "[t]he letter is 'not merely a procedural nicety, but, rather, a prerequisite to the suit.'" *Peterson v. GMAC Mortg., LLC*, No. 11-cv-11115, 2011 U.S. Dist. LEXIS 123216, at *17

---

[33]     While Plaintiffs nominally allege that PHEAA violated California's Unfair Competition Law (UCL), Compl. ¶ 758, Count 15 - Heading, they have failed to plead any other facts concerning the UCL, and seek damages only under the CLRA. Compl. ¶ 768.

(D. Mass. Oct. 25, 2011) (quoting *Rodi v. S. New Eng. Sch. Of Law*, 389 F.3d 5, 20 (1st Cir. 2004));

*see also Brown v. Bank of Am. Corp.*, No. 10-cv-11085, 2011 U.S. Dist. LEXIS 36235, at *8 (D.

Mass. Mar. 31, 2011) ("The requirement is not a mere formality.").  For that reason, "[n]ot only

must such a letter be sent, a plaintiff must plead that he has complied with this requirement as a

prerequisite to suit." *Kanamaru v. Holyoke Mut. Ins. Co.*, 892 N.E. 2d 759, 768 (Mass. App. Ct.

2008).  Plaintiff Webb did not serve the required notice before she filed suit and Plaintiffs do not

allege otherwise.  Accordingly, because Plaintiff Webb is the only Plaintiff asserting a claim under

the Massachusetts Consumer Protection Law, the Court should dismiss Count 22 as well.

*Kanamaru*, 892 N.E. 2d at 768.[34]

> **b.   Plaintiffs' consumer protection claims fail in California, District of Columbia, and Kansas because loan servicing is not covered by these jurisdictions' consumer protection statutes.**

Plaintiffs' claims under the District of Columbia's Consumer Protection Procedures Act

(CPPA), D.C. Code § 28-3901 *et seq.* (Count 17), and the Kansas Consumer Protection Act

(KCPA), Kan. Stat. Ann. § 50-623 *et seq.* (Count 20), as well as the CLRA (Count 15) (should it

---

[34]   Plaintiff Webb's claim under Massachusetts's c. 93A independently fails because the Complaint constitutes at most an assertion of mere negligence by PHEAA.  Specifically, Webb alleges that PHEAA converted her TEACH Grant into a loan for failure to timely submit her 2015 certification, when in fact she had timely submitted the certification. Compl. ¶¶ 228–29.  Mere negligence, however, is not an unfair or deceptive practice under Massachusetts law.  *See Foisy v. Royal Maccabees Life Ins. Co.*, 241 F. Supp. 2d 65, 70 (D. Mass. 2002) (quoting *Damon v. Sun Co.*, 87 F.3d 1467, 1485 n.10 (1st Cir. 1996) (internal citations omitted)) ("[I]t is clear that a chapter 93A violation can be based in negligence *only* when the negligence 'is paired with an unfair or deceptive act or practice.' Stated another way, 'negligence plus rascality' is needed to impose chapter 93A liability.");  *see also SMS Fin. V, LLC v. Conti*, 865 N.E.2d 1142, 1150 (Mass. Ct. App. 2007) ("[N]egligence without more does not constitute an unfair or deceptive practice under [chapter 93A]."); *Bank of Am. Corp.*, 2011 U.S. Dist. LEXIS 36235, at *8–9 (dismissing suit where "[t]he plaintiff has alleged no facts that suggest this error rose above the level of mere negligence").

not be dismissed for other reasons), should be dismissed because the statutes at issue do not apply to loan servicing activities.

Plaintiffs' claim under the D.C. CPPA is foreclosed.  As the *Winebarger* court held when addressing the same claim, "[l]iability under the CPPA is limited to merchants, or individuals who 'sell, . . . or transfer, either directly or indirectly consumer goods or services' or who, in the ordinary course of business, 'supply the goods or services which are or would be the subject matter of a trade practice.'"  411 F. Supp. 3d at 1093–94 (quoting D.C. Code § 28-3901(a)(3)).  Thus, "[l]oan servicers, such as PHEAA, are not 'merchants' and, thus, are not subject to liability under the CPPA." *Id.* (citing *Mushala v. U.S. Bank, N.A.*, No. 18-cv-1680, 2019 U.S. Dist. LEXIS 54039, at *25 (D.D.C. Mar. 29, 2019)).

