UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

*IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION*

MDL Docket No. 18-2833 (ALL CASES)

HON. C. DARNELL JONES, II

ORAL ARGUMENT REQUESTED

**PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION
TO PHEAA's MOTION TO DISMISS
<u>THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT</u>**

I.  **PLAINTIFFS' STATE LAW CLAIMS ARE NOT PREEMPTED**

The main preemption arguments PHEAA makes in its motion to dismiss have now been thoroughly refuted by two very recent Court of Appeals decisions, including one precedential decision from the Third Circuit. For example, PHEAA has argued broadly that Plaintiffs' claims for constructive fraud and negligent misrepresentation, as well as several other claims, should be dismissed "whether based on alleged omissions *or* affirmative misrepresentations" because "[Section] 1098g [of the HEA] expressly preempts state-law claims relating to loan servicers' representations to borrowers concerning their federal student loans." PHEAA Mot. at 25–26 (emphasis added); *see also id.* at 28–30 (further arguing that Plaintiffs' misrepresentation-based claims and state law claims are expressly preempted or preempted under other doctrines).

On July 27, 2020, the Third Circuit rejected an identical argument made by another loan servicer, holding that Section 1098g "preempts only state law that imposes disclosure requirements; state law causes of action arising out of affirmative misrepresentations a servicer voluntarily made that did not concern the subject matter of required disclosures impose no disclosure requirements." *Pennsylvania v. Navient Corp.*, 967 F.3d 273, 289 (3d Cir. 2020) (quoting *Lawson-Ross v. Great Lakes Higher Educ. Corp.*, 955 F.3d 908, 917 (11th Cir. 2020); and citing *Nelson v. Great Lakes Educ. Loan Servs., Inc.*, 928 F.3d 639, 647–50 (7th Cir. 2019) for similar proposition that "[Section] 1098g does not expressly preempt state consumer protection laws to the extent they target affirmative misrepresentations rather than failures to disclose required information.").[1]

---

[1] The Third Circuit also recognized that Pennsylvania law appears to treat "intentional material omissions" similarly to affirmative misrepresentations. *Pennsylvania v. Navient Corp.*, 967 F.3d at 292 n.12. The Court left open the question of whether, for example, the Higher Education Act ("HEA") would preempt a claim based on a loan servicer's failure to mention the availability of

Realizing that it will lose on its broad, initial preemption arguments, PHEAA's fallback position is that even after *Navient*, claims predicated on "failures to disclose" or affirmative misrepresentations PHEAA made while performing "mandatory" communications are preempted. PHEAA Reply at 3–4. But PHEAA does not identify any specific claim that must be dismissed on those grounds. While it is true that Plaintiffs included numerous allegations regarding PHEAA's failures to make various disclosures (some required by federal law and some not), none of Plaintiffs' claims rests exclusively on the failure to disclose information mandated by federal law.[2] In addition, Plaintiffs' claims extend beyond disputes over just the content of PHEAA's communications to borrowers, targeting also PHEAA's *actions* in mismanaging loan servicing, including by failing to properly process documents, and putting borrowers into forbearance when PHEAA knew that those actions were not in the borrowers' best interests. *E.g.*, Consolidated Amended Class Action Complaint ("CAC") ¶¶ 671, 680, 686, 708–10, 716(i)–(n), (p), 742, 761; *see also Navient*, 967 F.3d at 290 (finding no HEA preemption of "core allegations" that servicer "steered borrowers into costly forbearances and made misrepresentations to consumers regarding the recertification of their IDR plans.").

The inclusion of additional allegations regarding PHEAA's failure to provide or disclose accurate information does not convert all of Plaintiffs' state law claims into ones solely based on the "failure to disclose" federally-mandated information. Rather, as the Third Circuit held in *Navient*, the loan servicer's failure to disclose accurate information "furthered" the affirmative misrepresentations the servicer did make. *Navient*, 967 F.3d at 290.

---

a "more appropriate IDR plan" for a borrower while simultaneously telling the borrower that forbearance was the borrower's "best option" for resolving loan payment issues. *Id.*

[2] For instance, Plaintiffs' constructive fraud claim alleges affirmative misrepresentations. CAC ¶¶ 676, 679(a) & (b), 680.

