UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| *IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION* | MDL Docket No. 18-2833 (ALL CASES)<br><br>HON. C. DARNELL JONES, II<br><br>ORAL ARGUMENT REQUESTED |

**PLAINTIFFS' SUR-REPLY MEMORANDUM IN OPPOSITION
TO THE UNITED STATES' MOTION TO DISMISS
THE CONSOLIDATED AMENDED CLASS ACTION COMPLAINT**

**I.      THIS COURT HAS JURISDICTION OVER PLAINTIFFS' CLAIMS**

      **A.     Sovereign Immunity Does Not Bar the Claims**

The U.S. Department of Education's (the "Department") conclusory argument that the APA's waiver of sovereign immunity does not apply to contractors, even those who are indisputably acting under the duly delegated authority of the agency itself, is a new argument that the Department did not advance in its initial brief. The sole citation the Department provides for this proposition, *Swan v. Clinton*, 100 F.3d 973, 981 n.4 (D.C. Cir. 1996), holds only that the Section 702 waiver does not apply to the President because "the President is not an agency within the meaning of the APA." As Plaintiffs explain in their Opposition Brief and further below, PHEAA's actions fall within the APA's broad definition of "agency" where the Higher Education Act ("HEA") requires the Department to delegate its loan servicing functions to PHEAA but maintain ultimate responsibility for those functions. Opp. at 50–55; *infra* at Section II.A.

The Department's protest of Plaintiffs' invocation of the Little Tucker Act's waiver of sovereign immunity for their breach of contract claims raises only stylistic critiques of the Consolidated Amended Class Action Complaint's ("CAC") allegations. *See* DOE Reply at 3. As Plaintiffs previously noted, failure to specifically identify the Little Tucker Act in the CAC itself does not deprive the Court of jurisdiction when the allegations demonstrate a breach of contract claim against the government for money damages. *See Bautista-Perez v. Holder*, 681 F. Supp. 2d 1083, 1088 (N.D. Cal. 2009) (finding "no reason to mechanistically require amendment" when plaintiffs clearly submitted to jurisdiction under the Little Tucker Act); *see also* Opp. at 20–23 & 20 n. 12. To the extent this Court finds that a specific allegation invoking the Little Tucker Act is required, it is easily curable via amendment and Plaintiffs request leave to amend.

B.      **TEACH and PSLF Plaintiffs Have Standing**

The TEACH Plaintiffs' injury in failing to receive a full refund in lieu of a credit is wholly consistent with the CAC. While the Department is correct that TEACH Plaintiffs seek relief in the form of a "credit or refund," Plaintiffs seek the "choice" of the form of relief, rather than having it hoisted upon them by the Department. Without authority, the Department credited Plaintiffs' *other* federal loans with the amount to be repaid to Plaintiffs. Some borrowers may have a greater financial need for relief in the form of a refund instead of a credit to their other outstanding student loans. For instance, a Plaintiff may need a full refund to address other debt they incurred as a result of the financial difficulty arising from the improper TEACH Grant conversion.

The Department's cited cases for the argument that its "off-set" was proper, concerned the right to off-set amounts owed by a debtor in bankruptcy, or debts currently payable, and are off point. *See e.g. In re County of Orange*, 183 B.R. 609 (Bankr. C.D. Cal. 1995) (creditor Federal National Mortgage Association ("FNMA") attempted during bankruptcy proceedings to off-set notes issued by debtor, Orange County, against notes held by FNMA); *Citizens Bank of Md. v. Strumpf*, 516 U.S. 16 (1995) (creditor Citizens Bank of Maryland sought to off-set a delinquent loan by placing a hold on the debtor's checking account); *Johnson v. All-State Construction, Inc.*, 329 F.3d 848 (Fed. Cir. 2003) (Navy sought to off-set liquidated damages owed as a result of contractor's breach of contract with progress payments owed to the contractor). None of those cases concerned an off-set to a loan in good standing.[1] In fact, *Johnson* recognized that "[t]he set-off right is not an indemnity against a possible future breach

---

[1] The Department's cases also do not deal with a plaintiff's attempt to reclaim money obtained through the government's misconduct and therefore never owed in the first place. It is undisputed that the monies owed to the TEACH Plaintiffs were improperly collected.

