**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION | MDL Docket No. 18-2833 |
| | ORAL ARGUMENT REQUESTED |
| ALL CASES | HON. C. DARNELL JONES, II |

**PLAINTIFFS' RESPONSE TO**
**DEFENDANTS' SUGGESTIONS OF MOOTNESS**

Defendants'[1] Suggestions of Mootness (ECF Nos. 80, 81) do not set forth any factual developments that have materially altered the justiciability of certain of Plaintiffs' claims since the parties completed briefing on Defendants' motions to dismiss (ECF Nos. 61-1, 55-2) in September 2020. As previously explained in Plaintiffs' response to the Department's motion and sur-reply brief (ECF No. 65 at 28-32; ECF No. 77 at 4-5), their claims were not moot then, and they are not moot now.

To show mootness, Defendants must meet the "heavy burden" of proving that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *Parents Involved in Community Schools v. Seattle School Dist. No. 1*, 551 U. S. 701, 719 (2007). Defendants fall far short of meeting that "heavy burden."

---

[1] Defendants United States Department of Education and Secretary of Education Miguel Cardona (collectively, "Federal Defendants" or "the Department"), and Defendant Pennsylvania Higher Education Assistance Agency, d/b/a FedLoan Servicing ("PHEAA").

## I.    TEACH Grant Plaintiffs

The October 2021 Consider Teachers Act of 2021, Pub. L. 117-49 (the "Act"), which amended statutory provisions related to the TEACH grant program, including the Higher Education Act of 1965, neither addresses nor prevents the crux of the Plaintiffs' Consolidated Amended Complaint ("CAC") as it relates to the TEACH Grant Plaintiffs—the wrongful conversion of TEACH grants into loans *in the first instance*. The Act simply provides for a discretionary *reconsideration process* similar to one that has already been in place in 2019 (the "2019 Reconsideration Process") and has been largely inadequate. *See, e.g.,* CAC, ECF No. 49 at ¶¶ 509-13 (describing PHEAA's faulty implementation of the 2019 Reconsideration Process); ECF No. 65 at 30 (explaining that the 2019 Reconsideration Process cannot moot the claims because it does not address the specific flaws leading to improper grant-to-loan conversions "in the first place."). The Department itself concedes that this statutorily codified reconsideration process is "similar" to the 2019 Reconsideration Process (ECF No. 80 at 2), and it too is merely a *post-hoc*, quasi-appeal process that does nothing to reduce the likelihood of improper conversions in the first instance.

In suggesting mootness, Defendants rely heavily on the fact that named Plaintiffs were able to successfully navigate a reconsideration process to fix Defendants' own initial errors, and that these Plaintiffs have now completed their teaching service obligations. While it is true that these *specific* individuals are unlikely to face another improper conversion in the future, there is still a justiciable controversy under the well-established transitory exception to the mootness doctrine. "[A] case will not be moot, even if the controversy as to the named plaintiffs has been resolved, if: (1) it is uncertain that a claim will remain live for any individual who could be named as a plaintiff long enough for a court to certify the class; and (2) there will be a constant class of persons

suffering the deprivation complained of in the complaint." *Salazar v. King*, 822 F.3d 61, 73 (2d Cir. 2016) (citations and internal quotation marks omitted); *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980) ("Some claims are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires."); *Richardson v. Bledsoe*, 829 F.3d 273, 279 (3d Cir. 2016) (recognizing the transitory exception to the mootness doctrine).

These criteria are clearly met by the TEACH Plaintiffs' claims. As to the first prong, the litigation has been pending for more than four years—long enough for the named Plaintiffs to have completed their TEACH grant requirements and request the restoration of their grants through the Reconsideration Process. For the second prong, Plaintiffs allege that thousands of grants are improperly converted to loans every year. CAC ¶ 355. But Defendants fail to show that the rate of improper conversions has significantly been reduced.

Defendants make no effort to rebut the applicability of the exception to the mootness doctrine. The Department merely argues that Plaintiffs received relief because "they availed themselves of government policy initiatives." ECF No. 80 at 3. This is the exact argument rejected by the court in *Salazar*. 822 F.3d at 74–75. In *Salazar*, the Department argued that plaintiffs' claims became moot after plaintiffs took affirmative steps to have their loans discharged. *Id*. The Court held that the "'inherently transitory' exception is not so limited… [it] does not require a plaintiff to forgo remedies to which she is entitled in order to seek broader remedies for the DOE's alleged derelictions." *Id*. The *Salazar* court further explained that the Department's position would require the Court to turn a blind eye and allow Defendants to continue engaging in the misconduct because they can simply "wait for the victims to discover remedies on their own" to invoke the

mootness doctrine and avoid judicial review. *See id.* at 75. "That is precisely the sort of situation the inherently transitory exception is designed to correct." *Id.*

The instant case is the paradigmatic illustration of a case capable of repetition yet evading review. Defendants make no showing that their Reconsideration Process and other statutory amendments have in fact remediated the conduct of the Department and its loan servicers to effectively reduce the number of improper conversions of TEACH grants into loans and make "absolutely clear" that improper conversions "could not reasonably be expected to recur." *Parents Involved*, 551 U. S. at 719. Defendants have failed to meet their heavy burden of proving that the TEACH Plaintiffs' claims are moot.

