# IN THE UNITED STATES DISTRICT COURT
# FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION | Case No. 18-md-02833<br><br>HON. NITZA I. QUIÑONES ALEJANDRO |

## JOINT STATUS REPORT

In accordance with this Court's December 23, 2022 Order (ECF No. 85), Plaintiffs and Defendants, the U.S. Department of Education and the Secretary of Education, and the Pennsylvania Higher Education Assistance Agency hereby submit this Joint Status Report summarizing the Parties' respective claims and defenses, and the status of outstanding motions.

## I.   PLAINTIFFS' REPORT

### A.  PLAINTIFFS' CLAIMS

The underlying actions to this MDL were commenced as early as May 2017 and were subsequently transferred and consolidated by the JPML for pre-trial proceedings to this Court in June 2018 (ECF No. 1).  Plaintiffs' November 12, 2019 Consolidated Amended Class Action Complaint ("Complaint")[1] (ECF No. 49) alleges that Defendants the U.S. Department of Education (the "Department"), Secretary Miguel Cardona, sued in his official capacity as Secretary of the U.S. Department of Education,[2] and the Pennsylvania Higher Education Assistance Agency d/b/a FedLoan Servicing ("FedLoan") ("PHEAA"), one of the Department's then-largest student loan servicers, violated certain statutes and regulations governing the following three (3) federal student loan programs and repayment plans under the Higher Education Act of 1965, 20 U.S.C. § 1001, *et seq.* ("HEA"), to the financial detriment of Plaintiffs and many other borrowers: (1) the Income

---

[1] Use of "¶ _" refers to the relevant paragraphs of the Complaint.

[2] Secretary Cardona is automatically substituted for former Secretary of Education Elizabeth DeVos as Defendant under Fed. R. Civ. P. 25(d).

Driven Repayment ("IDR") Plans, (2) the Public Service Loan Forgiveness ("PSLF") Program; and (3) the TEACH Grant Program.

### 1. IDR Plans

IDR Plans provide for a monthly loan payment amount based on the borrower's income and family size. They also provide for loan forgiveness after 20 or 25 years, among other benefits. Borrowers must annually submit documentation to certify their income level and family size after Defendants provide the required statutory notice and deadline for recertification. (¶¶ 268-70).[3] Once submitted, Defendants must promptly determine the new payment. (¶ 277). If a borrower changes repayment plans, even from one IDR Plan to another IDR Plan, any accrued interest is capitalized. (¶ 278).

Defendants failed to comply with various statutes and regulations in processing requests for IDR Plans in several ways. (¶¶ 419-433). First, Defendants failed to timely and properly process new requests for enrollment into an IDR Plan resulting in the improper placement of loans into forbearance where interest was capitalized. (¶¶ 423-24). Second, Defendants failed to provide the statutorily required notice of the annual recertification obligation and deadlines. (¶¶ 441-442). Third, Defendants failed to timely and properly process annual requests for the recalculation of a borrower's IDR payment, including failure to provide sufficient time to correct any deficiencies. (¶¶ 467-68). In doing so, Defendants recalculated borrowers' payment amounts at the much higher Standard Repayment Plan, steered borrowers into forbearance when they could not afford that amount, and capitalized interest for "changing" repayment plans. Fourth, Defendants failed to apply certain regulatory exceptions for borrowers who submit their annual recertification after the deadline. (¶¶ 446-48) Fifth, Defendants "recommend" to borrowers in the recertification process

---

[3] The Complaint cites throughout Plaintiffs' section of the Joint Status Report are for exemplary purposes only, in order to show certain examples of Defendants' misconduct.

that borrowers choose the IDR Plan with the "lowest monthly payment." (¶¶ 460, 465-66). What Defendants do not disclose is that choosing the IDR Plan with the "lowest monthly payment" could result in a change of repayment plan and the capitalization of accrued interest. (¶ 460). Finally, Defendants misrepresented the availability of IDR repayment options to distressed borrowers struggling to repay their student loans on the Standard Repayment Plan. Instead, Defendants steered borrowers into forbearance and capitalized accrued interest. (¶¶ 14, 417).

