UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION | MDL Docket No. 18-2833 |
| ALL CASES | Hon. Nitza I. Quiñones Alejandro |

**DEFENDANT PHEAA'S OPPOSITION TO PLAINTIFFS' MOTION FOR LEAVE TO TAKE LIMITED DISCOVERY**

**I.   INTRODUCTION**

Plaintiffs sought discovery from Defendants the Pennsylvania Higher Education Assistance Agency (PHEAA) and the U.S. Department of Education (the Department) in this multidistrict litigation prior to the filing of the Consolidated Amended Class Action Complaint and prior to Defendants' subsequent and still-pending motions to dismiss that Complaint. This Court denied Plaintiffs' requests not once, but twice. ECF Nos. 31, 42. Plaintiffs now ask the Court to revisit those rulings, closely on the heels of a judicial reassignment, but their requested relief—leave to file discovery requests for a cloned copy of nearly 700,000 pages of documents and extensive other records and testimony produced in two other cases—should be denied for both procedural and substantive reasons.

First, the Court should deny Plaintiffs' Motion because no extraordinary circumstance warrants departure from the Court's prior decision, which is that Plaintiffs are not entitled to discovery at this time. Instead, the Court should maintain the stay of discovery until resolution of Defendants' long-pending motions to dismiss and more recent suggestions of mootness. Plaintiffs' only justification for its sudden effort to seek discovery after nearly three years of motion practice

is that some federal student borrowers may need to resume making loan payments in July 2023. Borrowers were making loan payments at the time the stay was ordered in 2019, however, and the pause on loan payments has been at risk of imminent expiration for most of its three-year existence. Nothing has changed that would merit lifting the stay at this time.

Second, Plaintiffs' Motion should be denied because they fail to establish an entitlement to the unusual remedy of "cloned" or piggy-back" discovery of documents produced in the state civil enforcement matters at issue. As an initial matter, PHEAA paid no penalties or fines in connection with these matters; nor did it admit liability. Although courts have permitted such discovery in rare circumstances where the fact of prior productions or the narrowly tailored nature of such productions warrants duplicative productions, such discovery is generally denied where the material produced in the prior actions would be demonstrably overinclusive, as here.

Finally, Plaintiffs' Motion should be denied because they failed to comply with Local Rule 26.1(f) by failing to meet and confer with Defendants before seeking the Court's intervention in this discovery dispute.

**II.  BACKGROUND**

    **A.  Overview**

In June 2018, the Judicial Panel on Multidistrict Litigation centralized six separate lawsuits filed against the Department and its former student loan servicer, PHEAA, by transferring them to this forum for all pretrial proceedings. ECF No. 1. Later that month, Plaintiffs sought leave to file an amended complaint. ECF No. 2.

In July 2018, this Court stayed "[a]ll discovery proceedings . . . until further Order of this Court," and directed that "the time requirements to perform any acts or file any papers pursuant to Rule 26 through 37, Federal Rules of Civil Procedure, are tolled until the first pretrial conference, at which time a discovery schedule will be established." ECF No. 9 at ¶ 13. In October 2018, the

...

Court held a pretrial conference but did not lift the stay or enter a scheduling order, and solicited briefing on whether "preliminary class discovery" was warranted. ECF Nos. 29, 31. The parties submitted extensive briefing on the need for preliminary class discovery. *See* ECF Nos. 32–34. In September 2019, the Court ruled that "[t]here shall be no preliminary class discovery," and directed Plaintiffs to file an amended class complaint. ECF No. 42.

In November 2019, Plaintiffs filed the Consolidated Amended Class Action Complaint, which remains operative. ECF No. 47. The 33 named Plaintiffs, who reside in 17 jurisdictions, bring claims premised on alleged loan servicing errors relating to three federal benefit programs: (1) the Teacher Education Assistance for College and Higher Education (TEACH) Grant program, (2) income-driven repayment (IDR) plans, and (3) the Public Service Loan Forgiveness (PSLF) program. *See* ECF No. 47, Compl. at ¶¶ 3–4.

