**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| IN RE: FEDLOAN STUDENT LOAN SERVICING LITIGATION | MDL No. 18-2833 |
| THIS DOCUMENT RELATES TO: *ALL ACTIONS* | HON. NITZA QUINONES ALEJANDRO |

**FEDERAL DEFENDANTS' SUPPLEMENTAL MEMORANDUM OF LAW**

In accordance with the Court's April 4, 2023 Order (ECF No. 97), the United States Department of Education and Secretary of Education Miguel Cardona ("Federal Defendants") submit this supplemental memorandum of law addressing the effect of Plaintiffs' class action allegations on Federal Defendants' mootness arguments.

**DISCUSSION**

The Federal Defendants' Motion to Dismiss explained that plaintiffs' claims against the Department do not challenge any reviewable agency action(s) by the agency under the Administrative Procedures Act ("APA") or otherwise state cognizable due process or contract claims against the agency. ECF No. 61, at 26-66. The Federal Defendants argued that plaintiffs' failure to state a claim requires dismissal of the Complaint, including the putative class claims. *Id*. The Motion to Dismiss further explained that some of the plaintiffs lack standing and that their claims should therefore be dismissed for this reason as well. *Id*. at 19-26.

The Federal Defendants subsequently filed a Suggestion of Mootness (ECF No. 80), which further established that the majority, if not all, of the claims of those plaintiffs with standing, even if cognizable, are moot due to legislative and programmatic changes to the administration of the three programs at issue—the Teacher Education Assistance for College and

Higher Education ("TEACH") grant program, the Public Service Loan Forgiveness ("PSLF") program, and Income Driven Repayment ("IDR") plans. As explained below, the mere existence of class claims in the complaint cannot save otherwise moot claims when no class has been certified and, especially here, when no motion for certification has been filed.

        **A.    Mooting of the Named Plaintiffs' Claims Requires Dismissal of the Case**

As established in the Motion to Dismiss and the Suggestion of Mootness, the Complaint should be dismissed because many of the named plaintiffs lack standing and the claims of those who arguably had standing are now moot. When claims of the named plaintiffs become moot before class certification, and, indeed, before filing of a motion for class certification, dismissal of the action is required. *Richardson v. Bledsoe*, 829 F.3d 273, 286 (3d Cir. 2016) ("[T]he general rule [is] that the mooting of named plaintiff's claim prior to class certification moots the entire case.") (citation omitted); *Rosetti v. Shalala*, 12 F.3d 1216, 1225 (3d Cir. 1993) ("[T]he mooting of a named plaintiff's claim does not eliminate federal jurisdiction over a class action, *provided a class has already been certified*.") (emphasis added); *Lusardi v. Xerox Corp.*, 975 F.2d 964, 974–75 (3d Cir. 1992) ("Normally, when claims of the named plaintiffs become moot before class certification, dismissal of the action is required. . . . In such a situation, there is no plaintiff (either named or unnamed) who can assert a justiciable claim against any defendant and consequently there is no longer a case or controversy within the meaning of Article III of the Constitution.") (citations and internal quotation marks omitted); *see also Kremens v. Bartley*, 431 U.S. 119, 132–33 (1977) ("[I]t is only a 'properly certified' class that may succeed to the adversary position of a named representative whose claim becomes moot.") (citation omitted).

Accordingly, here, where no class certification order has been issued, and no motion for certification has even been filed, dismissal of the named plaintiffs' claims requires dismissal of the putative class claims as well.