Similarly, Plaintiffs fail to state a claim under the KCPA, which applies only to "consumer transactions." *See Queen's Park Oval Asset Holding Tr. v. Belveal*, Nos. 114,849, 115,246, 2017 Kan. App. Unpub. LEXIS 348, at *9 (Kan. Ct. App. May 12, 2017) (citing Kan. Stat. Ann. §§ 50-626(a), 50-627(a)).  "A '[c]onsumer transaction' is defined as 'a sale, lease, assignment or other disposition for value of property or services within this state . . . to a consumer . . . .'" *Id.* (quoting Kan. Stat. Ann. § 50-624(c)).  Therefore, while the initial grant of a loan is a consumer transaction, loan servicing is not. *See id.* at *11 (finding no consumer transaction in a KCPA case involving the defendant's purchase of and foreclosure on a preexisting mortgage).

Last, the CLRA does not apply to loan servicers because loan servicing is not a "service" covered by the CLRA. *See Biggs v. Bank of Am. Corp.*, No. 15-cv-00267, 2015 U.S. Dist. LEXIS 73405, at *15–17 (C.D. Cal. June 15, 2015) ("Including as 'services' all intangible goods [such as loans] that provide ancillary services would 'defeat the apparent legislative intent' of limiting the CLRA's application."  (quoting *Fairbanks v. Superior Court*, 46 Cal. 4th 56, 65 (Cal. 2009)));

*Gerbitz v. ING Bank, FSB*, 967 F. Supp. 2d 1072, 1080 (D. Del. 2013) (holding that loan servicing is not a "service" covered by the CLRA); *Hyland*, 2019 U.S. Dist. LEXIS 113038, at *33–34 (dismissing CLRA claim as "foreclosed by California law").  Thus, even if Plaintiffs had complied with the CLRA's notice requirement, their CLRA claims would still fail.

Accordingly, the Court should dismiss Plaintiffs' claims arising under the CLRA (Count 15), D.C. CPPA (Count 17), and KCPA (Count 20).

**c.**     **Plaintiffs fail to state a claim under Pennsylvania's Unfair Trade Practices and Consumer Protection Law (Count 27).**

Plaintiffs Harig and Hawkins's claims under the Pennsylvania Unfair Trade Practices and Consumer Protection Law (UTPCPL) (Count 27) should be dismissed because Plaintiffs fail to plead that they justifiably relied on any representation by PHEAA.  The UTPCPL "demand[s] a showing of justifiable reliance, not simply a causal connection between the misrepresentation and the harm." *Hunt v. U. S. Tobacco Co.*, 538 F.3d 217, 222 (3d Cir. 2008) (citing *Weinberg v. Sun Co.*, 777 A.2d 442, 445–46 (Pa. 2001)).  Therefore, plaintiffs "must allege that, had they known of the defendant's deception, they would have altered their own conduct." *Dicicco v. Citizens Fin. Grp., Inc.*, No. 15-cv-267, 2015 U.S. Dist. LEXIS 120798, at *49 (E.D. Pa. Sep. 10, 2015) (citing *Hunt*, 538 F.3d at 227).  Plaintiffs Harig and Hawkins claim that they were harmed by alleged mistakes in PHEAA's loan servicing, *see* Compl. ¶¶ 89, 93–95, but they do not allege any misrepresentations, let alone misrepresentations on which they justifiably relied and that altered their conduct.  As a result, the Court should dismiss Count 27.