## II. PHEAA IS NOT ENTITLED TO DERIVATIVE SOVEREIGN IMMUNITY

PHEAA contends that it is entitled to derivative sovereign immunity because Plaintiffs do not allege that PHEAA failed to resolve deficiencies identified by the U.S. Department of Education's (the "Department") audits "*to the Department's satisfaction.*" PHEAA Reply at 5 (emphasis added); PHEAA Mot. at 21-24. Whether PHEAA resolved any deficiencies "to the Department's satisfaction" is irrelevant where Plaintiffs allege that PHEAA has not resolved the deficiencies at all. If it had, Plaintiffs would not have brought this suit. Several government reports, including a March 2019 Office of Inspector General report, document PHEAA's unchecked deficiencies and the Departments' failure to require PHEAA to remedy those deficiencies. CAC ¶¶ 414, 495, 523, 558, 563-68. A March 2018 study by the Department on the TEACH Grant program documents several ongoing shortcomings that naturally stem from the servicing conduct of PHEAA. CAC ¶¶ 357, 381. The 2019 TEACH Grant Reconsideration Program cannot save PHEAA's argument. The Reconsideration Program does not provide remedial measures at the servicer level. It only purports to provide a remedy for those who have had their Grants improperly converted to loans. Accordingly, PHEAA's underlying servicing deficiencies which led to the improper conversions in the first place still exist and are actionable.

Alternatively, PHEAA asks for limited fact discovery of PHEAA's interactions with the Department on the premise that derivative sovereign immunity is a jurisdictional issue. For reasons discussed in Plaintiffs' Opposition Brief, derivative sovereign immunity is an issue to be reviewed on the merits and factual discovery is not warranted at this stage of the proceedings. Opp. at 30-31.

### III. PLAINTIFFS' STATE LAW CLAIMS ARE SUFFICIENTLY STATED

PHEAA incorrectly argued in its initial briefing on its motion to dismiss that Plaintiffs were required to *identify* in the CAC a particular state's common law under which their claims arise. PHEAA Mot. at 47. PHEAA cited only outlier district court cases for this proposition, which is not supported by any Third Circuit authority and is directly refuted by the leading treatise on federal civil procedure. *See* 5 Wright & Miller, *Federal Practice and Procedure* § 1253 (3d. ed. 2004) ("it is not necessary to plead state law, whether it be the forum state's law or the law of another state.").

Perhaps realizing that no controlling authority gives its initial argument traction, PHEAA now rolls out an "alternative" choice of law argument, arguing for application of the laws of each Plaintiff's home state, rather than Pennsylvania. PHEAA Reply at 7–10. In short order, PHEAA lists factors from three sections of the Restatement (Second) of Conflict of Laws and states in a conclusory fashion that overall, the factors "weigh in favor of Plaintiffs' home state[s]." PHEAA Reply at 8–10. PHEAA's approach is nothing more than the superficial "counting of contacts" Pennsylvania courts have long rejected. *See e.g., Shields v. Consol. Rail Corp.*, 810 F.2d 397, 399–400 (Pa. 1964); *Cipolla v. Shaposka*, 267 A.2d 854, 856 (Pa. 1970) ("[I]t must be remembered that a mere counting of contacts is not what is involved. The weight of a particular state's contacts must be measured on a qualitative rather than quantitative scale."). PHEAA's drive-by analysis—relying on inapplicable authorities[3]—illustrates exactly why the Court should reserve a choice-of-law ruling for a later stage in the action, when facts have been developed in the record and the parties can submit dedicated briefing to the issue.

---

[3] PHEAA also draws primarily from *Maniscalo v. Brother Intern. (USA) Corp.*, 709 F.3d 202 (3d Cir. 2013), which applies *New Jersey's* choice of law rules, not Pennsylvania's.

Plaintiffs' allegations regarding the disparity in bargaining power between them and PHEAA are more than sufficient to establish the plausible existence of a fiduciary duty to support claims for breach of fiduciary duty and constructive fraud. PHEAA argues that Plaintiffs' made only "generalized allegations" that PHEAA gave Plaintiffs advice and that they relied upon it (PHEAA Reply at 11), but as Plaintiffs previously explained, the relationship between them and PHEAA was unique. Plaintiffs did not choose PHEAA in a free market and had no choice but to rely on PHEAA for loan servicing and counseling.[4] PHEAA also wields tremendous power over Plaintiffs' financial affairs, as it alone possesses the ability to further indebt Plaintiffs by, *inter alia*, converting TEACH Grants into interest-bearing loans, putting a borrower's loan into forbearance and thereby capitalizing significant amounts of interest, or incorrectly determining that a borrower is ineligible for loan forgiveness. Opp. at 56–67. PHEAA's argument that these allegations are not sufficient to make a "prima facie" showing of a fiduciary relationship should be rejected.