3

[of contract], but rather offsets a *current payable debt*." 329 F.3d at 854 (emphasis added). The Department has not shown that the Plaintiffs were in default of their other federal loans, or otherwise that the prerequisites for loan acceleration occurred, to justify an off-set. Nor has the Department cited to any provision in the Master Promissory Notes, the HEA, or other statute to justify an off-set for non-delinquent loans. Accordingly, there were no circumstances, events or conditions that conferred upon the Department the right to offset against the refunds owed to Plaintiffs.

For the reasons stated above, the Department's time-value-of-money redressability argument also fails. Moreover, Plaintiffs' claim for lost time value of their money falls outside the "no-interest" rule if the Department's decision "to refund money without paying interest was arbitrary and capricious or in violation of law" and "the court could overturn the Secretary's decision and remand the case back to the Secretary for further proceedings." *See Adams v. Duncan*, 179 F.Supp.3d 632, 643 (S.D. W. Va. 2016.).[2]

The Department's position that three TEACH Plaintiffs' claims are moot as a result of a "policy decision to afford complete relief on a program-wide basis" (DOE Reply at 4) is not supported by the pleadings or the record currently before the Court. The 2019 Reconsideration Process only provided TEACH Grant recipients a one-time opportunity to request reversal of improper grant-to-loan conversions. CAC ¶ 308. It did nothing to reduce the likelihood of similar improper conversions in the future, and its existence alone does not satisfy the Department's burden to show that it is "absolutely clear" that the alleged mismanagement of the TEACH program "could not be reasonably expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl.*

---

[2] The Department incorrectly claims that the CAC does not include injury in the form of a refund or lost time value of money. *See* CAC ¶¶ 59, 107, 167, 224, 231; CAC at p.232 (Prayer for Relief, ¶ I) .

*Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000); *see also id.* at 190 (noting that a governmental moratorium on a challenged policy will not moot a valid claim for injunctive relief if the moratorium is not permanent) (citing *City of Los Angeles v. Lyons*, 461 U.S. 95, 101) (1983)). The Department's passing reference to *proposed* rulemaking to change aspects of TEACH program administration (DOE Opp. at 7), and its vague mention of a supposedly new "current policy" (DOE Reply at 5) do not satisfy this burden either, as it is not clear exactly which "change" the Department is referring to or how it will reduce or eliminate improper TEACH Grant conversions in the future.

The Department also challenges the redressability of the injury to those PSLF Plaintiffs who were denied the opportunity to make qualifying payments. Even if the Court were to agree with the Department that it cannot provide a remedy under the APA, this Court may nevertheless still award damages for the Department's breach of Plaintiffs' Master Promissory Notes for the additional payments of principal and interest Plaintiffs had to make as a result of the delay in loan forgiveness.

## II.     PLAINTIFFS' APA CLAIMS ARE SUFFICIENTLY ALLEGED

The Department's Reply regurgitates the same "programmatic challenges" argument and continues to ignore allegations of *existing* (not "new") APA claims for the Department's specific failures regarding capitalization of interest, conversion of TEACH Grants to loans, PSLF Employment Certification Form determinations, and denial of PSLF and TEPSLF applications. *See* CAC, *e.g.,* ¶ 591 (alleging the Department "acted arbitrarily and capriciously … with respect to *each*" of 10 separate courses of conduct, including improper conversion of TEACH Grants to Loans); ¶ 599 (alleging the Department "acted arbitrarily and capriciously …with respect to *each*" of 13 separate courses of conduct, including several that involved the improper

capitalization of interest); ¶ 608 (alleging the Department "acted arbitrarily and capriciously … with respect to *each*" of 12 separate courses of conduct, including PSLF ECF determinations and denial of PSLF and TEPSLF applications).