## II.     The PSLF Plaintiffs

Defendants' arguments for mootness against the Public Service Loan Forgiveness ("PSLF") Plaintiffs are flawed for similar reasons. In early October 2021, the Department conceded that the government's promise to provide debt relief through the PSLF program has been "largely unmet," and made another promise to take steps to "restore the promise of PSLF".[2]  In its October announcement, the Department discussed vague plans to, *inter alia*: (i) implement a "Limited PSLF Waiver" to count prior payments towards PSLF forgiveness; (ii) improve outreach and communication with PSLF-eligible borrowers; (iii) review denied PSLF applications; and (iv) make long-term improvements to PSLF through rulemaking. *Id.*; *see also* ECF No. 80 at 4.[3]

---

[2] *See* https://www.ed.gov/news/press-releases/fact-sheet-public-service-loan-forgiveness-pslf-program-overhaul (last accessed on June 30, 2022).

[3] Notably, this is the Department's *second attempt* at remediating deficiencies in the PSLF Program. The first, being the Temporary Expanded Public Service Loan Forgiveness ("TEPSLF") Program created in 2018, wherein borrowers who made some or all of their payments under a nonqualifying repayment plan may receive loan forgiveness. CAC ¶ 295. According to a review by the U.S. GAO, 99% of applications under TEPSLF were rejected. CAC ¶ 296. The Department's track record at "fixing" the shortcomings of Defendants is not a strong indication of the success of its current promises.

Besides the Limited PSLF Waiver, which has its own inherent flaws, the Department has not taken sufficient concrete action to implement corrections to the PSLF deficiencies alleged by Plaintiffs and guarantee that what happened to the PSLF Plaintiffs cannot reasonably be expected to recur. For example, nothing in the Department's announcement addresses improvements to the National Student Loan Data System or the data systems used by loan servicers to ensure that borrowers' PSLF qualifying payments are accurately tracked and counted, particularly when borrowers' loans are transferred between servicers. *See* CAC ¶¶ 527-543.  The Department states generally, "it will complete a review of … PSLF processing practices to identify and address errors." *Id*. Despite numerous governmental reports and investigations that have already done just that, in addition to the Department's own admissions, (CAC ¶¶ 532-535), the Department *still* has yet to provide a specific plan to address the deficiencies alleged in Plaintiffs' Complaint. Nor does the announcement address how it will correct loan servicer deficiencies and improve loan servicer performance.  The announcement does nothing more than provide more unfulfilled promises that the Department may fix some of the deficiencies that give rise to Plaintiffs' claims at some time in the future. Such a vague and undefined promise to do better in the future, unaccompanied by concrete action, is not enough to moot a claim. *See W.T. Grant*, 345 U.S. at 632 n. 5, 73 S.Ct. 894 ("It is the duty of the courts to beware of efforts to defeat injunctive relief by protestations of repentance and reform").

As to the Limited PSLF Waiver, it is limited only to PSLF borrowers who submit a form on or before October 31, 2022, to have certain previously ineligible payments count towards forgiveness. In other words, although the relief provided is permanent for those who learn about the remedy and timely apply for the waiver, the availability of that remedy is temporary and

unavailable to future PSLF borrowers. So even if it was an adequate remedy (which it is not), it is not permanent, and does not prevent the type of future harm this waiver intends to alleviate.

The Limited PSLF Waiver and vague notions of improving "outreach and communication" and "simplify[ing]" the application process[4] also do *nothing* to sufficiently address many of the other underlying issues alleged in Plaintiffs' Complaint, including borrowers being misled or inadequately advised by loan servicers regarding PSLF access and qualifications, and improperly steered or kept in non-qualifying plans, which delays or altogether eliminates their ability to obtain loan forgiveness.