Defendants' failures to comply with the relevant statutes and regulations have been financially detrimental to borrowers, including Plaintiffs, many of whom now "owe" more money to the Department on their federal student loans than when they graduated. Furthermore, because payments while in forbearance do not count toward loan forgiveness, these failures have further caused a delay in borrowers' ultimate progress toward loan forgiveness. (¶ 270).

### 2. PSLF Program

The PSLF Program provides loan forgiveness to borrowers who work full-time in public service careers (*e.g.*, teachers, police officers, fire fighters, public health workers, and non-profit workers) and make qualifying payments on a qualifying repayment plan. (¶ 285). To track one's progress, a borrower is encouraged to submit an Employment Certification Form ("ECF") to determine the number of qualifying payments made toward forgiveness. (¶ 290). Defendants, however, routinely failed to advise Plaintiffs and other borrowers that they do not hold eligible loans and/or are not on an eligible repayment plan and miscalculated the number of qualifying payments toward loan forgiveness—thus delaying or denying Plaintiffs and other borrowers from obtaining PSLF loan forgiveness. (¶ 20).

In October 2021, four years after Plaintiffs initiated there actions, the Department admitted that the goal of the PSLF Program has been "largely unmet"[4] and implemented a "Limited PSLF

---

[4] *See* https://www.ed.gov/news/press-releases/fact-sheet-public-service-loan-forgiveness-pslf-

Waiver" as part of the federal COVID-19 emergency relief. The Limited PSLF Waiver provided borrowers with the opportunity to request credit for past payments that otherwise would not qualify under the PSLF Program. This Limited PSLF Waiver, however, ended on October 31, 2022. The PSLF Program has now resumed as it did before, and the Defendants' deficiencies remain unresolved. Current and future participants in the PSLF Program thus continue to be at risk of miscalculated qualifying payments and delays and denials in their loan forgiveness.

### 3. TEACH Grant Program

The TEACH Grant Program provides grants up to $4,000 each year for students who agree to teach in a high-need subject area (*e.g.*, special education, mathematics, and science) in a school that serves low-income families for four years within eight years of graduation. (¶ 299). Recipients must annually certify their intention to satisfy the requirements of the Program by submitting an annual "TEACH Grant Certification" (the "Certification"). (¶ 372). Defendants routinely and improperly converted Plaintiffs' TEACH Grants into loans after failing to provide Plaintiffs with the required notice and deadline for submitting the Certification, failing to provide them the required amount of time to submit the Certification, and for technical mistakes on the Certification (*e.g.*, missing signature and typos in the dates of employment). (¶¶ 380-82).

In January 2019, after Plaintiffs had initiated this MDL, the Department implemented a discretionary and highly criticized "TEACH Grant Reconsideration Process" wherein TEACH Grant recipients aware of the process could request reconversion of their loans back into TEACH Grants. However, like the Department's PSLF Limited Waiver, the TEACH Grant Reconsideration Process does not resolve Defendants' underlying deficiencies and current and future TEACH Grant recipients continue to be at risk of improper conversions of their grants to loans.

---

program-overhaul (last accessed on June 30, 2022).

### 4. Claims Against PHEAA

Plaintiffs bring several causes of action against PHEAA for its violations of state consumer protection statutes, breach of the "Servicing Contract" between PHEAA and the Department as third-party beneficiaries, and for claims at common law including breach of fiduciary duty, constructive fraud, unjust enrichment, negligence, negligence *per se*, and negligent misrepresentation. (¶¶ 641-964).