Each named Plaintiff's individual claims vary: some raise claims relating to the TEACH Grant program but did not participate in IDR or PSLF, while others raise claims only relating to IDR plans, and others raise various combinations thereof. And as explained at greater length in PHEAA's pending motion to dismiss, although Plaintiffs reside in 17 jurisdictions, some of those jurisdictions do not contain a named plaintiff bringing claims with respect to each of the three federal benefit programs at issue. The TEACH plaintiffs reside in only 7 of the 17 states; the IDR plaintiffs reside in 12 of the 17 states, and the PSLF plaintiffs reside in 11 of the 17 states. Relevant here, only one named Plaintiff resides in Massachusetts and her claims relate solely to TEACH. *Id.* at ¶¶ 225–31. Two named Plaintiffs reside in New York and their claims do not involve PSLF. *Id.* at ¶¶ 48–52, 218–24.

In light of the Court's longstanding order staying discovery, no party has made initial disclosures or served requests for production, interrogatories, or requests for admission. The

parties have not negotiated a confidentiality order or a protocol for the exchange of electronically stored information. Other than discussing document preservation, the parties have not met and conferred on any issues relating to discovery, including potential document custodians, search terms, date ranges for production, relevant document repositories, or scope of search. PHEAA, notwithstanding the conclusion of its loan-servicing contract with the Department, represented over a year ago (in response to an inquiry from Plaintiffs) that it was complying with its document-preservation obligations. *See* Declaration of Thomas F. Burke, ¶ 14 & Ex. G (Dec. 6, 2021 email from J. Leckerman to L. Mummert).

**B.     Pending Motions to Dismiss**

In February 2020, PHEAA moved to dismiss the Complaint under Rules 12(b)(1) and 12(b)(6) on the basis of (1) derivative sovereign immunity; (2) federal preemption of state law under the Higher Education Act; (3) lack of standing and ripeness; (4) failure to plead the necessary elements of certain causes of action; and (5) failure to plead fraud with specificity. *See* ECF No. 55-2. The Department separately moved to dismiss the Complaint. *See* ECF No. 61. Both motions are fully briefed and remain pending.

**C.     The State AG Actions**

During the pendency of this MDL, PHEAA resolved a pair of civil enforcement actions brought by the Massachusetts and New York Attorneys General relating to PHEAA's federal loan servicing activities in those jurisdictions. As described below, the parties stipulated to dismissal with prejudice of both actions pursuant to negotiated resolutions. PHEAA paid no penalties or fines in connection with those resolutions and did not admit liability.

In *Commonwealth of Massachusetts v. PHEAA, d/b/a/ FedLoan Servicing*, No. 1784-cv-02682 (Mass. Supp. Ct.), filed in August 2017, the Massachusetts Attorney General sought relief on behalf of Massachusetts residents for alleged servicing errors relating to TEACH, PSLF, and

IDR. *See* Burke Decl. ¶ 4. In the course of that litigation, the Massachusetts Attorney General sought broad discovery from PHEAA, including documents, emails, and loan servicing records for current and former Massachusetts residents. *See id.* at ¶ 5 & Ex. A, Massachusetts Requests for Production. After lengthy negotiations, the parties agreed that PHEAA would limit its production of borrower-specific documents to those relating to individuals currently or formerly residing in Massachusetts. *See id.* at ¶ 6. PHEAA ultimately produced nearly 200,000 pages of documents, many of which contained the personal identifying information of current and former Massachusetts residents. *Id.* Before making its productions, PHEAA received express permission from the Department—which owns the federal loan servicing records at issue—to produce the documents to the Massachusetts Attorney General pursuant to a negotiated protective order that would limit the further disclosure of those records. *Id.* at ¶ 10.

Similarly, the New York Attorney General filed a civil enforcement action against PHEAA in October 2019, alleging errors in PHEAA's loan servicing relating to IDR, PSLF, and other components of federal loan servicing such as forbearances, deferments, and loan consolidation, but not TEACH. *Id.* at ¶ 7. Like the Massachusetts Attorney General, the New York Attorney General sought broad discovery from PHEAA, including a complete copy of PHEAA's federal loan servicing files for New York residents. *See id.* at ¶ 8 & Ex. B, New York Requests for Production. There as well, the parties agreed that PHEAA would limit its production of borrower-specific documents to those relating to individuals currently or formerly residing in New York. *See id.* at ¶ 9. PHEAA ultimately produced over 500,000 pages of documents to NYAG, many of which contained the personal identifying information of New York residents. *Id.* PHEAA's production—with the Department's permission, pursuant to a negotiated protective order—also

5

included an extract of its servicing system records for New York residents containing detailed personal identifying information for hundreds of thousands of borrowers. *Id*. at ¶¶ 9–10.