**B.     The Putative TEACH Grant Class Claims are Moot**

Plaintiffs assert three claims against the Department related to the TEACH program: Count I asserts an APA claim; Count IV asserts a Due Process claim; and Count VI asserts a breach of contract claim. Each of these theories asserts that some issue related to the certification process resulted in plaintiffs' TEACH grants being converted to loans or that the Department lacked a mechanism to correct errors. To the extent those complaints asserted a claim, they were addressed through legislative and programmatic changes to the program, including creation of a statutory reconsideration process, extensions of the time to complete service, communication requirements, and alternatives to certification. Moreover, even before these changes, all eight TEACH plaintiffs obtained complete relief through an agency-created reconsideration process. ECF No. 61, at 6, 13, & Ex. 1 (explaining that all eight TEACH plaintiffs had their grants reinstated, and that amounts previously paid were either applied to outstanding Direct Loans or returned via check); ECF No. 80, at 2–4. The TEACH plaintiffs thus acknowledge that they "were able to successfully navigate [the] reconsideration process to fix . . . errors," that they "have now completed their teaching service obligations," and that they "are unlikely to face another improper conversion in the future." Pls.' Resp. to Defs.' Suggestion of Mootness, at 2 (ECF No. 83).

In sum, some of the TEACH plaintiffs lacked standing when the Complaint was filed, and the remaining plaintiffs' claims are now moot. ECF No. 61, at 20–21. The mooting of the named plaintiffs' TEACH claims requires dismissal of the class claims, and the transitory

3

exception to mootness does not apply. The transitory exception applies to "claims [that] are so inherently transitory that the trial court will not have even enough time to rule on a motion for class certification before the proposed representative's individual interest expires." *U.S. Parole Comm'n v. Geraghty*, 445 U.S. 388, 399 (1980); *see also Gerstein v. Pugh*, 420 U.S. 103, 111 n.11 (1975) (finding that the transitory exception applied to a case challenging the legal standard for pretrial detention).

First, the transitory "exception does not apply" when the plaintiffs' "claims were mooted prior to the filing of class certification." *Clarke v. Lee*, 267 F.R.D. 180, 193 (E.D. Pa. 2010); *Lusardi*, 975 F.2d at 982 (transitory exceptions "still require the named plaintiff to have a personal stake when the class certification motion at issue was *filed*") (emphasis in original). *Cf. Rosetti*, 12 F.3d at 1225 ("[E]ven after the named plaintiffs[' challenge] . . . became moot . . . the district court had jurisdiction to consider the named plaintiffs' *pending* motion for class certification.") (emphasis added). Because the TEACH plaintiffs never filed a motion for class certification, the class action must be dismissed.

Second, the TEACH grant program does not involve the type of transitory claims that provide exceptions to mootness. For example, *Geraghty* involved a prisoner who had been denied parole and filed a class action challenging the federal parole guidelines but who was released from prison during his appeal, thus mooting his individual claim. Similarly, *Gerstein* involved prisoner "pretrial detention," which "is by nature temporary," such that "it is most unlikely that any given individual could have his constitutional claim decided on appeal before he is either released or convicted." *Gerstein*, 420 U.S. at 111 n.11. And *Salazar v. King*, 822 F. 3d 61 (2d Cir. 2016), involved a program in which decisions were made on "average [in] less than three months," which "short time frame," the Second Circuit explained, "does not give

4

a court enough time to consider and decide a motion for class certification." *Id*. at 74. By contrast, TEACH grant recipients must teach for four out of the eight years after they graduate from school, and this eight-year period can be extended. In light of the multi-year duration of their post-graduation commitments, the TEACH plaintiffs simply do not assert transitory claims.

Third, and relatedly, the "picking off" exception to mootness discussed in *Richardson v. Bledsoe* does not apply because the TEACH claims are not "acutely susceptible to mootness." 829 F.3d at 286. The TEACH plaintiffs' claims all concern the certification process or lack of due process over the multi-year term of their loans. As discussed, these TEACH claims became moot not because the Federal Defendants individually "picked them off" or because of the inherently transitory nature of their circumstances but because of statutory, regulatory, and administrative changes that addressed the plaintiffs' complaints about the program.

The TEACH plaintiffs' claims are moot and any putative class claims are moot as well.