**E.**     **The Court should dismiss the majority of Plaintiffs' claims for negligent misrepresentation, constructive fraud, and violations of consumer protection statutes for failure to satisfy Rule 9(b).**

Plaintiffs' claims for negligent misrepresentation, constructive fraud, and violations of state consumer protection statutes, which rely on allegations of fraud, suffer from yet another

pleading defect—failure to satisfy the heightened pleading requirements of Rule 9(b).  Many jurisdictions apply Rule 9(b) to such claims by requiring that a plaintiff "plead or allege the date, time and place of the alleged fraud or otherwise inject precision or some measure of substantiation into a fraud allegation." *Frederico v. Home Depot*, 507 F.3d 188, 200 (3d Cir. 2007) (quoting *Lum v. Bank of America*, 361 F.3d 217, 224 (3d Cir. 2004)) (internal citation omitted).  A plaintiff must also identify the individual who made the allegedly fraudulent or negligent representation; a general attribution to a corporate defendant does not suffice.  *See id.* at 201–02 (affirming dismissal of complaint that failed to "disclose the circumstance surrounding [plaintiff's] discussion with, or any information about, the particular individual who" made an allegedly fraudulent statement).  If a plaintiff does not have access to this information, he or she must affirmatively "allege that the necessary information lies within defendant's exclusive control and provide facts to illustrate that [his or her] claims are not baseless." *Id.* at 201 n.11 (citing *F.D.I.C. v. Bathgate*, 27 F.3d 850, 876 (3d Cir. 1994)).  A complaint that does not meet these "stringent pleading requirements" cannot survive a motion to dismiss.  *Id.* at 200, 202.

Federal courts applying the laws of Alabama, California, Connecticut, the District of Columbia, Florida, Massachusetts, Missouri, New Jersey, New York, Tennessee, Virginia, and Washington require plaintiffs to plead negligent misrepresentation with particularity under Rule

9(b), either as a general rule or when the claim sounds in fraud.[35]  Here, Plaintiffs allege that PHEAA had a duty "to provide timely, accurate information to borrowers," and PHEAA breached that duty by "conceal[ing] and suppress[ing] material facts concerning the commercial student loan services it provided to Plaintiffs," such that PHEAA employed "fraudulent practices and procedures."  Compl. ¶¶ 747, 749, 752–53.

Plaintiffs' factual allegations in support of their negligent misrepresentation claim unambiguously fail to satisfy Rule 9(b) requirements here.  They do not identify the date, time, location, or speaker of the alleged misrepresentation, *see, e.g.*, Compl. ¶¶ 33–34, 56, 135, 204–05, 219–21, or otherwise contend that the necessary information is within PHEAA's exclusive control (because it plainly is not).   The Court should therefore dismiss Plaintiffs' negligent misrepresentation claim insofar as it arises under the law of jurisdictions holding such claims to Rule 9(b)'s heightened pleading standard (Alabama, California, Connecticut, District of Columbia, Florida, Massachusetts, New Jersey, New York, Missouri, Tennessee, Virginia, and Washington).

The same holds true for Plaintiffs' constructive fraud claim, which alleges that PHEAA's actions were "fraudulent" and that PHEAA's conduct was "willful, intentional, and outrageous." Compl. ¶¶ 681, 688.  This claim, too, sounds in fraud and is generally subject to Rule 9(b) under

---

[35]     *See Miller Inv. Tr. v. Morgan Stanley & Co., LLC*, 308 F. Supp. 3d 411, 449 (D. Mass. 2018); *Boomer Dev., LLC v. Nat'l Ass'n of Home Builders of the United States*, 258 F. Supp. 3d 1, 20 (D.D.C. 2017); *Ceithaml v. Celebrity Cruises, Inc.*, 207 F. Supp. 3d 1345, 1353 (S.D. Fla. 2017); *Tutwiler v. Sandoz Inc.*, No. 16-cv-01246, 2017 U.S. Dist. LEXIS 122325, at *7 (N.D. Ala. Aug. 3, 2017); *McCullough v. World Wrestling Entm't, Inc.*, 172 F. Supp. 3d 528, 560–61 (D. Conn. 2016); *Timberline Hills Inv'rs, LLC v. Hoviss Dev. Grp., LLC*, No. 15-cv-02170, 2016 U.S. Dist. LEXIS 87940, at *8–9 (D. Or. July 7, 2016); *Errico v. Pac. Capital Bank*, 753 F. Supp. 2d 1034, 1049 (N.D. Cal. 2014); *Asemota v. Suntrust Mortg.*, No. 11-cv-2816, 2012 U.S. Dist. LEXIS 83744, at *30–31 (W.D. Tenn. June 18, 2012); *Joern v. Ocwen Loan Servicing, LLC*, No. 10-cv-0134, 2010 U.S. Dist. LEXIS 92703, at *16 (E.D. Wash. Sep. 2, 2010); *In re Express Scripts, Inc.*, MDL No. 1672, 2007 U.S. Dist. LEXIS 44722, at *45–47 (E.D. Mo. June 20, 2007).