There is no categorical rule in Pennsylvania exempting loan servicers from a duty to exercise reasonable care towards borrowers. PHEAA attempts to distinguish *Dittman v. UPMC*, 196 A.3d 1036 (Pa. 2018) on the grounds that the defendant there "voluntarily assumed" an atypical responsibility, but *Dittman* merely recognizes that "an actor's affirmative conduct" creates "a duty to others to exercise the care of a reasonable man to protect them against an unreasonable risk of harm to them arising out of the act.'" *Id.* at 1046–47 (citing *Seebold v. Prison Health Servs., Inc.*, 57 A.3d 1232, 1246 (Pa. 2012) (quoting Section 302 cmt. of the Restatement (Second) of Torts)). This simple principle has broad application, as also illustrated in *Sharpe v. St. Luke's Hosp.*, 821 A.2d 1215 (Pa. 2003), where the Pennsylvania Supreme Court

---

[4] The Department assigned PHEAA as Plaintiffs' student loan servicer. CAC ¶¶ 289, 313, 707.

6

held that a hospital that contracted with FedEx to collect urine samples for random drug screenings of FedEx's employees, owed those employees a duty to handle the samples with reasonable care. *Sharpe*, 871 A.2d at 1221. These decisions do not turn on atypical relationships or conduct beyond what might be expected in "a normal business relationship," but rather derive from long-standing fundamental precepts of the common law, such as whether negligence on the part of the actor would lead to foreseeable harm to the plaintiff. *See Dittman*, 196 A.3d at 1046–47; *Sharpe*, 871 A.2d at 1219–21. Here, PHEAA could have foreseen that negligence on its part in servicing Plaintiffs' loans could lead to ruinous financial consequences for the borrowers. Second only to a home mortgage, a student loan is typically the largest piece of debt a borrower will have during their lifetime. *See* CAC ¶ 7. Under *Dittman* and *Sharpe*, Plaintiffs' allegations are sufficient at this stage to establish the existence of a common law duty of reasonable care.

## IV.    CONCLUSION

For the reasons stated above and in Plaintiffs' Opposition to PHEAA's Motion to Dismiss (ECF No. 64), Plaintiffs request that PHEAA's Motion be denied.[5]

---

[5] Alternatively, should the Court grant PHEAA's motion on any count, Plaintiffs' request leave to amend. *See* Opp. at 68-69.

Dated: September 22, 2020

| | |
|---|---|
| **LOWEY DANNENBERG, P.C.** | **CARLSON LYNCH, LLP** |
| */s/ Laura K. Mummert* | */s/ Gary F. Lynch* |
| Laura K. Mummert (PA ID 85964) | Gary F. Lynch (PA ID 56887) |
| Anthony M. Christina (PA ID 322528) | Jamisen A. Etzel (PA ID 311554) |
| William Olson (PA ID 322948) | 1133 Penn Avenue, 5th Floor |
| One Tower Bridge | Pittsburgh, PA 15222 |
| 100 Front Street, Suite 520 | Tel: (412) 322-9243 |
| West Conshohocken, PA 19428 | glynch@carlsonlynch.com |
| Tel: (215) 399-4770 | jetzel@carlsonlynch.com |
| lmummert@lowey.com | |
| achristina@lowey.com | |
| wolson@lowey.com | |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |
| Roland St. Louis, III | Brian C. Gudmundson |
| **LOWEY DANNENBERG, P.C.** | **ZIMMERMAN REED LLP** |
| 44 S. Broadway, Suite 1100 | 1100 IDS Center |
| White Plains, NY 10601 | 80 South 8th Street |
| Tel: (914) 997-0500 | Minneapolis, MN 55402 |
| rstlouis@lowey.com | Tel: (612) 341-0400 |
| | brian.gudmundson@zimmreed.com |
| *Executive Committee Member* | *Executive Committee Member* |
| Bryan L. Bleichner | Troy J. Doucet |
| **CHESTNUT CAMBRONNE PA** | **DOUCET GERLING CO., L.P.A.** |
| 17 Washington Avenue North - Suite 300 | 655 Metro Place South, Suite 600-9 |
| Minneapolis, Minnesota 55401 | Dublin, Ohio 43017 |
| Tel: (612) 339-7300 | Tel: (614) 944-5219 |
| bbleichner@chestnutcambronne.com | Troy@Doucet.Law |
| *Executive Committee Member* | *Executive Committee Member* |
| Karen H. Riebel | |
| **LOCKRIDGE GRINDAL NAUEN PLLP** | |
| 100 Washington Ave. S., Suite 2200 | |
| Minneapolis, MN 55401 | |
| Tel: (612) 339-6900 | |
| khriebel@locklaw.com | |
| *Executive Committee Member* | |

**CERTIFICATE OF SERVICE**

I, Laura K. Mummert, hereby certify that on September 22, 2020, I filed and served through the Court's ECF system a true and correct copy of the foregoing document. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system and notice of these filings will be sent to these parties by operation of this Court's electronic filing system.

*/s/ Laura K. Mummert*
Laura K. Mummert