The Department's suggestion that construing PHEAA's conduct as agency action under the APA is inconsistent with Plaintiffs' argument that PHEAA is not entitled to derivative sovereign immunity for Plaintiffs' state law claims ignores the underlying theory of derivative sovereign immunity, *i.e.* that the contractor as agent is acting at the behest of the federal agency. *See In re Hanford Nuclear Reservation Litig.*, 534 F.3d 986, 1001 (9th Cir. 2008) ("The [*Yearsley*] Court limited the applicability of the defense to principal-agent relationships where the agent had no discretion in the design process and completely followed government specifications."). Indeed, the Supreme Court in *Yearsley* – the case on which the doctrine of derivative sovereign immunity is derived – so aptly observed, "[t]he action of the agent ***is 'the act of the government*.**'" *Yearsley, v. W.A. Ross Const. Co.*, 309 U.S. 18, 22 (1940) (emphasis added).

The Department's argument is also inconsistent with how Congress has treated independent contractors for purposes of the broad waiver of sovereign immunity under the APA and the limited waiver of immunity for tort claims under the Federal Tort Claims Act ("FTCA").[3] The FTCA's limited waiver expressly excludes "any contractor with the United States" from its definition of "federal agency." 28 U.S.C § 2671. On the other hand, the APA's definition of "agency" provides eight specific exclusions – none of which includes independent contractors. *See* 5 U.S.C. §§ 551(1) and 701(b)(1). Had Congress intended to exclude

---

[3] The foundation of PHEAA's derivative sovereign immunity argument is that the Department itself is entitled to sovereign immunity from Plaintiffs' state law tort claims where the limited waiver of immunity provided by the FTCA arguably does not apply.

independent contractors as it did for the limited waiver under the FTCA, it would have done so. In fact, the APA broadly defines "agency" as "each authority of the Government of the United States whether or not it is within or subject to review by another agency." *Id*. While the term "authority" is not defined, the statutory and regulatory framework of the HEA requires the Department to delegate to PHEAA its authority to perform loan servicing functions on behalf of the Department but maintain ultimate responsibility for those loan servicing functions. Opp. at 53-54. Courts have relied on this rationale to review the acts of loan servicers and guarantors for purposes of the APA. Opp. at 51-53.

       The Department's attempt to distinguish Plaintiffs' supporting law fails. The Department omits key language from 20 U.S.C. § 3472 that applies to the delegation of functions beyond "officers and employees." *See* 20 U.S.C. § 3472 ("No delegation of functions by the Secretary under this section ***or under any other provision*** of this chapter shall relieve the Secretary of responsibility for the administration of such functions.") (emphasis added). And 34 C.F.R. § 682.203[4] applies equally to both the FFEL Program *and* the Direct Loan Program. *See* 20 U.S.C. § 1087e(a)(1) (Direct Loans "shall have the same terms, conditions, and benefits" as FFELP loans); *see also Chae v. SLM Corp.*, 593 F.3d 936, 945 (9th Cir. 2010) ("In the rules governing the Direct Loan Program, Congress created a policy of inter-program uniformity by requiring that 'loans made to borrowers [under the Direct loan Program] shall have the same terms, conditions, and benefits, … as loans made to borrowers under [the FFELP].' 20 U.S.C. § 1087e(a)(1). Congress's instructions to the DOE on how to implement the student-loan statutes carry this unmistakable command: Establish a set of rules that will apply across the board.").

---

[4] The Department appears to inadvertently cite 34 C.F.R. § 682.204 (Maximum Loan Amounts), instead of 34 C.F.R. § 682.203 (Responsible Parties).

In *Salazar v. King*, the plaintiffs sought review of agency action that was carried out, in part, by the guaranty agencies who failed to temporarily suspend collection actions and provide notice of their eligibility for discharge. 822 F.3d 61, 66. In *ABA v. DOE*, 370 F. Supp. 3d 1 (D.D.C. 2019), the fact that PHEAA/FedLoan may have been acting "at the direction of" the Department makes no difference. All of PHEAA's loan servicing functions, including ECF determinations, are based in some way on the guidance and instruction provided by the Department through its servicing contract, contract updates, and emails. *See* September 2018 GAO 18-547, at 2; CAC at n.32. And the dismissal of the plaintiff's APA claims in *Shabtai v. DOE* was based on the fact that the Secretary – *acting through the guaranty agency* to collect outstanding loans pursuant to the Treasury's Offset Program – did not act outside his authority. 2003 WL 21983025, at *7 (S.D.N.Y. Aug. 20, 2003).