Without long-term permanent solutions —such as amended regulations through the formal rulemaking process— to eliminate the underlying harm, there will continue to be a "constant class of persons suffering the deprivation complained of in the complaint." *Salazar*, 822 F.3d at 73, 75 (citations and internal quotation marks omitted). One half-hearted public statement by the Department partially acknowledging its failures and pledging to make improvements does not make absolutely clear that widespread improper PSLF servicing "could not reasonably be expected to recur." *Parents Involved*, 551 U. S. at 719. *See, e.g., Sheely*, 505 F.3d 1173, 1187 (11th Cir. 2007) ("a defendant's failure to acknowledge wrongdoing similarly suggests that cessation is motivated merely by a desire to avoid liability, and furthermore ensures that a live dispute between the parties remains."); *Jager*, 862 F.2d at 833–34 (in non-moot case, defendants "never promised not to resume the prior practice").

---

[4] *See* https://www.ed.gov/news/press-releases/fact-sheet-public-service-loan-forgiveness-pslf-program-overhaul (last accessed on June 30, 2022).

The Department's attempt to avoid the voluntary cessation exception[5] by characterizing the Limited PSLF Waiver as a "government policy initiative grounded in the HEROES Act, not a strategic response to this litigation" (ECF No. 80, at 6) ignores key considerations. First, it ignores its own statement that the actions promised in its October 2021 announcement, including the Limited PSLF Waiver, are to "restore the promise of PSLF"[6] rather than the temporary economic relief from the effect of COVID-19, which lies at the core of the HEROES ACT. However, as discussed above, the Limited PSLF Waiver serves as a mere band-aid to the underlying deficiencies alleged in Plaintiffs' Complaint and does not provide a long-term resolution.

Second, "the touchstone of the voluntary-cessation doctrine is not how willingly the defendant changed course. Rather, the focus is on whether the defendant made that change unilaterally and so 'may return to [its] old ways' later on." *Hartnett v. Pennsylvania State Education Association*, 963 F.3d 301, 306 (3d Cir. 2020) (quoting *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 189 (2000)). The PSLF Limited Waiver is not mandated by Congress under the HEROES Act, which provides only that the Secretary "*may* waive or modify any statutory or regulatory provision applicable to the student financial assistance programs under title IV of the Act as the Secretary deems necessary in connection with a … national emergency." 20 U.S.C.A. § 1098bb(a)(1) (emphasis added). Accordingly, the Limited PSLF Waiver and any actions the Department may take after the waiver expires *are voluntary in nature*. That the Department merely has the authority under the HEROES Act to implement the

---

[5] "It is well settled that a defendant's voluntary cessation of a challenged practice does not deprive a federal court of its power to determine the legality of the practice." *Friends of Earth, Inc. v. Laidlaw Environmental Services (TOC), Inc.,* 528 U.S. 167, 189, 120 S.Ct. 693, 145 L.Ed.2d 610 (2000) (internal quotations and citations omitted).

[6] *See* https://www.ed.gov/news/press-releases/fact-sheet-public-service-loan-forgiveness-pslf-program-overhaul ("Today, the Department of Education is announcing a set of actions that, over the coming months, will restore the promise of PSLF.").

Limited PSLF Waiver is of no import. The Department is "free to return to [its] old ways" once the waiver expires. *City of Mesquite v. Aladdin's Castle, Inc*., 455 U.S. 283, 289 n.10 (1982) (citing *United States v. W.T. Grant Co*., 345 U.S. 629, 632 (1953)).

Finally, the Department's announcement comes 3-5 years after Plaintiffs filed the actions that make up this MDL (as well as after many other individual and government actions).[7] To claim the Department's promises to remedy the PSLF deficiencies are simply a government policy initiative that is independent of and unprompted by this litigation on behalf of the millions of borrowers affected by its decisions strains credulity.

The Department has not shown that it has taken any concrete, specific steps to permanently resolve the deficiencies identified in Plaintiffs' Complaint. As with the TEACH Plaintiffs, even if the one-time limited waiver process affords the named Plaintiffs a way to remedy their problems without litigation, it does nothing to cure the underlying and recurring conduct that this case is really about. Until the Department accomplishes that, there is still a live controversy for this Court to decide.

### III.   The IDR Plaintiffs

Finally, and for the first time, Defendants raise "mootness concerns" regarding the IDR Plaintiffs. Pursuant to an April 2022 announcement, the Department is purportedly "conducting a review of accounts," to identify "certain periods of forbearance deemed to be excessive," and "taking other steps," to address servicers' inappropriate steering of borrowers into forbearance.