### 5. Claims Against the Department and the Secretary of Education

The HEA authorizes the Secretary to contractually delegate the Department's loan servicing functions to PHEAA (20 U.S.C.A. § 3475), but expressly states that such delegation of functions does not "relieve the Secretary of responsibility for the administration of such functions" (20 U.S.C. § 23472). Plaintiffs bring three causes of action against the Department and the Secretary of Education. *First*, they seek judicial review under Section 706(2) of the Administrative Procedures Act ("APA") for: (1) the improper capitalization of interest, (2) the improper conversion of TEACH Grants into loans, (3) incorrect PSLF Employment Certification Form ("ECF") determinations, and (4) the improper denials of PSLF applications for loan forgiveness. *Second*, Plaintiffs seek declaratory and injunctive relief under the U.S. Constitution Fifth Amendment right to procedural Due Process clause for the improper conversation of TEACH Grants into loans and improper denials of PSLF applications for forgiveness. *Lastly*, Plaintiffs seek monetary damages for the Department's and the Secretary of Education's breach of the "Master Promissory Note" and the "Teach Agreement to Serve" under the Little Tucker Act. (¶¶ 588-640).

### B. OUTSTANDING PLAINTIFFS' MOTIONS

On January 6, 2023, Plaintiffs moved for an order partially lifting the July 25, 2018 stay of discovery (ECF No. 9) to serve limited and targeted document requests on Defendants seeking discovery produced in two parallel proceedings brought against PHEAA by the New York and

Massachusetts Attorneys General. Defendants' responses are due January 20, 2023.

## II. PHEAA'S REPORT

PHEAA has filed two outstanding motions that are fully briefed and awaiting decision by the Court. First, in February 2020, PHEAA moved to dismiss the Consolidated Amended Class Action Complaint under Rules 12(b)(1) and 12(b)(6) on the basis of: (1) derivative sovereign immunity; (2) federal preemption of state law under the Higher Education Act; (3) lack of standing and ripeness; (4) failure to plead the necessary elements of certain causes of action; and (5) failure to plead fraud with specificity. *See* ECF Nos. 55-2, 73. Plaintiffs filed an opposition to PHEAA's motion to dismiss in June 2020; PHEAA filed its reply brief in August 2020; and Plaintiffs filed a sur-reply in September 2020. *See* ECF Nos. 64, 73, 76. PHEAA submitted a notice of supplemental authority in support of its motion in March 2020, and Plaintiffs submitted a notice of supplemental authority in August 2020. *See* ECF Nos. 60, 72. In March 2022, PHEAA submitted a notice of supplemental authority discussing the recent dismissal of similar putative class actions brought against student loan servicers, including PHEAA, due to plaintiffs' lack of standing under Article III. *See* ECF No. 78–79.

As explained in more detail in PHEAA's Motion to Dismiss briefing, Plaintiffs' claims against PHEAA fail because PHEAA, as a federal contractor acting within the scope of its federal contract, is entitled to derivative sovereign immunity as articulated in *Yearsley v. W.A. Ross Construction Co.*, 309 U.S. 18 (1940). *See* ECF No. 55-2 at 17–24; ECF No. 73 at 4–6. PHEAA's loan servicing, including remediation of any servicing errors, is dictated by its federal contract, federal statutes and regulations, and the Department's guidance. The Complaint fails to allege any conduct by PHEAA that falls outside the scope of that contract, and does not allege that PHEAA failed to remediate any particular issue as directed by the Department. The claims against PHEAA should be dismissed in their entirety for that reason.

6

Plaintiffs' claims are also subject to dismissal because they are preempted by federal law. 20 U.S.C. § 1098g of the Higher Education Act ("HEA")—which preempts "any disclosure requirements of any State law"—expressly preempts Plaintiffs' many state-law claims alleging that PHEAA failed to disclose certain information to borrowers. *See* ECF Nos. 55-2 at 24–31; 73 at 3–4. The HEA also preempts claims based on supposed misrepresentations to the extent that the disclosures at issue are mandatory, and because PHEAA's communications with borrowers relating to the Public Service Loan Forgiveness ("PSLF") program are mandatory, Plaintiffs' related claims are preempted. And because Plaintiffs' state-law claims would impede the congressional directive for uniformity implicit in the HEA, they are preempted as a matter of obstacle preemption as well.