In the course of resolving these matters, PHEAA paid no penalties or fines and did not admit liability. *Id.* at ¶ 13. The Massachusetts Attorney General stipulated to the dismissal of its action with prejudice as part of a negotiated settlement in May 2021, and the New York Attorney General stipulated to a similar dismissal in April 2022. *Id.* at ¶¶ 11–12. As part of those settlements, PHEAA agreed to administer a claims process for the benefit of federal student borrowers in those two jurisdictions who had loans serviced by PHEAA. *See generally id.*, Ex. E, Massachusetts Settlement Agreement; Ex. F, NYAG Settlement Agreement.

### D. Overhaul of Federal Loan Servicing

As PHEAA and the Department have explained at length in pending suggestions of mootness, the past several years have seen federal statutory and administrative developments that have mooted or are imminently likely to moot Plaintiffs' claims. *See* ECF Nos. 80, 81. These submissions address important statutory changes to all of the federal programs at issue that have resulted in many Plaintiffs being made whole or receiving relief beyond what they seek in the Complaint. What, if anything, is left of the Complaint in light of these developments is pending before this Court.

### E. Plaintiffs' Motion

On December 9, 2022, the MDL was reassigned from the Honorable C. Darnell Jones II to this Court. On January 6, 2023, less than a month after the reassignment, Plaintiffs filed the instant Motion seeking permission to take "limited" discovery for all documents, data, and deposition testimony produced by Defendants in the State AG Actions. *See generally* ECF No. 86. Plaintiffs did not seek to meet and confer with Defendants before filing the instant motion.

### III.     ARGUMENT

**A.     Plaintiffs provide no compelling reason for the Court to reconsider the prior ruling barring discovery while Defendants' motions to dismiss remain pending.**

A federal district court has broad discretion to stay discovery pending resolution of a potentially dispositive motion. *See In re Orthopedic Bone Screw Prod. Liab. Litig.*, 264 F.3d 344, 365 (3d Cir. 2001)). "[M]otions to dismiss filed under [Rule 12(b)(6)] should typically be resolved before discovery begins." *Levey v. Brownstone Inv. Grp., LLC*, 590 F. App'x 132, 137 (3d Cir. 2014) (quotation marks and citation omitted); *see also Mann v. Brenner*, 375 F. App'x 232, 239 (3d Cir. 2010) (finding that discretion to stay discovery is properly exercised "while evaluating a motion to dismiss where, if the motion is granted, discovery would be futile").

The Third Circuit has held, in an analogous context, that departure from similar decisions is warranted only under "extraordinary circumstance[s]." *In re Pharmacy Benefit Managers Antitrust Litigation*, 582 F.3d 432, 439 (3d Cir. 2009) (reversing transferee judge's order vacating prior judge's order on motion to compel arbitration). Other courts, too, have long recognized the need for consistency, such that long-settled decisions of the court should not be disturbed absent "compelling reason." *Abbott v. Lockheed Martin Corp.*, No. 3:06-cv-701, 2008 U.S. Dist. LEXIS 100731, at *15 (S.D. Ill. Dec. 12, 2008) (quoting *Santamarina v. Sears*, 466 F.3d 570, 572 (7th Cir. 2006)) ("[T]he Court finds that the protective order should not be vacated. . . . Plaintiffs have not shown a 'compelling reason, such as a change in, or clarification of, law that makes clear that the earlier ruling was erroneous,' and that would require vacating the order under the doctrine of the law of the case."); *see, e.g.*, *United States v. Nobel Learning Cmtys.*, 329 F.R.D. 524, 528 (D.N.J. 2018) (finding that the magistrate judge had properly "reviewed [a prior] Opinion in conjunction with his rulings on discovery to insure consistency with this Court's rulings and the law of the case"); *Summy-Long v. Pa. State Univ.*, No. 1:06-cv-1117, 2015 U.S. Dist. LEXIS

7

138247, at *8–9 (M.D. Pa. Oct. 9, 2015) (denying a motion to compel discovery and holding "the core purpose behind the law of the case doctrine is to establish for the parties a reasonable sense of 'settled expectations'"); *Breslin v. Dickinson Twp.*, No. 1:09-1396, 2011 U.S. Dist. LEXIS 83811, at *2 (M.D. Pa. Aug. 1, 2011) ("By the time of this case referral, a number of discovery decisions and rulings had been made in this case, rulings that defined the law of the case.").