### C. The PSLF Class and IDR Class Claims Are Moot to the Extent That All Named Class Members' Claims Are Moot

Obtaining forgiveness of student loans under the PSLF program requires a borrower to satisfy several conditions, including making 120 payments while enrolled in a qualifying repayment plan. The PSLF plaintiffs appear to allege two types of injuries: most allege that they were denied "the opportunity to make qualifying payments" because of inadequate advice provided by PHEAA, *see, e.g.*, Consolidated Am. Class Action Compl. ¶ 47, while all of the PSLF plaintiffs allege they were denied "credit for PSLF qualifying payments," *see, e.g., id.* ¶ 86, meaning that they apparently believe PHEAA had incorrectly counted the number of qualifying payments they have made.

The Motion to Dismiss established that these plaintiffs lacked standing and their claims were not ripe because (1) the Court could not treat non-qualifying payments as qualifying and

5

therefore could not redress their injuries, and (2) even if plaintiffs were credited with the qualifying payments they claimed, they would still not qualify for loan forgiveness under the PSLF program. ECF No. 61, at 22-26. Subsequently, the Federal Defendants' Suggestion of Mootness explained that, to the extent any of the PSLF plaintiffs had standing, their claims had been mooted by recent programmatic changes, including a time-limited waiver of many of the PSLF program's limitations. ECF No. 80, at 4. Under this waiver, any current or potential PSLF applicant could receive retroactive credit toward loan forgiveness, even if the borrower was in a non-qualifying loan program or repayment plan, and even if past payments were not made in full or on-time. *Id*. The Federal Defendants reported that, as a result, a number of plaintiffs obtained retroactive "credit" for payments that were not previously counted and have had their federal student loans forgiven under the waiver, and additional plaintiffs might obtain relief in the future. *Id*. at 5-6. The Federal Defendants also reported that other PSLF plaintiffs had paid off their loans or had them forgiven through the normal operation of the program and that their claims were therefore moot as well. *Id*. at 6-7.

The IDR plaintiffs assert an APA claim (Count 2) and a breach of contract claim (Count 7) against the Department. The IDR plaintiffs' APA claim asserts general grievances with the way in which PHEAA previously administered IDR plans, while the contract claim asserts that the Department breached the promissory notes by sending notices electronically rather than by first-class mail. The Suggestion of Mootness explained relevant changes to the administration of IDR plans which were expected to result in additional borrowers receiving loan forgiveness, and many more borrowers receiving additional credit toward loan forgiveness. ECF 80, at 7-8.

As stated, the Suggestion of Mootness provided an update on the status of the loans of certain of the named PSLF plaintiffs but did not conduct a plaintiff-by-plaintiff review of the

6

IDR plaintiffs' claims. To aid the Court, the Department is re-reviewing the PSLF plaintiffs and IDR plaintiffs' accounts and will shortly file an updated status on those accounts. Consistent with the case law cited in subsection A, if and when the claims of all named plaintiffs in the putative PSLF and IDR classes become moot, then those aspects of the case become moot and are not saved by plaintiffs' assertion of a putative class.

## CONCLUSION

For these reasons and the reasons set forth in the Motion to Dismiss and the Suggestion of Mootness, the Complaint should be dismissed.

Dated: April 18, 2023

Respectfully submitted,

BRIAN M. BOYNTON
Principal Deputy Assistant Attorney General

JACQUELINE C. ROMERO
United States Attorney

RUTH A. HARVEY
Director, Commercial Litigation Branch

MARCIA BERMAN
Assistant Branch Director,
Federal Programs Branch

MICHAEL J. QUINN
Senior Litigation Counsel,
Commercial Litigation Branch

 /s/ Terrance A. Mebane
TERRANCE A. MEBANE
CAROL FEDERIGHI
United States Department of Justice
Civil Division
Washington, DC 20005
Telephone: (202) 307-0493
terrance.a.mebane@usdoj.gov
carol.federighi@usdoj.gov

*Counsel for the United States of America*

## CERTIFICATE OF SERVICE

I hereby certify that on this 18th day of April 2023, a true and correct copy of the foregoing was filed electronically with the Court's Electronic Case Filing (ECF) system. I understand that notice of this filing will be sent to all parties by operation of the Court's ECF system.

/s/ Terrance A. Mebane
TERRANCE A. MEBANE
United States Department of Justice