the law of California, District of Columbia, Illinois, Kansas, Maryland, Massachusetts, Missouri, New Jersey, New York, Tennessee, Virginia, and Washington.[36]   Plaintiffs' generalized allegations fail to provide the requisite particularity under Rule 9(b).  The Court should therefore dismiss Plaintiffs' constructive fraud claim insofar as it arises under the law of the aforementioned jurisdictions.

Finally, Plaintiffs allege that PHEAA violated certain consumer protection statutes by, *inter alia*, committing "fraud" or engaging in "fraudulent practices."[37]   California, Connecticut, Florida, Illinois, Kansas, Maryland, Massachusetts, Missouri, New Jersey, and Washington each require Plaintiffs to plead these claims, to the extent they are predicated on an allegation of fraud or negligent misrepresentation, with particularity under Rule 9(b).[38]   Plaintiffs, however, have again failed to allege the necessary details.  Indeed, Plaintiffs do not even identify the allegedly fraudulent practices and procedures.  The Court should therefore dismiss Plaintiffs' consumer protection claims for these ten states.

---

[36]   *See, e.g.*, *Spinnato v. Unity of Omaha Life Ins. Co.*, 322 F. Supp. 3d 377, 403–04 (E.D.N.Y. 2018); *Minn. Life Ins. Co. v. Wilmington Trust Co.*, No. 14-cv-443, 2016 U.S. Dist. LEXIS 27730, at *18–19 (E.D. Tenn. Mar. 4, 2016); *Grenadier v. BWW Law Grp.*, No. 14-cv-827, 2015 U.S. Dist. LEXIS 11418, at *26–27 (E.D. Va. Jan. 30, 2015); *Sacramento E.D.M., Inc. v. Hynes Aviation Indus.*, 965 F. Supp. 2d 1141, 1152 (E.D. Cal. 2013); *3D Global Sols., Inc. v. MVM, Inc.*, 552 F. Supp. 2d 1, 8 (D.D.C. 2008).

[37]   *See, e.g.*, Compl. ¶¶ 762, 776, 807, 825, 841, 858, 873, 888, 903, 956.

[38]   *See Kuhns v. Scottrade, Inc.*, 868 F.3d 711, 719 (8th Cir. 2017) (Missouri); *Camasta v. Jos. A. Bank Clothiers, Inc.*, 761 F.3d 732, 736–37 (7th Cir. 2014) (Illinois); *Spaulding v. Wells Fargo Bank, N.A.*, 714 F.3d 769, 781 (4th Cir. 2013) (Maryland); *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1122 (9th Cir. 2009) (California); *Frederico*, 507 F.3d at 202–03 (New Jersey); *Leon v. Cont'l AG*, 301 F. Supp. 3d 1203, 1226 (S.D. Fla. 2017); *Rick v. Profit Mgmt. Assocs.*, 241 F. Supp. 3d 215, 225 (D. Mass. 2017); *Tatum v. Oberg*, 650 F. Supp. 2d 185, 195 (D. Conn. 2009); *Vernon v. Qwest Communs. Int'l, Inc.*, 643 F. Supp. 2d 1256, 1264–65 (W.D. Wash. 2009); *In re Universal Serv. Fund Tel. Billing Practices Litig.*, 300 F. Supp. 2d 1107, 1150 (D. Kan. 2003).

**CONCLUSION**

For the foregoing reasons, the Court should grant PHEAA's motion to dismiss based on derivative sovereign immunity, preemption, standing, ripeness, failure to state a claim, and failure to plead fraud-based claims with specificity.

DATED:  February 10, 2020

Respectfully submitted,

*/s/ John C. Grugan*
John C. Grugan
Jason A. Leckerman
Thomas F. Burke
Brittany M. Wilson
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant Pennsylvania
Higher Education Assistance Agency*