### III. PLAINTIFFS STATE PLAUSIBLE DUE PROCESS CLAIMS

The Department ignores the way the TEACH Grant Program actually works and construes a single allegation in the CAC (¶ 616) as if it were an admission that Plaintiffs have no protectable interest in their grants until their four years of service are complete. DOE Reply at 11.[5] But recipients receive their TEACH Grants *upfront*, during their postsecondary education. After completing their coursework, they *keep* their TEACH Grant so long as they fulfill the service obligation within eight years. Opp. at 57. The Department may take the TEACH Grant from the recipient, *i.e.* through conversion to a loan, *only* in limited statutorily prescribed situations. The Department's suggestion that Plaintiffs are not "statutorily eligible" until they complete the service obligation makes no sense—recipients are "in" the program from the

---

[5] To the extent the viability of Plaintiffs' due process claim hinges on the exact wording of ¶ 616, Plaintiffs submit that they should be granted leave to amend.

8

beginning and have already received the main benefit (the TEACH Grant). Nothing significant occurs after a recipient completes their service obligation except a one-page acknowledgment from PHEAA and the Department that the recipient has fulfilled her service obligation. *See, e.g.*, Bulman Decl. at Ex. A-4 (ECF No. 61-3 at 5). A TEACH Grant recipient whose grant is improperly converted into a loan after one year of qualified teaching is in the same position— and has suffered the exact same deprivation—as a recipient whose TEACH Grant is improperly converted after four years of qualified teaching. The only difference between them is that the recipient who completes four years of qualified teaching does not need to submit any further certifications.

As to the PSLF Plaintiffs, courts have recognized constitutionally protected interests in accumulated credits, or time, that must be earned to a certain threshold before being redeemed to obtain an ultimate, governmentally-promised benefit at a point in the future (such as early prison release, or retirement with a pension). *See, e.g.*, *Wolff v. McDonnell*, 418 U.S. 539, 557 (1974) (holding that when a state grants prisoners a right to accumulate credits for good behavior, the right to keep earned credits may not be arbitrarily abrogated); *Montgomery v. Anderson*, 262 F.3d 641, 644–45 (7th Cir. 2001); *McGrath v. Rhode Island Retirement Bd.*, 906 F. Supp. 749, 768 (D.R.I. 1995). Similarly, the qualifying payments made by PSLF Plaintiffs are valuable interests that are constitutionally protected from arbitrary elimination and discounting, regardless of whether a given participant in the program has accumulated 120 qualifying payments to apply for the ultimate benefit of loan forgiveness. *See also* Opp. 60–61 ("To arbitrarily deny PSLF Plaintiffs of their eligible payments represents that type of "grievous loss" of benefits that triggers Fifth Amendment protection.").

The Department's assertion that the PSLF Plaintiffs have no due process claim until they first make 120 qualifying payments and become "eligible" to apply for forgiveness is circular. DOE Reply at 12 (arguing that Plaintiffs cannot challenge adequacy of process until they apply for forgiveness). The Department cannot insulate itself from review of a challenged practice by pointing to a "vesting" or "eligibility" impediment that is created by the agency's challenged practice itself. The Department and PHEAA's failure to credit PSLF Plaintiffs with qualifying payments towards loan forgiveness is one of Plaintiffs' primary allegations of misconduct. *E.g.*, CAC ¶¶ 25, 46, 66, 70, 85, 89, 131, 149. If Plaintiffs are not properly being credited for qualifying payments, they may never be able to accrue the 120 payments needed to apply for forgiveness—or to be "eligible," in the Department's view—to bring a due process claim. And as Plaintiffs previously mentioned, the only other "processes" the Department claims are available to challenge qualifying payment counts do not appear to be empowered with any formal authority (Opp. at 66–67), and the Department makes no effort to show otherwise.