---

[7] *E.g.*, *Gallagher v. Pennsylvania Higher Education Assistance Agency*, No. 1:17-cv-02416-JEJ (M.D. Pa.) (filed Dec. 29, 2017); *Clancy v. Pennsylvania Higher Education Assistance Agency*, No. 18-cv-00753 (E.D. Pa.) (filed Feb. 21, 2018); *Hawkins v. Pennsylvania Higher Education Assistance Agency*, No. 18-cv-00490 (M.D. Pa.) (filed February 28, 2018); *Commonwealth of Massachusetts vs. Pennsylvania Higher Education Assistance Agency*, No. 1784-cv-02682 (Mass. Sup. Ct.) (filed August 23, 2018); *People of the State of New York v. Pennsylvania Higher Education Assistance Agency*, No. 1:19-cv-09155-ER (S.D.N.Y.) (filed Oct. 3, 2019); *Weingarten v. U.S. Dep't of Ed.*, No. 19-cv-02056 (D.D.C.) (filed July 11, 2019).

ECF No. 80 at 7–8. The Department "expects" that these processes will lead to additional borrowers receiving forgiveness or additional credits towards forgiveness. *Id.* at 8. But by the Department's own admission, it does not yet know how any of these promised future actions affect any IDR Plaintiff, and it concedes the "effects of these changes are not expected to become apparent in borrower accounts until later this year." *Id.* In short, the Department acknowledges that these future actions, which may or may not impact the IDR Plaintiffs' claims, have not actually occurred. A defendant's argument that an allegedly ongoing process *might* "give rise to additional mootness concerns in the future" (*id.*) is a facially inadequate basis for the Court to make the required finding, which is that: "'(1) the alleged violation has ceased, and there is no reasonable expectation that it will recur, and (2) interim relief or events have completely and irrevocably eradicated the effects of the alleged violation.'" *Urbanic v. Borough of W. Chester*, No. 20-cv-5588, 2021 WL 5828012, at *1 n.1 (E.D. Pa. Aug. 4, 2021) (quoting *N.J. Tpk. Auth. v. Jersey Cent. Power & Light*, 772 F.2d 25, 31 (3d Cir. 1985)). Defendants come nowhere near meeting that burden.

Furthermore, the April 2022 announcement fails to address many of Plaintiffs' "non-steering" IDR claims, including Defendants' misrepresentation of the financial consequences for changing from an IDR plan to another plan (CAC ¶¶ 459-468), failure to properly notify borrowers of their IDR recertification deadline (CAC ¶¶ 452-458), failure to properly process borrowers' applications for IDR enrollment, (CAC ¶¶ 419-433), failure to properly process borrowers' annual recertification paperwork (CAC ¶¶ 434-442 and ¶¶ 443-451). The Department's most recent announcement is far from resolving the specific IDR deficiencies alleged in Plaintiffs' Complaint.

## **CONCLUSION**

Nothing in Defendants' Suggestions of Mootness—or their motions to dismiss—conclusively demonstrates that the specific deficiencies leading to this litigation have been permanently resolved. If anything, Plaintiffs' ongoing litigation with Defendants has been a catalyst, spurring Defendants' recent but inadequate policy changes. With every new semester comes a new generation of student loan borrowers, and with every passing month comes the virtually certain repetition of the same loan servicing errors and omissions described in Plaintiffs' Complaint. Until Defendants can show that there is no likelihood borrowers under these programs will experience the same harms as the Plaintiffs, over and over again, a live controversy remains for this Court to adjudicate.

Because Defendants have not met their burden of showing that it is "absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur," *Laidlaw,* 528 U.S. at 189, 120 S.Ct. 693 (internal quotation marks omitted), Plaintiffs' claims are not moot, and the Court should deny Defendants' motions to dismiss.

Dated: July 6, 2022

Respectfully submitted,

*/s/ Laura K. Mummert*
Laura K. Mummert
Anthony M. Christina
William Olson
**LOWEY DANNENBERG, P.C.**
100 Front Street, Suite 520
W. Conshohocken, PA 19428
Tel: (215) 399-4785
Fax: (914) 997-0035
Email: lmummert@lowey.com
       achristina@lowey.com
       wolson@lowey.com

*Co-Lead Counsel for Plaintiffs*

*/s/ Gary F. Lynch*
Gary F. Lynch
Jamisen Etzel
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Tel: (412) 322-9243
Fax: (412) 231-0246
Email: gary@lcllp.com
       jamisen@lcllp.com

*Co-Lead Counsel for Plaintiffs*

**CERTIFICATE OF SERVICE**

I, Laura K. Mummert, hereby certify that on July 6, 2022, I filed and served through the Court's ECF system a true and correct copy of the foregoing document. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system and notice of these filings will be sent to these parties by operation of this Court's electronic filing system.

*/s/ Laura K. Mummert*
Laura K. Mummert