Many of Plaintiffs' claims also fail because particular named Plaintiffs lack standing or have not demonstrated ripeness. *See* ECF No. 55-2 at 33–38; ECF No. 73 at 2–3. Many of the named Plaintiffs—10 out of 15, at the time of PHEAA's motion—alleged that they had been deprived of PSLF forgiveness despite the fact that they had not yet made all 120 qualifying payments required for forgiveness. As such, their supposed risk of injury turns on an attenuated chain of inferences and speculation about whether they would maintain public-sector jobs, whether they would make timely payments, whether PHEAA would fail to correct any uncounted qualifying payments, and whether and when the Department would ultimately grant forgiveness. Similarly, several Plaintiffs asserting claims under the Teacher Education Assistance for College and Higher Education ("TEACH") Grant program lack standing because their alleged injuries have already been remedied by the Department's reconsideration process. *See* ECF No. 55-2 at 36. And finally with respect to standing, Plaintiffs impermissibly seek relief in connection with certain federal programs even in jurisdictions where no named Plaintiff was affected by the alleged issue. *See id.* at 38–40.

Finally, Plaintiffs' state-law claims must be dismissed under Rule 12(b)(6) for failing to state a claim in various respects. *See* ECF No. 55-2 at 40–64; ECF No. 73 at 6–15. Plaintiffs' contract claim

7

(Count 8) fails because Plaintiffs are not third-party beneficiaries of PHEAA's federal contract with the Department. Plaintiffs also cannot assert an unjust-enrichment claim (Count 11) because Plaintiffs fail to identify any benefit conferred on PHEAA that Plaintiffs are entitled to have returned. Many of Plaintiffs' tort claims (Counts 9, 10, 12, and 14) fail because PHEAA does not owe a duty or is not a fiduciary to Plaintiffs and because Plaintiffs failed to plead these claims with the required specificity under Rule 9(b). Last, Plaintiffs failed to state consumer-protection claims under the laws of California, District of Columbia, Kansas, and Pennsylvania either because loan servicing is not actionable conduct under those statutes or because Plaintiffs fail to allege reliance.

In June 2022, PHEAA filed a Suggestion of Mootness detailing recent statutory and administrative developments that have mooted or are imminently likely to moot Plaintiffs' claims against PHEAA. *See* ECF No. 81. PHEAA's submission addresses important statutory changes to various federal programs, including (1) the TEACH Grant program, (2) income-driven repayment ("IDR") plans, and (3) the PSLF program. These changes have resulted in many Plaintiffs being made whole or receiving relief beyond what they seek in the Complaint. In July 2022, Plaintiffs responded jointly to PHEAA's Suggestion of Mootness and to a separate Suggestion of Mootness filed by the Department. *See* ECF No. 83.

If necessary in light of the Court's resolution of the pending motions, PHEAA will plead its additional affirmative defenses in its Answer.

### III. **DEPARTMENT'S REPORT**

This MDL grows out of some ten cases around the country in which student borrowers brought claims against PHEAA, the Department's former loan servicer, for alleged servicing errors. Prior to these cases being consolidated, the Department and its Secretary (the "Department" or "Federal Defendants") were only named as defendants in one case that asserted a breach of contract and unjust enrichment claim concerning the Teacher Education Assistance for College and Higher

8

Education ("TEACH") Grant program, and the Department had moved to dismiss those claims. While that motion was pending, the JPMDL transferred that case—over the parties' objections—and the other cases to this Court for consolidated pretrial proceedings. On October 28, 2019, however, plaintiffs filed a 233-page Consolidated Amended Complaint, ECF No. 49 (the "Complaint") that added numerous ill-defined and scattershot claims against the Department, purportedly under the Administrative Procedure Act ("APA"), the Due Process Clause of the Constitution, and contract law.[5] Although the Complaint added a broad range of purported claims against the Department based on its general oversight of three programs— the TEACH Grant program, the Public Service Loan Forgiveness ("PSLF") program, and income-driven repayment ("IDR") plans—the claims remain focused on servicing errors allegedly committed by PHEAA, not Federal Defendants. On March 31, 2020, Federal Defendants moved to dismiss the claims against the Department for lack of jurisdiction and failure to state a claim. ECF No. 61. The briefing on that Motion is complete, and includes plaintiffs' opposition brief, ECF No. 65, Federal Defendants' reply, ECF No. 74, and plaintiffs' surreply, ECF No. 77.