Here, the Court ruled in both July 2018 *and* September 2019 that there "shall be no preliminary class discovery." ECF Nos. 9, 42. Those rulings—the latter of which was entered after briefing by the parties—are entirely consistent with Third Circuit precedent regarding stays of discovery pending potentially dispositive motions to dismiss, and they should continue to govern until there has been a material change in circumstances, i.e., a ruling on the pending motions.

Plaintiffs' only apparent justification for seeking to lift the stay is that "the temporary pause of federal student loan payments and interest under the Coronavirus Aid, Relief, and Economic Security Act (the "CARES Act") [is set to] end on or before August 29, 2023"—over seven months from now—such that some putative class members may need to resume repaying their loans at that time. *See* Motion at 7–8. The "temporary pause" and its potential expiration, however, are nothing new, given that the pause has been extended repeatedly by the Department since it was implemented in early 2020. *See generally* Congressional Research Service, *CRS In Focus IF12136, Student Loans: A Timeline of Actions Taken in Light of the COVID-19 Pandemic*, available at https://crsreports.congress.gov/product/pdf/IF/IF12136. Moreover, when the Court ordered the stay of discovery in 2018 and 2019, it was fully aware that many of the Plaintiffs were actively repaying their loans. *See, e.g.*, Compl. at ¶¶ 46, 50, 62, 69, 74 (describing loan repayments requirements). The fact that some Plaintiffs may again have to make loan payments after a three-year reprieve is not an "extraordinary circumstance" that warrants revisiting the prior decision. *See*

8

*Pharmacy Benefit Managers*, 582 F.3d at 439. Indeed, that change would put Plaintiffs right back to the position they were at the time the Court made that decision.

  **B. Plaintiffs are not entitled to piggy-back on discovery taken in unrelated actions.**

  Plaintiffs' motion should also be denied because most of what they seek—the entirety of the broad discovery taken in two regionally focused civil enforcement actions—would be irrelevant to this action even if the Complaint survived the pending motions to dismiss, such that Plaintiffs have not demonstrated, and cannot demonstrate, good cause for its production.

  **1. Applicable Law**

  At the outset, many courts have held that "cloned" or "piggyback" discovery is appropriate only where "the *fact* that particular documents were produced or received by a party [in separate litigation] is relevant to the subject matter of the subject case." *Travelpass Grp. v. Caesars Entm't Corp.*, No. 18-cv-153, 2020 U.S. Dist. LEXIS 26558, at *18 (E.D. Tex. Jan. 16, 2020) (emphasis added) (quoting *King Cnty. v. Merrill Lynch & Co.*, No. 10-cv-1156, 2011 U.S. Dist. LEXIS 86775, at *3 (W.D. Wash. Aug. 5, 2011)); *Food Lion, LLC v. Dairy Farmers of Am., Inc.*, No. 20-cv-442, 2020 U.S. Dist. LEXIS 226120, at *12 (M.D.N.C. Sep. 29, 2020). For example, in *Midwest Gas Servs., Inc. v. Ind. Gas Co.*, the court denied a request for cloned discovery because the movant "ha[d] not shown that the *fact* that any particular document was produced by the defendant . . . [was] relevant to the subject matter" of the suit." No. IP 99-690, 2000 U.S. Dist. LEXIS 8098, at *2 (S.D. Ind. Mar. 7, 2000), *aff'd in part and rev'd on other grounds*, 317 F.3d 703 (7th Cir. 2003). Rather, the movant was merely "interested in the content of documents." *Id.* Stated differently, if Plaintiffs seek production of particular *substantive* categories of documents, they should seek them in the ordinary course by propounding discovery specifying the types of documents to be produced at the appropriate time.