## IV. PLAINTIFFS STATE PLAUSIBLE CLAIMS FOR BREACH OF CONTRACT

The Department continues to rely on hyper-technical deficiencies to justify wholesale, life-altering breaches on the Department's part. For instance, the Department completely ignores Plaintiff Stevens' allegation that he taught full-time in a high-need field at a school serving low-income students (CAC ¶ 202), satisfying the substantive requirement of the TEACH program. His 2016 certification was denied because Stevens' "certifying official" made an obvious, technical error by listing an incorrect date. CAC ¶ 205. Stevens *resubmitted* a corrected certification, *id.*, but nevertheless PHEAA and the Department converted the grant to a loan, and then *garnished his wages*. CAC ¶ 211. The Department's conclusory denial that Stevens was in "substantial compliance" is not enough to defeat his claim at the Rule 12 stage.

Finally, with respect to the IDR Plaintiffs' breach of contract claim, the Department's observation that the HEA itself does not provide a cause of action is irrelevant. DOE Reply at 14. Contrary to the Department's suggestion, the Master Promissory Notes ("MPNs") *expressly* incorporate the HEA and its regulations repeatedly, throughout the terms. CAC, Ex. E at 3, 7-8 (FFEL) and Ex. F at 7-8, 10-13 (Direct Loan) (the MPNs refer to the HEA and its implementing collectively as the "Act."). The MPNs go as far as to specifically notify the borrowers that amendments to the Act that affect the terms of the MPNs are also deemed incorporated into the terms of the MPNs. *See* CAC, Ex E. at 3; Ex. F at 5, 10.

## V.   CONCLUSION

For the reasons stated above and in Plaintiffs' Opposition to the Department's Motion to Dismiss (ECF No. 65), Plaintiffs request that the Department's Motion be denied.[6]

Dated: September 22, 2020

| **LOWEY DANNENBERG, P.C.** | **CARLSON LYNCH, LLP** |
|---|---|
| */s/ Laura K. Mummert* | */s/ Gary F. Lynch* |
| Laura K. Mummert (PA ID 85964) | Gary F. Lynch (PA ID 56887) |
| Anthony M. Christina (PA ID 322528) | Jamisen A. Etzel (PA ID 311554) |
| William Olson (PA ID 322948) | 1133 Penn Avenue, 5th Floor |
| One Tower Bridge | Pittsburgh, PA 15222 |
| 100 Front Street, Suite 520 | Tel: (412) 322-9243 |
| West Conshohocken, PA 19428 | glynch@carlsonlynch.com |
| Tel: (215) 399-4770 | jetzel@carlsonlynch.com |
| lmummert@lowey.com | |
| achristina@lowey.com | |
| wolson@lowey.com | |
| *Co-Lead Counsel for Plaintiffs* | *Co-Lead Counsel for Plaintiffs* |

---

[6] Alternatively, should the Court grant the Department's motion on any count, Plaintiffs' request leave to amend. *See also* Opp. at 73.

Roland St. Louis, III
**LOWEY DANNENBERG, P.C.**
44 S. Broadway, Suite 1100
White Plains, NY 10601
Tel: (914) 997-0500
rstlouis@lowey.com

*Executive Committee Member*

Bryan L. Bleichner
**CHESTNUT CAMBRONNE PA**
17 Washington Avenue North - Suite 300
Minneapolis, Minnesota 55401
Tel: (612) 339-7300
bbleichner@chestnutcambronne.com

*Executive Committee Member*

Karen H. Riebel
**LOCKRIDGE GRINDAL NAUEN PLLP**
100 Washington Ave. S., Suite 2200
Minneapolis, MN 55401
Tel: (612) 339-6900
khriebel@locklaw.com

*Executive Committee Member*

Brian C. Gudmundson
**ZIMMERMAN REED LLP**
1100 IDS Center
80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
brian.gudmundson@zimmreed.com

*Executive Committee Member*

Troy J. Doucet
**DOUCET GERLING CO., L.P.A.**
655 Metro Place South, Suite 600-9
Dublin, Ohio 43017
Tel: (614) 944-5219
Troy@Doucet.Law

*Executive Committee Member*

**CERTIFICATE OF SERVICE**

    I, Laura K. Mummert, hereby certify that on September 22, 2020, I filed and served through the Court's ECF system a true and correct copy of the foregoing document. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system and notice of these filings will be sent to these parties by operation of this Court's electronic filing system.

                                                    */s/ Laura K. Mummert*
                                                    Laura K. Mummert