As explained in the Motion to Dismiss briefing, plaintiffs' claims against Federal Defendants are jurisdictionally defective in numerous respects. First, plaintiffs have not identified an applicable waiver of sovereign immunity. The waiver in the APA—the only one cited in the Complaint—does not apply here because plaintiffs' claims for relief against the Department are expressly barred by the anti-injunction provision of the Higher Education Act, 20 U.S.C. § 1082(a)(2). Moreover, plaintiffs' opposition brief has now made clear that plaintiffs are really only challenging alleged acts of

---

[5] Plaintiffs' description of their claims above bears little resemblance to the claims actually asserted against the Department in the Complaint. Notably, the claims plaintiffs added are the sort that are generally not appropriate for consolidated treatment in MDL proceedings. *See*, e.g., *In re FY 2022 Adjustment of Status Delay Litig.*, MDL No. 3045, -- F. Supp.3d --, 2022 WL 3134236, at *1 (U.S. Jud. Pan. Mult. Lit. Aug. 5, 2022) (recognizing "centralization of APA record-review cases often is inappropriate").

9

PHEAA, not agency action, so they cannot avail themselves of the APA's sovereign immunity waiver in any event.[6]  *See* ECF No. 74, at 1.  Further, plaintiffs themselves have now admitted that the APA waiver does not permit their contract/money damages claim.  ECF No. 65, at 19-21.  And while they now purport to rely on the waiver in the Little Tucker Act, the Complaint does not even mention that statute, much less plausibly allege that it applies here.  The Complaint is also subject to dismissal on standing, ripeness and mootness grounds.  The TEACH plaintiffs already obtained complete relief years ago through the Department's reconsideration process (most before the Complaint was filed), and the PSLF plaintiffs have not alleged any denial of loan forgiveness or other redressable harm.

Plaintiffs' allegations against the Department also fail to state a claim for which relief can be granted.  The APA claims in the Complaint do not comport with basic notice pleading requirements, much less identify any discrete and reviewable agency action.  The only discrete actions alleged are those of PHEAA, not the agency, and plaintiffs' broad programmatic challenges to the Department's oversight are not judicially reviewable.  Even if there were some "agency action" at issue, it is not "final" agency action of the sort reviewable under the APA, and plaintiffs have otherwise failed to plausibly allege APA claims.  Plaintiffs' due process claims with regard to the TEACH grant and PSLF programs fail because the Complaint effectively concedes that none of the plaintiffs has an existing "property interest" under these programs.  Nor do they allege any deficiency in the process afforded.  Indeed, the TEACH plaintiffs obtained complete relief through the reconsideration process, as noted, and none of the PSLF plaintiffs even pursued the process

---

[6] Contrary to plaintiffs' suggestion above, the language of 20 U.S.C. §§ 3472 & 3475 does not suggest that PHEEA's actions and the Department's actions are interchangeable for purposes of sovereign immunity, the APA, the Higher Education Act ("HEA"), or other governing law.  In any event, as plaintiffs admit, Compl. ¶¶ 342, 656, the Department's contractual relationship with PHEAA in this context is governed by the HEA, 20 U.S.C. 1087f, an entirely different statute.

available to them. Finally, for various reasons, plaintiffs have not plausibly alleged contract claims against the Department, either pertaining to the TEACH grant program or to the IDR plans.

In the wake of the COVID-19 pandemic, and the change of administrations, the Department has implemented sweeping reforms to the federal student loan programs, affording significant and far-reaching benefits and relief to student loan borrowers nationwide, including plaintiffs, and largely if not entirely mooting plaintiffs' already-defective programmatic challenges. On May 20, 2022, Federal Defendants filed a Suggestion of Mootness to alert the Court to various legislative and administrative initiatives that address plaintiffs' professed programmatic concerns, and thus give rise to additional jurisdictional defects beyond those already identified in the Motion. *See* ECF No. 80. These include: (1) statutory reforms to the TEACH grant program that, *inter alia*, codify a reconsideration process similar to the Departmental process through which plaintiffs and others around the country have now obtained complete relief; (2) a temporary waiver of certain PSLF requirements under the HEROES Act (now made permanent, to the extent statutorily possible, *see infra*), allowing borrowers to obtain loan forgiveness sooner than they otherwise could; and (3) additional actions addressing borrower concerns about alleged misconduct of loan servicers. These ongoing legislative and administrative initiatives further demonstrate that plaintiffs' claims have been mooted and reinforce the grounds for dismissal already identified in the Motion. And in many instances, they have resulted in plaintiffs and other student borrowers receiving student loan relief and loan forgiveness beyond what was sought in the Complaint or would otherwise be possible in litigation. The Court ordered plaintiffs to respond to the Department's Suggestion of Mootness, ECF No. 82, and plaintiffs did so on July 6, 2022, ECF No. 83.