9

Further, and in any event, a party seeking to compel discovery "bears the initial burden of showing the relevance of the requested information." *Morrison v. Phila. Hous. Auth.*, 203 F.R.D. 195, 196 (E.D. Pa. 2001). But parties seeking broad "cloned" discovery "cannot meet [their] burden to establish relevance, as the propounding party is not in a position to even know what they are actually asking for." *Goro v. Flowers Foods, Inc.*, No. 17-cv-02580, 2019 U.S. Dist. LEXIS 203568, at *54 (S.D. Cal. Nov. 22, 2019) ("There could be a number of reasons why documents appropriately requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case."); *see also King Cnty.*, 2011 U.S. Dist. LEXIS 86775, at *8 ("Although some portion of documents encompassed by Plaintiffs' request may be relevant, the Court has no method of determining which of those documents are relevant, and which are not"); *In re Volkswagen "Clean Diesel" Mktg.*, MDL No. 2672, 2017 U.S. Dist. LEXIS 173165, at *672 (N.D. Cal. Oct. 18, 2017) ("The [] Plaintiffs are not entitled to complete access to the [past] Production simply because there may be an overlap between their claims and those in the consolidated consumer class action. They instead must serve requests for production on [defendant] in accordance with the Federal Rules.").

These principles are regularly enforced in this jurisdiction. In *Allegheny County Retirement System v. Energy Transfer LP*, No. 20-200, 2022 U.S. Dist. LEXIS 215313 (E.D. Pa. Nov. 30, 2022)—a case in which the parties, unlike here, were engaged in active discovery and the court had not previously ordered a stay—the plaintiffs sought cloned discovery of documents produced in earlier proceedings. The Court denied the request, finding that "similarities or overlap alone are insufficient to justify '*a carte blanche* production of all documents from the [previous] cases.'" *Id.* at *9 (emphasis and alteration in original) (quoting *Chen v. Ampco Sys. Parking*, No. 08-cv-0422, 2009 U.S. Dist. LEXIS 71633, at *2 (S.D. Cal. Aug. 14, 2009)). Rather, the Court held, the

requesting party must make proper discovery requests identifying specific categories of documents sought and connecting each category to a claim or defense in the case. *Id.*; *see also Moore v. Morgan Stanley & Co.*, No. 07-cv-5606, 2008 U.S. Dist. LEXIS 88300, at *14 (N.D. Ill. May 30, 2008) ("[J]ust because the information was produced in another lawsuit . . . does not mean that it should be produced in this lawsuit[.]"); *Wollam v. Wright Med. Grp., Inc.*, No. 10-cv-03104, 2011 U.S. Dist. LEXIS 56649, at *2, 7 (D. Colo. May 18, 2011) (denying request "to clone the discovery taken by others in unrelated cases and to piggyback on that unrelated discovery").

>    **2.   Plaintiffs are not entitled to *carte blanche* reproduction of hundreds of thousands of documents produced in the Massachusetts and New York litigation.**

Plaintiffs' request for cloned discovery should be denied because a substantial volume of documents produced by PHEAA in the Massachusetts and New York litigation—likely hundreds of thousands of pages and a vast quantity of electronic data—has no relevance to this case and would require the needless production of the personal identifying information of hundreds of thousands of federal student borrowers.

First, Plaintiffs mischaracterize their proposed discovery as "limited and targeted document requests." Motion at 1. The proposed document requests—which are not attached to the Motion and have not otherwise been served—apparently would seek a cloned copy of, among other things, approximately 700,000 pages of discovery produced by PHEAA in the context of civil enforcement actions focused on the residents of Massachusetts and New York. Those records contain the personal identifying information of hundreds of thousands of federal student loan borrowers in those states who are not part of any putative class. Burke Decl. at ¶¶ 6, 9. PHEAA produced these records to the state attorneys general only after receiving dozens of document requests, raising objections, conducting related meet-and-confer sessions, negotiating protective orders, and coordinating with the Department to ensure that sensitive federal records were being

11

produced in compliance with federal law. *Id.* at ¶¶ 5–6, 8–10. There is nothing "limited and targeted" about the document requests Plaintiffs seek to serve.

Second, many of these records sought by Plaintiffs demonstrably have no relevance to their actual claims. Of the 33 named Plaintiffs' individual claims, only one named Plaintiff resides in Massachusetts, and that individual pleads claims relating only to the TEACH program. *See* Compl. at ¶¶ 225, 867. Only two named Plaintiffs reside in New York, and neither have PSLF claims. *See* Compl. at ¶¶ 48, 218, 244. PHEAA has offered compelling bases for dismissal of all of those claims, but even if PHEAA's motion were denied, it would not change the fact that Plaintiffs are requesting leave to obtain *all* discovery produced in the Massachusetts action (not only discovery relating to TEACH), and *all* discovery produced in the New York action (including relating to the PSLF program). The cloned discovery sought by Plaintiffs therefore encompasses much—likely hundreds of thousands of pages and related electronic records—that is of no relevance here.