As of the date of this filing, the Department's programmatic reforms remain ongoing, reinforcing these mootness concerns. On November 1, 2022, the Department finalized a rule that expanded on and permanently adopted (to the extent permissible under the governing statute), the

11

previous relaxation of PSLF requirements under the Department's temporary PSLF waiver. The rule (which is effective July 1, 2023) also addressed borrower concerns about when interest may be capitalized, effectively eliminating future capitalization of interest except where it is required by statute. *See*, *e.g.*, https://www.ed.gov/news/press-releases/education-department-releases-final-regulations-expand-and-improve-targeted-debt-relief-programs (last visited Jan. 17, 2023). The final rule thus further supports dismissal on mootness grounds, affording additional relief that would not otherwise be available, either through litigation or otherwise. It also refutes plaintiffs' unsupported suggestion that borrowers will continue to face the same programmatic concerns in the future due to an alleged lack of "long-term permanent solutions—such as amended regulations through the formal rulemaking process."[7] *E.g.*, ECF No. 83, at 6, 10. The resulting absence of a live case or controversy is yet another reason—beyond those already identified in the Federal Defendants' Motion—to dismiss plaintiffs' claims against the Department.

Dated: January 20, 2023

Respectfully Submitted,

/s/ *Laura K. Mummert*
Laura K. Mummert (PA ID 85964)
Anthony M. Christina (PA ID 322528)
William J. Olson (PA ID 322948)
**LOWEY DANNENBERG, P.C.**
One Tower Bridge
100 Front Street, Suite 520
West Conshohocken, PA 19428
Telephone: (215) 399-4770
lmummert@lowey.com
achristina@lowey.com
wolson@lowey.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

/s/ *Gary F. Lynch*
Gary F. Lynch (PA ID 56887)
Jamisen A. Etzel (PA ID 311554)
**LYNCH CARPENTER LLP**
1133 Penn Avenue, 5th Floor
Pittsburgh, PA 15222
Telephone: (412) 322-9243
gary@lcllp.com
jamisen@lcllp.com

*Co-Lead Counsel for Plaintiffs and the Proposed Class*

---

[7] Another illustration of this point, on January 11, 2023, the Department issued a proposed rule that would, if finalized, make IDR plans significantly more favorable to student borrowers in numerous respects. *See Improving Income-Driven Repayment for the William D. Ford Federal Direct Loan Program*, 88 Fed. Reg. 1894 (Jan. 11, 2023).

<table>
<tr><td>

*/s/ Jason A. Leckerman*
Jason A. Leckerman
Thomas F. Burke
Brittany M. Wilson
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

</td><td>

*/s/ Peter M. Bryce*
Peter M. Bryce
Carol Federighi
Terrance A. Mebane
**U.S. DEPARTMENT OF JUSTICE**
**CIVIL DIVISION**
Washington, DC 20005
Telephone: (202) 616-8335

*Attorneys for U.S. Department of Education and Secretary of Education*

</td></tr>
</table>

**CERTIFICATE OF SERVICE**

  I, Laura K. Mummert, hereby certify that on January 20, 2023, I filed and served through the Court's ECF system a true and correct copy of the foregoing document. Those attorneys who are registered with the Court's electronic filing system may access these filings through the Court's system, and notice of these filings will be sent to these parties by operation of this Court's electronic filing system.

               */s/ Laura K. Mummert*
               Laura K. Mummert