The cases cited by Plaintiffs in favor of cloned discovery, too, are inapposite. In *In re Broiler Chicken Antitrust Litig.*, No. 1:16-cv-08637, 2017 U.S. Dist. LEXIS 160411 (N.D. Ill. Sept. 28, 2017)—and unlike here—discovery was well underway at the time the plaintiffs sought cloned discovery: the court had implemented a scheduling order for discovery, the parties had agreed on an ESI protocol and identified most document sources, initial disclosures were exchanged, and the parties had served document requests. *Id.* at *35–36. Moreover, the court did not order a full, "cloned" production. Instead, primarily to help the plaintiffs craft search terms, the court ordered production of narrow subsets of documents to which the defendants had no relevance objection. *Id.* at *47–48. Plaintiffs here have offered no similar rationale for expedited production and have proposed no similar carve-outs (which would not be administratively feasible from a burden perspective in any event, and which PHEAA would seek leave to address in the

event that Plaintiffs propose them). Plaintiffs' other authority consists largely of unpublished, out-of-circuit orders containing little or no legal reasoning and in most cases involving circumstances where discovery was not stayed. *See* Motion at 8–9 (collecting cases).

In sum, Plaintiffs have not and cannot make the requisite showing for the broad cloned discovery they seek. Although the Complaint here has some similarities to the Massachusetts and New York actions, the matters also have distinct differences that would make the proposed discovery enormously overbroad. The Court should deny Plaintiffs' Motion on that basis.[1]

### C. Plaintiffs failed to comply with Local Rule 26.1(f) before filing their motion.

Under Local Rule 26.1(f), "[n]o motion or other application pursuant to the Federal Rules of Civil Procedure governing discovery . . . shall be made unless it contains a certification of counsel that the parties, after reasonable effort, are unable to resolve the dispute." E.D. Pa. Local Civ. P. R. 26.1(f). Courts in this district routinely dismiss discovery motions for failure to comply with Local Rule 26.1(f). *See, e.g.*, *Evans v. Am. Honda Motors Co.*, No. 00-cv-2061, 2003 U.S. Dist. LEXIS 22189, at *5 (E.D. Pa. Nov. 26, 2003) (denying motion to compel for failure to comply with Local Rule 26.1(f)); *DiSantis v. Koolvent Aluminum Prods.*, No. 97-cv-5434, 1998 U.S. Dist. LEXIS 12480, at *3–4 (E.D. Pa. Aug. 12, 1998) (same).

Here, Plaintiffs did not contact PHEAA before filing their Motion. *See* Burke Decl. ¶ 15. Plaintiffs' Motion should be denied on that basis as well.

---

[1] Were the Court to entertain lifting the stay of discovery to allow service of the requests for production of documents that Plaintiffs have vaguely described, PHEAA respectfully submits that any such order should allow PHEAA to object and respond to those requests and, if necessary, bring to the Court's attention any disputes related to the requests.

## IV. CONCLUSION

For the foregoing reasons, the Court should deny Plaintiffs' Motion and leave the stay in place until the pending motions to dismiss and suggestions of mootness are decided.

DATED:  January 20, 2023

Respectfully submitted,

*/s/ Thomas F. Burke*
Jason A. Leckerman
Thomas F. Burke
Brittany M. Wilson
**BALLARD SPAHR LLP**
1735 Market St., 51st Floor
Philadelphia, PA 19103-7599
Telephone: (215) 864-8500
Facsimile: (215) 864-8999

*Attorneys for Defendant Pennsylvania Higher Education Assistance Agency*

## CERTIFICATE OF SERVICE

I hereby certify that on January 20, 2023, I caused to be served a true and correct copy of the foregoing Opposition to Plaintiffs' Motion for Leave to Take Limited Discovery upon all counsel of record by ECF filing.

DATED: January 20, 2023

/s/ Brittany M. Wilson
Brittany M. Wilson
**BALLARD SPAHR LLP**